Candice Jackson (SBN 224648)
**FREEMAN MATHIS & GARY, LLP**
1010 B Street, Suite 300
San Rafael, California 94901
cjackson@fmglaw.com
Telephone:   415.352.6434

Lauren Adams (Wisconsin Bar No. 1095653)
(*Pro Hac Vice* forthcoming)
WOMEN'S LIBERATION FRONT
1802 Vernon St.  NW, #2036
Washington, DC  20009
Telephone:  202.964.1127
legal@womensliberationfront.org

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA (FRESNO DIVISION)

| | |
|---|---|
| JANINE CHANDLER; KRYSTAL GONZALEZ; TOMIEKIA JOHNSON; NADIA ROMERO, individuals; and WOMAN II WOMAN, a California non-profit corporation, | Case No. |
| | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| Plaintiffs, | |
| v. | |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; KATHLEEN ALLISON, Secretary of the California Department of Corrections and Rehabilitation, in her official capacity; MICHAEL PALLARES, Warden, in his official capacity; MONA D. HOUSTON, Warden, in her official capacity; and DOES 1-10, inclusive, | |
| Defendants. | |

## NATURE OF THE ACTION

1.     This case challenges California Penal Code §§ 2605, 2606, sections added to the Penal Code by S.B. 132, an act titled "The Transgender Respect, Agency, and Dignity Act" (herein, "S.B. 132") on the ground that S.B. 132 cannot be applied in any manner that avoids violating the

federal and state constitutional rights of Plaintiffs, who are women incarcerated in one of California's women's correctional facilities, and a non-profit organization run by formerly and currently incarcerated women to advocate for justice-involved women, including women currently incarcerated in California. S.B. 132 became effective on January 1, 2021.

2.      S.B. 132 (at Cal. Pen. Code § 2606(a)(3)) acknowledges that in California, correctional facilities are designated either for men, or for women. However, S.B. 132 requires Defendant California Department of Corrections and Rehabilitation ("CDCR") to (1) ask each individual entering CDCR custody the individual's "gender identity of female, male, or nonbinary" and ask "Whether the individual identifies as transgender, nonbinary, or intersex" (Cal. Pen. Code § 2605(a)(1)-(2)) and then requires Defendant CDCR to (among other things) house the individual "at a correctional facility designated for men or women based on the individual's preference[.]" Cal. Pen. Code § 2606(a)(3).

3.      S.B. 132 limits Defendant CDCR's ability to deny an individual's "preferred housing placement" only to situations where CDCR "has management or security concerns with an incarcerated individual's…preferred housing placement preference" and certifies "in writing a specific and articulable basis why the department is unable to accommodate that…housing preference" and CDCR "shall not deny…a housing placement…based on any discriminatory reason, including, but not limited to…The anatomy, including, but not limited to, the genitalia or other physical characteristics, of the incarcerated person" or the "sexual orientation of the incarcerated person" or for "a factor present among other people incarcerated at the preferred type of facility." Cal. Pen. Code § 2606(b)-(c).

4.      There is no application of S.B. 132 that avoids violating the constitutional rights of the individual Plaintiffs, and the other incarcerated women on whose behalf Plaintiff Woman II Woman advocates, which include the rights of incarcerated women:

   a.   to be protected from known, elevated risks of the consequences of sex with men (such as pregnancy and sexually transmitted diseases),

   b.   to be protected from known, elevated risks of being raped and sexually assaulted by men,

2

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

c. to be protected from known, elevated risks of being sexually harassed by men;

d. to privacy and dignity by not being compelled to sleep, shower, or otherwise be naked in the presence of (or exposed to the naked bodies of) incarcerated men;

e. to equal protection of the laws in the form of opportunity for rehabilitation in a single-sex environment comparable to the single-sex environment provided for men;

f. to equal protection of law in the form of as much deference and "serious consideration" given to the "preferences" and "perceptions" of a female prisoner *without any gender identity* about her housing placement, single-cell occupancy, choice of cellmate, and removal of incarcerated persons whom the woman believes to be a threat, as S.B. 132 (Cal. Pen. Code § 2606(a)(4)) requires be given to any incarcerated individual who does claim to have a gender identity;

g. not to be compelled, coerced, or pressured into using speech that reflects a belief to which a woman does not subscribe (whether as a matter of contrary religious belief, personal or philosophical belief, or scientific understanding), in the form of pronouns that are self-selected by a person claiming a gender identity, but which pronouns depart from the sex-based indicator function of a pronoun and thus imply that the speaker believes an individual's sex to be whatever the individual's "personal pronoun" indicates;

h. to practice, and not be forced to violate, a woman's sincerely-held religious beliefs that forbid her from living with a man other than a husband or family member, undressing in front of, being naked in the presence of, or being in the presence of the naked body of, a man other than a husband or family member.

5.   In both the general population, and the offender population, men commit the vast majority of violent and sexual offenses, and women are disproportionately victimized by male sexual violence.

6.   Women comprise less than ten percent of the California prison population. The only women's correctional facilities in California are overcrowded, at more than 150% above-capacity,

3

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

meaning for instance that eight women share a small room (cell) designed to accommodate four people.

7.     A significant proportion of incarcerated women have been subjected to domestic violence, sexual abuse, and sexual harassment throughout their lifetimes, perpetrated by men on the basis of sex, and many incarcerated women suffer from traumatic brain injury as a result of male-perpetrated violence against them, and the vast majority of female offenders suffer from physical or emotional trauma upon entry into the prison system.

8.     Male patterns of violence and sexual offending are not lower in the subset of men who claim a "gender identity of female" than in the overall population of men. Regardless of a man's declared "gender identity," men remain more likely to intimidate, overpower, harass, abuse, and violate women's safety and dignity than any such risk posed by women toward men. Regardless of the self-declared "gender identity" of individual men or women, women are placed at heightened risk of sexual violence, sexual harassment, and trauma conditions (such as post-traumatic stress disorder) when forced to share housing quarters with men.

9.     The rehabilitative environment created by an exclusively female prison population differs greatly from the environment created by an exclusively male prison population. Incarcerated women are much more likely than incarcerated men to be serving sentences for non-violent offenses and to be mothers motivated to earn release due to desire to reunite with children. Incarcerated women are far less likely to behave violently in prison than men, and the security measures and protocols utilized by CDCR therefore differ significantly in women's correctional facilities than in men's correctional facilities.

10.     Decades of research has demonstrated that female offenders fare best in rehabilitative environments away from men. Female-only prison spaces have consistently been shown to be effective, and cost-effective, penological methods of enabling female offenders to work through the complex issues involved in their offending and have the best chance of rehabilitation, release, and assimilation into society. Nearly all states, including California, have long concluded that separate correctional facilities for female offenders best serves the interests of women and of the state. The United Nations Standard Minimum Rules for the Treatment of Prisoners states that

men and women shall so far as possible be detained in separated facilities (Rule 11).

11.    Women's correctional facilities involve minimal privacy for inmates, who live together in close proximity, sharing shower and toilet facilities and communal areas, and sleeping in very close quarters. Incarcerated women have little to no choice over whom they share their spaces with and little to no physical privacy from other inmates.

12.    By requiring women's correctional facilities to become mixed-sex facilities, S.B. 132 places incarcerated women in significantly increased danger of physical and sexual violence, consequences of consensual or nonconsensual sex with men (such as pregnancy and sexually transmitted disease), infringes upon the dignity of women to bodily security and privacy, and removes the rehabilitative benefits that accrue to women in an exclusively-female correctional facility. However, these negative consequences do not also fall upon men in men's correctional facilities because few incarcerated women (even women who claim a transgender or nonbinary identity) desire to be housed in a men's facility, and because women (regardless of any claimed identity) do not pose a threat of violence (or the consequence of pregnancy following sex) to men.

13.    S.B. 132 imposes these violations and harms upon incarcerated women for the stated purpose of avoiding the harms of "sexual abuse and sexual harassment" to "transgender women" and of "sexual and gender-based violence, harassment, and discrimination" to "transgender men." Stats 2020 ch 182 § 4 (SB 132), Sec. 2(a), 2(d). S.B. 132 states that "Regardless of the ways in which a person chooses or is able to express their gender or to take medical, social, or legal transitions steps, they deserve respect, agency, and dignity." *Id.* at Sec. 2(j).

14.    It is not constitutionally permissible to seek to avoid violating the rights of one protected class by deliberately transferring the risk of the same (and additional) types of violations of rights onto another protected class, nor is it permissible to purport to uphold the dignity of one class by inflicting indignities onto another.

15.    S.B. 132 expressly seeks to protect the "agency" and "dignity" of inmates who identify into a category labeled "transgender, nonbinary, or intersex" but does so by removing the agency and dignity of inmates who belong to (not by self-identity, but by virtue of material fact) the category "women," who are disproportionately subjected to violence, harassment, and

1  discrimination on the basis of belonging in the class of humans who are of the female sex, and such

2  harms are inflicted upon women overwhelmingly by men (humans of the male sex).

3      16.    If both women, and a subset of men (those who self-identify as "transgender,

4  nonbinary, or intersex") are at increased risk of harm from being housed with men, the solution

5  cannot be to lower the vulnerability of that subset of men by increasing the vulnerability of women.

6      17.    Under S.B. 132, any man who claims a "transgender, nonbinary, or intersex"

7  "identity" may state his "housing preference" for a women's facility and that preference must be

8  granted unless CDCR can certify a "specific and articulable basis" for denying his housing

9  preference, without relying on the factual bases that explain why men are a danger when housed

10  with vulnerable women. That is, men's anatomy, genitalia, physical characteristics, and physiology

11  all differentiate men as a class from women as a class and directly impact the fact that women suffer

12  violence and subjugation imposed by men on the basis of sex – yet S.B. 132 expressly forbids taking

13  men's physiology into account when CDCR considers whether to deny a man transfer to a women's

14  facility due to "management or security concerns."

15      18.    Further, because S.B. 132 forbids CDCR from denying a man's housing preference

16  based on, *inter alia*, "sexual orientation" without defining that term (Cal. Pen. Code § 2606(b)-(c)),

17  S.B. 132 prevents CDCR from taking into account the probability of harm to women's safety and

18  dignity by housing with women male offenders with paraphilias such as transvestic fetishism,

19  autogynephilia, pedophilia, or other paraphilias that some consider to be sexual "orientations." but

20  that present inherent risks of sexual offenses against women.

21      19.    By specifically forbidding CDCR from relying on "discriminatory" reasons to

22  justify refusal to accommodate an inmate's housing preference, with discriminatory defined to

23  include "a factor present among other people incarcerated at the preferred type of facility" (Cal.

24  Pen. Code § 2606(b)-(c)), SB 132 precludes CDCR from refusing men's housing preference based

25  on, *inter alia*, an inmate's mental illness, or conviction history, regardless of whether such factors

26  may indicate a specific, articulable reason why an individual inmate poses a particular threat to

27  women.

28      20.    S.B. 132 effectively eliminates women-only correctional facilities in California,

6

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

leaving incarcerated women at unnecessarily increased risk of physical and sexual violence and reduced opportunity for rehabilitation. Because few women desire to be housed in a men's facility, while hundreds and potentially thousands of men desire to be housed with women, the result of S.B. 132 is to transform the California prison system from being sex-separated with facilities for men, and facilities for women, to a system comprised of men's facilities, and mixed-sex facilities.

21.     S.B. 132's terminology rests on illogical, circular reasoning and counterfactual assertions that inevitably cause S.B. 132 to irrationally and arbitrarily harm, endanger, and violate the rights, of women.

22.     S.B. 132 does not define "men," "women," "male," "female," "gender," or "gender identity," yet uses all of those terms in tautological attempts to define other terms such as "transgender," "nonbinary," and "intersex." Stats 2020 ch 182 § 4 (SB 132), Sec. 2(a).

23.     S.B. 132 (annotated) states that the term "transgender" is "broad and inclusive of all gender identities different from the gender a person was assigned at birth including, but not limited to, transsexual, two-spirit, and mahu." *Id.* The annotated law goes on to state that "Nonbinary" is "an inclusive term used to describe individuals who may experience a gender identity that is neither exclusively male nor female or is in between or beyond both of those genders, including, but not limited to, gender fluid, agender or without gender, third gender, genderqueer, gender variant, and gender nonconforming." *Id.*

24.     S.B. 132 inaccurately claims that "intersex" is "a broad and inclusive term referring to people whose anatomy, hormones, or chromosomes fall outside the strict male and female binary." Stats 2020 ch 182 § 4 (SB 132), Sec. 2(a).

25.     People with differences of sexual development (DSDs, the preferred term over the older, less accurate term "intersex") are women, or men, who have any number of congenital, medical conditions that affect their reproductive systems and may result in a person's anatomy, hormones, and/or chromosomes falling outside the *normal presentation for the person's sex* but no such condition results in the person with a DSD falling "outside" being either male, or female.

26.     Adding further insult to people with DSDs, S.B. 132 claims that a person can "identify" as "intersex," (Cal. Pen. Code § 2605(a)(2)), as opposed to recognizing that DSDs are

objectively existing medical conditions, not a matter of self-declared "identity."

27.     S.B. 132 grants the right to have a housing preference granted, and the right to be "addressed in a manner consistent with the incarcerated individual's gender identity" <u>only</u> to an incarcerated individual "who is transgender, nonbinary, or intersex, regardless of anatomy[.]" Cal. Pen. Code § 2606(a)(1), (3).

28.     Classifying an incarcerated individual is done by CDCR asking the individual "The individual's gender identity *of female, male, or nonbinary*" and "Whether the individual *identifies as transgender, nonbinary, or intersex*." Cal. Pen. Code § 2605(a)(1)-(2).

29.     S.B. 132 asserts that expression of a person's "gender" and granting the person "respect, agency, and dignity" (by granting the person the rights to, *inter alia*, have a housing preference granted), is required regardless of whether the person undertakes "Gender transition" in the form of "social transition, legal transition, medical transition, or none of these" and regardless of whether the person meets diagnostic criteria for the condition of "gender dysphoria" or otherwise experiences mental distress based on their sex.

30.     Thus, S.B. 132 requires classification of an incarcerated individual as "transgender, nonbinary, or intersex" (and thus entitled to the right for a housing preference to be granted) based solely on the individual's subjective self-declaration that the person "identifies as transgender, nonbinary, or intersex." Any and all objective or factual inquiry into the manner in which, or for what motive or purpose, an individual "identifies" is prohibited by S.B. 132, including taking into account anatomy, genitalia, physical characteristics, or even legal sex designation. In short, there is no basis on which CDCR, or anyone else, can challenge the sincerity or factual correctness of an incarcerated individual's proclaimed "identity" as transgender, nonbinary, or intersex

31.     Under S.B. 132, CDCR must house a man in a women's facility even if the man does *not* claim a "gender identity of female," since a man qualifies for this special right if he "identifies as transgender" which means any gender identity "different from the gender a person was assigned at birth" including labels such as "agender" or "genderqueer" or "gender fluid" (no definitions of these neologisms are given in the statute), or identifies as "nonbinary" (a gender identity that is "neither exclusively male nor female or is in between or beyond both of those

genders") or identifies as "intersex" (people whose "anatomy, hormones, or chromosomes fall outside the strict male and female binary").

32.     S.B. 132 thus requires incarcerated women to be housed with men who do not even claim a female gender identity and may instead be claiming an identity consisting of feeling entirely male one day and entirely female the next day (gender fluidity) or claiming to be neither male nor female (agender; nonbinary), or a feeling that one is 75% male and 25% female (nonbinary). S.B. 132 does not even attempt to ensure that incarcerated women are housed with men who believe they are, or wish to be, or feel best presenting and blending in as, women. Any man who does not "identify" as "exclusively male" has the right to be housed with women, many of whom have been traumatized by male violence in their past, and some of whom have been victimized physically or sexually by violence perpetrated by men who claim a "transgender" identity.

33.     In this way, S.B. 132 converts "women's facilities" into facilities housing a collection of women, and men with any self-declared "identity" that is not exclusively male even though such men may (and most do) retain the anatomy, genitalia, and physical characteristics that define them as male-sexed humans.

34.     By insisting that anatomy, genitalia, and physical characteristics must not be taken into account in determining whether CDCR has a legitimate reason to deny a man's housing preference, S.B. 132 impliedly acknowledges that it is precisely a combination of anatomy, genitalia, and physical characteristics that differentiate men from women, justifying sex-separation of prisons in the first place. If human beings were not sexually dimorphic, divided into males and females each with reproductive systems, hormones, and chromosomes that result in significant differences between men, and women, most of which place women in a physically, emotionally, and psychologically vulnerable position vis-à-vis men and result in women having medical and psychological needs exclusive to their status as female humans, then there would be no rationale or need to house incarcerated women separately from incarcerated men.

35.     The reality that men and women are factually, materially, immutably different, in ways that disadvantage women and necessitate attention to women's unique needs, supports protection of incarcerated women by providing women-only correctional facilities. S.B. 132

1    removes the protection of women-only facilities to the detriment of women, with no corresponding
2    detriment to men.

3          36.    Recognizing some of the negative consequences for incarcerated women of
4    converting women's facilities to mixed-sex facilities, on information belief, CDCR has been
5    approving transfers of men into women's facilities pursuant to S.B. 132 in a manner not consistent
6    with S.B. 132. For example:

7          a.  Incarcerated women on the Inmate Advisory Council (IAC) at California
8            Institution for Women ("CIW") were informed in July 2021 in an IAC
9            meeting with an associate warden and other prison officials for CIW, that
10           "no one will be forced to live with a transgender female," that "Transgender
11           females will be clustered for their orientation period" and after orientation
12           may "house together with someone they are compatible with…if they want
13           to" and that the "preference is to place individuals in vacant cells" but
14           "double-celled."

15         b.  On information and belief, CDCR is requiring men who state a housing
16           preference for a women's facility to take "orientation" courses before and
17           after transfer to a women's facility.

18         c.  On information and belief, CDCR staff are holding up many housing
19           requests from men wishing to transfer to women's facilities due to staff's
20           concerns that the men are applying for transfer under "false pretenses" and
21           are not "really transgender or nonbinary."

22         d.  On information and belief in August 2021 during a State Senate hearing, a
23           CDCR official testified that the department has "elected to slow down a little
24           bit in our implementation of SB 132. We're looking to contract with
25           nationwide experts on this issue to help us navigate a complex issue. … So,
26           as a department, as I said, we're slowing down a little bit. We want to make
27           sure we get this right. We want to make sure we're providing safe housing
28           for our population, and we get this right."

37.     Nowhere does S.B. 132 permit CDCR to "cluster transgender females" or grant incarcerated women the right to "not be forced to live with a transgender female," nor does the statute give CDCR the discretion to require a man with a transgender identity to take "orientation" courses before granting the man's housing preference, nor does it provide any basis on which CDCR might determine that a man's claim to a transgender or nonbinary identity is "false," nor the option of "slowing down" implementation of S.B. 132 to first consult with "nationwide experts."

38.     These actions by CDCR are *ultra vires* and in contravention of S.B. 132. That CDCR cannot implement S.B. 132 as written, out of concern that doing so will not "provide safe housing for our population," evidences the facial unconstitutionality of S.B. 132.

39.     On information and belief, several hundred men have applied for transfer to a women's facility since S.B. 132 took effect, and CDCR has transferred some two dozen men into California Institution for Women ("CIW") and Central California Women's Facility ("CCWF"), and has denied zero requests for transfers from men's facilities into women's facilities.

40.     If there was no difference between women, and men with a transgender identity, nonbinary identity, or intersex identity, then CDCR would not be faced with challenges with regard to how to "get this right" with regard to housing such men with women in women's facilities. There would be no need to "slow down" approving the hundreds of housing preference requests that men have made that CDCR has not yet granted, if such transfers were simply a matter of adding individuals who are the same as women, to the women's facilities. But precisely because there are meaningful differences between women and men (including men with these special identities), CDCR is unsurprisingly finding it difficult to house men with women and still provide women with safe housing.

41.     When being of the female sex is replaced by stating an "identity" (of anything other than exclusively male) as the criterion for housing incarcerated individuals in women's facilities, the facilities are no longer sex-separated into men's and women's facilities, but are instead separated based on each individual's subjective belief about what it means to feel male, female, both, or neither. As there are no objective factors for such a selection criterion, under S.B. 132 all facilities in California have become mixed-sex as well as multi-"gender" (though "gender" is

1  nowhere defined or clarified as to whether gender is a synonym for sex, or something different from

2  sex).

3      42.     On information and belief, incarcerated women including the individual Plaintiffs

4  herein, have experienced fear, anxiety, depression, and/or post-traumatic stress disorder, as a direct

5  result of now: sharing close-quarters housing, showering, dining, and recreation with men;

6  observing that some incarcerated women are now having sexual relations with the incarcerated men

7  transferred into CIW and CCWF, creating a risk of pregnancy and the health and emotional

8  complications from becoming pregnant while incarcerated, which would not have occurred but for

9  S.B. 132;  and observing changes to the environment of women's facilities to become more like

10  men's facilities, to the emotional and psychological detriment of incarcerated women.

11      43.     On information and belief, some incarcerated women sharing a cell with a man,

12  along with other women, now make sleep schedules among the women so that a woman is on watch

13  to try to prevent rape by the male cellmate.

14      44.     On information and belief, prison staff in women's facilities are now armed with

15  new, stronger pepper spray and riot control measures in anticipation that men are stronger and more

16  violent than women.

17      45.     On information and belief, women's facilities have procured condoms, have

18  changed contraceptive policy to make them available to all female inmates, at least temporarily

19  dispensed condoms to incarcerated women, along with printed information about pregnancy and

20  sexually transmitted diseases, in anticipation that with male offenders now housed with female

21  offenders, male/female sex would occur and present those risks to women.

22      46.     On information and belief, CCWF has considered cutting down the only shade trees

23  in the exercise yard, which also attract birds that the women enjoy and appreciate, because

24  incarcerated men might use the trees as weapons and/or because the trees cause visual blind spots

25  that present security risks in a mixed-sex environment that are not present in a female-only

26  environment, and numerous women suffered psychological distress at the prospect of having the

27  women's only connection to nature stripped away because of the presence of male offenders.

28      47.     On information and belief, incarcerated women in CIW and CCWF experience

psychological distress, fear, and anxiety at the constant possibility of additional men being housed in the women's facilities. The psychological impact of being housed with men, and/or constantly fearing it, constitutes an "unofficial punishment" experienced by incarcerated women with no corresponding experience inflicted upon incarcerated men.

48.     On information and belief, when incarcerated women have filed administrative grievances requesting that CDCR stop transferring men into the women's facilities, CDCR has altered the complaining inmate's statements recounted or summarized in written complaint forms to, for example, change references to "men" to "transgender females," or "transgender women," thereby altering the complaining inmate's own words, perception, and substance of requested corrective action.

49.     Though not expressly stated, to the extent that a motivating purpose of S.B. 132 is to honor the "dignity" of a man who identifies as a "transgender woman" by allowing him to serve his sentence experiencing a female environment because such an environment is most consonant with the man's inner sense of feeling or desiring to be female, the very environment unique to a female-exclusive space deteriorates due to the presence of men (even men with a "gender identity" of female, and S.B. 132 does not require men even to claim a "gender identity" of female). Thus, under S.B. 132 both women, and men with a "female gender identity," are denied the experience of an exclusively-female environment in which to serve their sentences and try to rehabilitate.

50.     On information and belief, the impact of S.B. 132 and the approximately 23 men transferred into women's facilities since it became effective, has already resulted in significant deterioration of the female environment of CCWF and CIW. Transfers of the nearly three hundred additional men who have already requested housing with women pursuant to S.B. 132 will only further that deterioration, resulting in loss of benefits to women with no benefit accruing to the transferred men in terms of experiencing an environment consistent with a "female gender identity."

51.     CDCR's "Senate Bill 132 FAQs" on its website, found at https://www.cdcr.ca.gov/prea/sb-132-faqs/, claims that CDCR cannot house incarcerated individuals with a transgender identity in a facility specifically designed for transgender inmates, because that would violate the Prison Rape Elimination Act (PREA) Standard found at 28 C.F.R.

115.42(g). However, PREA does not require the State of California to dismantle sex-separated correctional facilities, and leaves wide discretion to states to ensure the safety of inmates with transgender identities within the framework of single-sex facilities.

52.     CDCR's Prison Rape Elimination Policy in its Operations Manual (revised May 19, 2020) at Article 44, Section 54040.1, sets forth a goal of ensuring a "secure environment, free from offender on offender sexual violence, staff sexual misconduct, and sexual harassment" and the policy applies to "all offenders." The policy is to ensure compliance with PREA and provides "guidelines for the prevention, detection, response, investigation, and tracking" of sexual violence and harassment against offenders. *Id. at* Section 54040.2.

53.     PREA, and CDCR's PREA Policy contain special provisions to address the vulnerability of "LGBTI" offenders (the acronym used and defined in the CDCR's PREA Policy, Article 44, Section 54040.3, as meaning "sexual minorities, including lesbian, gay, bisexual, transgender and intersex"). These "LGBTI" provisions apply to both men and women. However, PREA, and CDCR's PREA Policy, are also intended to protect women (and  men) who do not have "sexual minority" designation, further emphasizing that a goal of decreasing vulnerability of a subset of men (those with "sexual minority" designation) cannot be pursued by increasing the vulnerability of women (regardless of "sexual minority" designation).

54.     Incarcerated women are victimized by sexual assault (perpetrated almost entirely by male prison staff) at much higher rates than the general female population. Subjecting women to the presence of male *inmates* in addition to male staff substantially increases the risk of sexual violence and sexual harassment faced by incarcerated women. Given that men employed by the State, trained to work as corrections officers and other prison staff (including training specific to preventing sexual violence) perpetrate sexual harassment and assault against incarcerated women at a higher rate than male-on-female violence in the general population, there is every reason to believe that male *offenders* pose as great, or greater, a risk to incarcerated women.

55.     CDCR's PREA Policy does not mandate that male offenders who are "sexual minorities" (according to the definition used in the PREA Policy) must be transferred to women's facilities due to actual or potential sexual victimization by other men in men's facilities; alternative

procedures and processes are set forth to protect men who are at high risk of sexual violence in men's facilities (including sexual minorities, and others). Yet, S.B. 132 now requires CDCR to house a subset of that male inmate population with women.

56.  While PREA contains certain protections for offenders who are LGBTI, PREA's purpose, to prevent and redress sexual harassment and sexual assault in prisons, applies to women with or without LGBTI classification, as much as to men. Thus, decreasing the risk that a subgroup of men will suffer prison rape only by creating a corresponding increased risk that women will suffer prison rape, is neither constitutional nor compliant with PREA.

57.  S.B. 132 singles out men with self-declared identities of "transgender, nonbinary, or intersex" for the special right to be housed in women's facilities, while not granting that same right to other men who are "sexual minorities" under the PREA definition (such as, gay or bisexual men) nor to other men who are also at high risk of sexual victimization (for instance, inmates convicted of sexual offenses against minors).

58.  S.B. 132 ostensibly serves a legitimate or important purpose (preventing sexual victimization of some men who are at high risk of victimization by other men). But the means by which that purpose is served – housing men who identify as transgender, nonbinary, or intersex with women – results in those subgroups of men being safer from sexual victimization only by concurrently making women less safe from sexual victimization.

59.  Additionally, men who are also at high risk of sexual victimization in a men's facility are not provided by S.B. 132 with the right to "preferred" housing with women, solely because such men do not declare a specific "identity." Similarly, S.B. 132 grants men housed with women special rights to select cell arrangements and similar choices not granted to women, solely because such women do not declare a specific "identity." S.B. 132 therefore treats men, and women, less favorably on the basis of self-declared identity insofar as incarcerated men and women without the "right kind" of identity do not receive the rights granted to those inmates who do declare specific identities.

60.  Further, S.B. 132 grants special housing preference rights based solely on self declaration of identity, with no prerequisite demonstration that an individual is actually more

vulnerable to sexual victimization, such that any man regardless of actual vulnerability can secure the right to be housed with women. Absurdly, this can include a man with *no medical condition or difference of sexual development whatsoever* nor any self-declared "gender identity" at all, merely declaring himself to have an "intersex identity" and he is then entitled to be housed with women.

61.     Men who identify as "transgender" suffer from mental illness at higher rates than in the general male population. Male offenders who identify as "transgender" have higher rates of sexual offenses in their criminal backgrounds than the general male offender population. Mental illness, as well as sex offender status, are factors correlated with a higher risk of sexual victimization in prison. S.B. 132 therefore places women at knowingly increased risks of harm, by housing incarcerated women with men who are even more likely than other men to suffer from mental illness and commit sex offenses, and preventing CDCR from refusing housing preference requests by men based on mental illness or sex offender status.

62.     Under S.B. 132 any man can claim the right to be housed with women merely by uttering the incantation "I have a transgender (or nonbinary) (or intersex) identity." S.B. 132 specifically prevents CDCR from evaluating a male inmate's request for transfer to a women's facility based upon the man's "physical characteristics." S.B. 132 is not proportionately tailored to protect the population whom the statute ostensibly intends to help: men who claim a transgender, nonbinary, or intersex identity *who are vulnerable to sexual victimization by other men because of that identity*. Similar deficiency exists with respect to the statute's other stated purpose, of upholding the agency and dignity of men with a transgender, nonbinary, or intersex identity: there is no reasonable or compelling connection between that goal, and the "solution" of housing men with women – particularly since by definition, the men receiving that special right include not only men who claim a "female gender identity" but men whose identity is, essentially, anything except fully, exclusively male. There is thus no inherent, logical reason why these men's "dignity" is furthered by housing them with women, especially when doing so poses risks and harms to women, including women who claim a transgender, nonbinary, or intersex identity. Although S.B. 132 grants women the same right as men to claim a transgender, nonbinary, or intersex identity, the vast majority of inmates claiming such an identity *and also requesting to be housed with the sex opposite*

*of the sex of the requesting inmate*, are men. On information and belief, only a handful of women claiming a transgender, nonbinary, or intersex identity have requested to be housed with men, while hundreds of men have requested to be housed with women.

63.     S.B. 132 is thus neither a rational nor substantially related means to achieving the legitimate or important interest of preventing sexual victimization of men with transgender, nonbinary, or intersex "identities" and violates the federal and state constitutional rights of Plaintiffs and other incarcerated women without adequate justification.

64.     There is no administrative remedy available to address, redress, or remediate the harms, injuries, and deprivations of rights caused by S.B. 132 that CDCR can provide to Plaintiffs while complying with S.B. 132.

## JURISDICTION AND VENUE

65.     This Court has original subject matter jurisdiction over Plaintiffs' claims that S.B. 132 is unconstitutional under the United States Constitution, pursuant to 28 U.S.C. § 1331.

66.     This Court has authority to exercise supplemental jurisdiction over Plaintiffs' claims that S.B. 132 is unconstitutional under the California Constitution, pursuant to 28 U.S.C. § 1367.

67.     This Court has personal jurisdiction over the Defendants, who are charged by law with implementing S.B. 132 and have in fact begun its implementation in CIW and CCWF, which are California state prisons operated by Defendant CDCR and by the individual Defendants in their official capacities, and one of which (CCWF) is located in this District, causing injury in fact to the individual Plaintiffs who are currently housed in CCWF.

68.     This District is the appropriate venue for resolving this case or controversy under 28 U.S.C. § 1391(b), as each of the Defendants resides in this District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District (Fresno Division).

## PARTIES

69.     Plaintiff Nadia Romero ("Nadia") is a female offender currently incarcerated in Central California Women's Facility. Nadia is a survivor of severe sexual and physical abuse beginning in childhood. Nadia has a history of anxiety, depression, and substance abuse. Sharing a housing unit with men has led to Nadia experiencing panic attacks, insomnia, and self-harm

ideation. Nadia filed a grievance describing an incident where she was grabbed by a man in her unit informing the prison of her heightened risk of rape and violence from male offenders; the prison's response referred to men in her unit as "transgender females." Nadia does not believe that sex is determined by a person's internal identity. Nadia is a Catholic whose faith is deeply important to her, and whose religious practice is impaired by being placed in an intimate setting with unrelated men.

70.     Plaintiff Krystal Gonzalez ("Krystal") is a female offender currently incarcerated in Central California Women's Facility. Krystal was sexually assaulted by a man transferred to her unit under S.B. 132. Krystal filed a grievance and requested single-sex housing away from men; the prison's response to Krystal's grievance referred to her assault by a "transgender woman with a penis." Krystal does not believe that women have penises, and she the psychological distress caused by her assault is exacerbated by the prison's refusal to acknowledge the sex of her perpetrator.

71.     Plaintiff Janine Chandler ("Janine") is a female offender currently incarcerated in Central California Women's Facility. Janine is an observant Muslim whose right to privacy and right to exercise her religion are both violated when she is housed in facilities with men. She is also a survivor of domestic violence.

72.     Plaintiff Tomiekia Johnson ("Tomiekia") is a female offender currently incarcerated in Central California Women's Facility. Tomiekia is a survivor of domestic violence.

73.     Plaintiff Woman II Woman, Inc. ("Woman II Woman") is a nonprofit corporation formed under the laws of the State of California in March 2021 with a business address in Torrance, California, organized by formerly incarcerated women to advocate for incarcerated women. Woman II Woman provides dignified re-entry services, parole hearing preparation, and advocacy for the safety and dignity of incarcerated and other justice-involved women in California.

74.     S.B. 132 poses such a risk to the safety and dignity of incarcerated women that it is causing Woman II Woman to expend a distorted proportion of its modest revenues and time resources pursuing avenues for declaring S.B. 132 unconstitutional or otherwise repealed. As a result, Woman II Woman is diverting substantial portions of its monetary and time resources away

1  from projects and services core to its mission, such as providing no-cost re-entry services and parole

2  hearing preparation to individual women in need.

3        75.    Woman II Woman assists and advocates for individual women, as clients, who reach

4  out to Woman II Woman through the limited channels available for incarcerated women to seek

5  outside assistance. Woman II Woman represents and advocates for the interests of its clients,

6  including the many clients who are suffering harm as the direct result of S.B. 132.

7        76.    Those clients of Woman II Woman who remain incarcerated in California (as

8  opposed to on parole) are being injured by S.B. 132, and remedying that injury by seeking to have

9  S.B. 132 declared unconstitutional is germane to a core mission and purpose of Woman II Woman

10  – promoting the safety and dignity of incarcerated women in California. Because this lawsuit seeks

11  declaratory and injunctive relief, participation of Woman II Woman's individual clients is not

12  necessary for Woman II Woman to pursue claims on their behalf.

13        77.    Defendant California Department of Corrections and Rehabilitation (CDCR) is a

14  department of the State of California that manages all state-operated adult prisons, including the

15  women's correctional facilities CIW and CCWF where the individual Plaintiffs, and many of

16  Woman II Woman's clients, are currently housed. By statute, Defendant CDCR is charged with

17  implementing the provisions of S.B. 132.

18        78.    Defendant Kathleen Allison ("Allison") is the current Secretary of CDCR and is

19  responsible in her official capacity for the operation of all adult state correctional institutions,

20  including the women's correctional facilities CIW and CCWF where the individual Plaintiffs, and

21  many of Woman II Woman's clients, are currently housed. In that capacity, Defendant Allison is

22  required by law to exercise powers and perform duties prescribed by law with respect to

23  administration of California's prison system. Defendant Allison is legally responsible, in her

24  official capacity, for implementing S.B. 132, including by exercising her authority to direct

25  activities of subordinate officers and other CDCR employees. At all relevant times Defendant

26  Allison was acting under color of law and is being sued in her official capacity.

27        79.    Defendant Michael Pallares ("Pallares") is the current Warden of CCWF and is

28  responsible in his official capacity for the day to day operations of the women's correctional facility

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

CCWF where the individual Plaintiffs, and many of Woman II Woman's clients, are currently housed. In that capacity, Defendant Pallares is required by law to exercise powers and perform duties prescribed by law with respect to administration of California's prison system. Defendant Pallares is legally responsible, in his official capacity, for implementing S.B. 132, including by following directives from Defendant Allison and by exercising his authority to direct activities of subordinate CDCR employees. At all relevant times Defendant Pallares was acting under color of law and is being sued in his official capacity.

80.     Defendant Mona D. Houston ("Houston") is the current Warden of CIW and is responsible in her official capacity for the day to day operations of the women's correctional facility CIW where many of Woman II Woman's clients are currently housed. In that capacity, Defendant Houston is required by law to exercise powers and perform duties prescribed by law with respect to administration of California's prison system. Defendant Houston is legally responsible, in her official capacity, for implementing S.B. 132, including by following directives from Defendant Allison and by exercising her authority to direct activities of subordinate CDCR employees. At all relevant times Defendant Houston was acting under color of law and is being sued in her official capacity.

## FIRST CLAIM FOR RELIEF
## (FOR DECLARATORY JUDGMENT THAT S.B. 132 VIOLATES THE EIGHTH AMENDMENT TO THE U.S. CONSTITUTION)

81.     Plaintiffs reallege and incorporate herein by reference each of the foregoing allegations.

82.     As set forth above, S.B. 132 on its face imposes cruel and unusual punishment on incarcerated women, including the individual Plaintiffs and female offenders who are clients of the organizational Plaintiff.

83.     The Eighth Amendment to the U.S. Constitution prohibits cruel and unusual punishment. Prison officials have a duty under the Eighth Amendment to protect prisoners from physical and sexual violence and abuse by other prisoners, including a known substantial risk or probability that such violence will occur, and including the psychological distress and terror of

1    knowing that such violence may occur at any time.

2        84.    Women are disproportionately subject to sexual victimization by men. S.B. 132

3    permits any man, by stating an identity and without requiring any proof, evidence, or action on the

4    man's part that would indicate any lower risk of male pattern violence than for an average man, to

5    demand to be housed with women. This statutory directive unconstitutionally imposes cruel,

6    unusual punishment on female offenders, by subjecting them to substantially increased risk of

7    sexual harassment, sexual assault, rape, and physical violence, and to psychological fear of such

8    harms, compared to those risks when men are not legally entitled to transfer to women's facilities

9    based on a statement of "identity."

10       85.    S.B. 132 is unconstitutional in all applications, as there is no application that does

11   not result in imposition of cruel, unusual, unconstitutional punishment imposed on Plaintiffs and

12   other incarcerated women, in violation of the Eighth Amendment.

13       86.    Defendants have begun implementing S.B. 132 and, on information and belief,

14   continue its implementation at least in part, even if Defendants have also "slowed down"

15   implementation to consult with "national experts" on how best to implement S.B. 132 while

16   meeting Defendants' known duty to provide safe housing to all populations in California prisons,

17   including incarcerated women.

18       87.    A controversy has arisen over the constitutionality under the Eighth Amendment of

19   S.B. 132, wherein Plaintiffs contend the statute is facially unconstitutional, and unconstitutional as

20   applied to Plaintiffs, and on information and belief, Defendants will contend that it is possible to

21   implement S.B. 132 in a constitutional manner that comports with the Eighth Amendment's

22   prohibition against cruel and unusual punishment.

23       88.    Plaintiffs request a judicial declaration pursuant to 28 U.S.C. § 2201 that S.B. 132

24   is unconstitutional on its face and as applied to Plaintiffs under the Eighth Amendment, and that

25   application by CDCR of the directives in Cal. Pen. Code §§ 2605, 2606 regarding housing male

26   offenders who identify themselves as "transgender, nonbinary, or intersex" in women's facilities

27   violates the duty of Defendants under the Eighth Amendment to protect Plaintiffs from cruel and

28   unusual punishment.

**SECOND CLAIM FOR RELIEF**
**(FOR DECLARATORY JUDGMENT THAT S.B. 132 VIOLATES THE**
**FIRST AMENDMENT TO THE U.S. CONSTITUTION)**

89.     Plaintiffs reallege and incorporate herein by reference each of the foregoing allegations.

90.     S.B. 132 grants to inmates who claim a "transgender, nonbinary, or intersex" identity the right to be referred to by pronouns and honorifics of the inmate's preference. The law contains no exception, exemption, or distinction between CDCR staff, and CDCR inmates, such that all are compelled by S.B. 132 to use words and language in a manner that suggests adherence to beliefs the speaker may not share (for instance, that "she" refers to a male person, or that once he has declared a "transgender" identity a man is no longer a man but is a "transgender woman").

91.     S.B. 132 requires individual Plaintiffs and other incarcerated women to refer to men using words and language that obscures the speaker's own perception and rationally-based belief about the sex of individuals required by S.B. 132 to be housed in women's facilities, subjecting women who do not comply with S.B. 132's demand for compelled speech and belief potentially to discipline with consequences ranging from placement in administrative segregation to denial of parole and extension of sentences. Knowing these likely, foreseeable consequences of speaking about the men housed in women's facilities (and awaiting transfer), Plaintiffs' freedom of speech and expression is chilled by S.B. 132.

92.     On information and belief, CDCR has applied S.B. 132's mandates regarding compelled speech and belief to individual Plaintiffs by, *inter alia*, refusing to consider Plaintiffs' own written statements of complaint about being housed with men and instead altering Plaintiffs' written statements that refer to men and males, using factual, neutral, and appropriate sex-indicative pronouns such as "he." By refusing to consider complaints and grievances that Plaintiffs actually presented to CDCR, and instead only considering versions of such complaints and grievances rewritten with language and concepts that reflect the government's approved set of beliefs, S.B. 132 as applied in this manner by CDCR violates Plaintiffs' First Amendment right to petition the government. Furthermore, S.B. 132 necessarily results in this deprivation of Plaintiffs' First

Amendment right to petition the government, because S.B. 132 mandates that an inmate who claims a "transgender, nonbinary, or intersex" identity "shall (1) Be addressed in a manner consistent with the incarcerated individual's gender identity." Cal. Pen. Code § 2606(a)(1).

93.   S.B. 132 violates the right of Plaintiffs to freedom of speech under the First Amendment of the U.S. Constitution by prohibiting Plaintiffs from using words and language with objective, neutral meaning to describe and express concerns about the dynamic of men housed with women created by S.B. 132. S.B. 132 further constitutes an unconstitutional prior restraint on Plaintiffs' speech, chilling Plaintiffs' speech and expression protected under the First Amendment.

94.   S.B. 132 contains no exemption or exception that might protect the right of women with sincerely held religious beliefs concerning sharing living quarters and intimate spaces with men other than the woman's husband or family member, including exposure of a woman's unclothed body to the view of men other than a woman's husband or family member, or exposure of such a man's unclothed body in the presence of a woman who holds such religious beliefs, to the free exercise of religion guaranteed under the First Amendment of the U.S. Constitution. A governmental interest in protecting certain men from sexual victimization in men's prisons, or in upholding the dignity of such men, is not a compelling reason to refuse to accommodate women's constitutionally guaranteed right to free exercise of religion.

95.   S.B. 132 violates the Establishment Clause of the First Amendment of the U.S. Constitution by requiring prison housing placements between men's and women's facilities to be made, and by imposing speech and expression requirements, based on a faith-based belief system founded on acceptance of the unproven (and unprovable) assertion that human beings have no objective, immutable sex or that a person's sex can be changed or made irrelevant by a person's inner "identity," when identity (like the theological concept of a "soul") has no scientific, factual basis yet human sexual dimorphism is a material fact of reality. Adoption by government of a faith-based belief system that is not grounded in objective, provable facts and contradicts objective, provable facts, establishes a government-sanctioned religious doctrine in which Plaintiffs and other incarcerated women are compelled to profess adherence, and upon which government actions regarding the treatment of women and men in prisons are founded, violates the Establishment

Clause's prohibition against government promotion of and entanglement with religion for purposes that are wholly religious in nature, not secular.

96.     A controversy has arisen over the constitutionality of S.B. 132, wherein Plaintiffs contend the statute is facially, and as applied to Plaintiffs, unconstitutional and in violation of the Free Speech Clause, Free Exercise Clause, right to petition the government, and Establishment Clause, of the First Amendment of the U.S. Constitution. On information and belief, Defendants will contend that it is possible to implement S.B. 132 in a constitutional manner that comports with the First Amendment and that CDCR has not applied S.B. 132 in a manner that has violated any Plaintiff's First Amendment rights.

97.     Plaintiffs request a judicial declaration pursuant to 28 U.S.C. § 2201 that S.B. 132 is unconstitutional on its face and as applied to Plaintiffs under the First Amendment, and that application by CDCR of the directives in Cal. Pen. Code §§ 2605, 2606 regarding housing male offenders who identify themselves as "transgender, nonbinary, or intersex" in women's facilities, and mandating that such male offenders be referred to only by pronouns and honorifics that validate the offender's chosen identity, violates the duty of Defendants under the First Amendment.

**THIRD CLAIM FOR RELIEF**
**(FOR DECLARATORY JUDGMENT THAT S.B. 132 VIOLATES THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION)**

98.     Plaintiffs reallege and incorporate herein by reference each of the foregoing allegations.

99.     S.B. 132 on its face deprives incarcerated women including the individual Plaintiffs and female offenders who are clients of the organizational Plaintiff from equal protection of the laws on the basis of sex and on the basis of "identity" or "gender identity" or "transgender status" in violation of the Fourteenth Amendment of the U.S. Constitution.

100.    A female-only environment best serves the interests of the government, and of women, in rehabilitation following criminal offenses committed by women. S.B. 132 converts women's correctional facilities into mixed-sex facilities, with no corresponding conversion of

men's facilities, imposing on women on the basis of sex a significant disadvantage and burden in the form of serving prison time without the benefit of rehabilitating in a single-sex environment.

101.    S.B. 132 imposes on female offenders increased risks of physical assault, sexual assault, sexual harassment, loss of dignity due to living in close quarters with and exposing one's naked body to persons of the opposite sex, and serious consequences of sexual relations between males and females such as pregnancy, abortion, and sexually transmitted diseases, with no corresponding increased risks imposed on men.

102.    S.B. 132 is not substantially related to any purported important governmental purpose aimed for by S.B. 132, and Defendants cannot justify imposing significant disadvantages, burdens, or increased risks of harms, on female offenders on the basis of sex. Incarcerated men, and incarcerated women, are similarly situated for purposes of whether men and women each are housed in single-sex correctional facilities. S.B. 132 results in elimination of women-only facilities, but not comparable elimination of men-only facilities. S.B. 132 causes harms to women from being housed with men, with no comparable harms imposed on men from being housed with women.

103.    S.B. 132 grants rights to inmates who declare a "transgender, nonbinary, or intersex" identity to choose to be housed with women, or with men, but also grants additional rights to "Have their perception of health and safety given serious consideration in any bed assignment, placement, or programming decision within the facility in which they are housed" including "but not limited to, granting single-cell status, housing the individual with another incarcerated person of their choice, or removing the individual or individuals who pose a threat from any location where they may have access to the individual who has expressed a safety concern." Cal. Pen. Code § 2606(a)(4). These rights are granted only to inmates who claim a "transgender, nonbinary, or intersex" identity, and not to persons who express safety concerns but whose "identity" is something other than "transgender, nonbinary, or intersex." S.B. 132 thus treats inmates differently on the basis of "gender identity" or "transgender status" causing disadvantage to inmates who have no "gender identity" or whose "gender identity" is not one of the identities favored under the statute. S.B. 132 serves no important governmental interest in treating people differently on the basis of "gender identity" or "transgender status" and does not employ means that are substantially related

to any governmental interest purported to be served by the statute.

104.     A controversy has arisen over the constitutionality of S.B. 132, wherein Plaintiffs contend the statute is facially, and as applied to Plaintiffs, unconstitutional and in violation of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution, on the basis of sex and on the basis of "gender identity" or "transgender status." On information and belief, Defendants will contend that it is possible to implement S.B. 132 in a constitutional manner that comports with the Equal Protection Clause and that CDCR has not applied S.B. 132 in a manner that has violated any Plaintiff's Fourteenth Amendment rights.

105.     Plaintiffs request a judicial declaration pursuant to 28 U.S.C. § 2201 that S.B. 132 is unconstitutional on its face and as applied to Plaintiffs under the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution, and that application by CDCR of the directives in Cal. Pen. Code §§ 2605, 2606 violates the Equal Protection Clause on the basis of sex and of "gender identity" and/or "transgender status."

## FOURTH CLAIM FOR RELIEF
### (FOR DECLARATORY JUDGMENT THAT S.B. 132 VIOLATES ARTICLE 1 § 17 OF THE CALIFORNIA CONSTITUTION)

106.     Plaintiffs reallege and incorporate herein by reference each of the foregoing allegations.

107.     CA Constitution Art. 1 § 17 mandates that cruel or unusual punishment may not be inflicted. Prison officials have a duty under the California Constitution to protect prisoners from physical and sexual violence and abuse by other prisoners, including a known substantial risk or probability that such violence will occur, and including the psychological distress and terror of knowing that such violence may occur at any time.

108.     Women are disproportionately subject to sexual victimization by men. S.B. 132 permits any man, by stating an identity and without requiring any proof, evidence, or action on the man's part that would indicate any lower risk of male pattern violence than for an average man, to demand to be housed with women. This statutory directive unconstitutionally imposes cruel, unusual punishment on female offenders, by subjecting them to substantially increased risk of

sexual harassment, sexual assault, rape, and physical violence, and to psychological fear of such harms, compared to those risks when men are not legally entitled to transfer to women's facilities based on a statement of "identity."

109.   S.B. 132 is unconstitutional in all applications, as there is no application that does not result in imposition of cruel, unusual, unconstitutional punishment imposed on Plaintiffs and other incarcerated women, in violation of the CA Constitution Art. 1 § 17.

110.   Defendants have begun implementing S.B. 132 and, on information and belief, continue its implementation at least in part, even if Defendants have also "slowed down" implementation to consult with "national experts" on how best to implement S.B. 132 while meeting Defendants' known duty to provide safe housing to all populations in California prisons, including incarcerated women.

111.   A controversy has arisen over the constitutionality under CA Constitution Art. 1 § 17   of S.B. 132, wherein Plaintiffs contend the statute is facially unconstitutional, and unconstitutional as applied to Plaintiffs, and on information and belief, Defendants will contend that it is possible to implement S.B. 132 in a constitutional manner that comports with the prohibition in CA Constitution Art. 1 § 17 against cruel or unusual punishment.

112.   Plaintiffs request a judicial declaration pursuant to 28 U.S.C. § 2201 that S.B. 132 is unconstitutional on its face and as applied to Plaintiffs under CA Constitution Art. 1 § 17, and that application by CDCR of the directives in Cal. Pen. Code §§ 2605, 2606 regarding housing male offenders who identify themselves as "transgender, nonbinary, or intersex" in women's facilities violates the duty of Defendants under CA Constitution Art. 1 § 17 to protect Plaintiffs from cruel or unusual punishment.

**FIFTH CLAIM FOR RELIEF**
**(FOR DECLARATORY JUDGMENT THAT S.B. 132 VIOLATES ARTICLE 1 § 2 OF THE CALIFORNIA CONSTITUTION)**

113.   Plaintiffs reallege and incorporate herein by reference each of the foregoing allegations.

114.   CA Constitution Art. 1 § 2 provides: "Every person may freely speak, write and

27
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

115.    S.B. 132 grants to inmates who claim a "transgender, nonbinary, or intersex" identity the right to be referred to by pronouns and honorifics of the inmate's preference. The law contains no exception, exemption, or distinction between CDCR staff, and CDCR inmates, who are all compelled by S.B. 132 to use words and language in a manner that suggests adherence to beliefs the speaker may not share (for instance, that "she" refers to a male person, or that once he has declared a "transgender identity" a man is no longer a man but is a "transgender woman").

116.    S.B. 132 requires individual Plaintiffs and other incarcerated women to refer to men using words and language that obscures the speaker's own perception and rationally-based belief about the sex of individuals required by S.B. 132 to be housed in women's facilities, subjecting women who do not comply with S.B. 132's demand for compelled speech and belief potentially to discipline with consequences ranging from placement in administrative segregation to denial of parole and extension of sentences. Knowing these likely, foreseeable consequences of speaking about the men housed in women's facilities (and awaiting transfer), Plaintiffs' freedom of speech and expression is chilled by S.B. 132.

117.    S.B. 132 violates the right of Plaintiffs to freedom of speech under CA Constitution Art. 1 § 2 by prohibiting Plaintiffs from using words and language with objective, neutral meaning to describe the dynamic of men housed with women created by S.B. 132. S.B. 132 further constitutes an unconstitutional prior restraint on Plaintiffs' speech, chilling Plaintiffs' speech and expression protected under CA Constitution Art. 1 § 2.

118.    A controversy has arisen over the constitutionality of S.B. 132, wherein Plaintiffs contend the statute is facially, and as applied to Plaintiffs, unconstitutional and in violation of CA Constitution Art. 1 § 2. On information and belief, Defendants will contend that it is possible to implement S.B. 132 in a constitutional manner that comports with CA Constitution Art. 1 § 2 and that CDCR has not applied S.B. 132 in a manner that has violated any Plaintiff's rights under CA Constitution Art. 1 § 2.

119.    Plaintiffs request a judicial declaration pursuant to 28 U.S.C. § 2201 that S.B. 132

is unconstitutional on its face and as applied to Plaintiffs under CA Constitution Art. 1 § 2, and that application by CDCR of the directives in Cal. Pen. Code §§ 2605, 2606 regarding housing male offenders who identify themselves as "transgender, nonbinary, or intersex" in women's facilities, and mandating that such male offenders be referred to only by pronouns and honorifics that validate the offender's chosen identity, violates the duty of Defendants under CA Constitution Art. 1 § 2.

**SIXTH CLAIM FOR RELIEF**
**(FOR DECLARATORY JUDGMENT THAT S.B. 132 VIOLATES ARTICLE 1 § 4 OF THE CALIFORNIA CONSTITUTION)**

120. Plaintiffs reallege and incorporate herein by reference each of the foregoing allegations.

121. CA Constitution Art. 1 § 4 states: "Free exercise and enjoyment of religion without discrimination or preference are guaranteed. This liberty of conscience does not excuse acts that are licentious or inconsistent with the peace or safety of the State. The Legislature shall make no law respecting an establishment of religion."

122. S.B. 132 contains no exemption or exception that might protect the right of women with sincerely held religious beliefs concerning sharing living quarters and intimate spaces with men other than the woman's husband or family member, including exposure of a woman's unclothed body to the view of men other than a woman's husband or family member, or exposure of such a man's unclothed body in the presence of a woman who holds such religious beliefs, to the free exercise of religion guaranteed under CA Constitution Art. 1 § 4. A governmental interest in protecting certain men from sexual victimization in men's prisons, or in upholding the dignity of such men, is not a compelling reason to refuse to accommodate women's constitutionally guaranteed right to free exercise of religion.

123. S.B. 132 violates the prohibition against government establishment or promotion of religious belief, CA Constitution Art. 1 § 4, by requiring prison housing placements between men's and women's facilities to be made, and by imposing speech and expression requirements, based on a faith-based belief system founded on acceptance of the unproven (and unprovable) assertion that human beings have no objective, immutable sex or that a person's sex can be changed or made

irrelevant by a person's inner "identity," when identity (like the theological concept of a "soul") has no scientific, factual basis yet human sexual dimorphism is a material fact of reality. Adoption by government of a faith-based belief system that is not grounded in objective, provable facts and contradicts objective, provable facts, establishes a government-sanctioned religious doctrine in which Plaintiffs and other incarcerated women are compelled to profess adherence, and upon which government actions regarding the treatment of women and men in prisons are founded, violates the prohibition in CA Constitution Art. 1 § 4 against government establishment and promotion of religion.

124.    A controversy has arisen over the constitutionality of S.B. 132, wherein Plaintiffs contend the statute is facially, and as applied to Plaintiffs, unconstitutional and in violation of the guarantee of free exercise and enjoyment of religion and the prohibition in CA Constitution Art. 1 § 4 against government establishment of religion. On information and belief, Defendants will contend that it is possible to implement S.B. 132 in a constitutional manner that comports with CA Constitution Art. 1 § 4 and that CDCR has not applied S.B. 132 in a manner that has violated any Plaintiff's rights under CA Constitution Art. 1 § 4.

125.    Plaintiffs request a judicial declaration pursuant to 28 U.S.C. § 2201 that S.B. 132 is unconstitutional on its face and as applied to Plaintiffs under the free exercise and enjoyment of religion and prohibition against government establishment of religion provisions in CA Constitution Art. 1 § 4, and that application by CDCR of the directives in Cal. Pen. Code §§ 2605, 2606 violates the duty of Defendants under CA Constitution Art. 1 § 4.

## SEVENTH CLAIM FOR RELIEF
### (FOR DECLARATORY JUDGMENT THAT S.B. 132 VIOLATES ARTICLE 1 § 7 OF THE CALIFORNIA CONSTITUTION)

126.    Plaintiffs reallege and incorporate herein by reference each of the foregoing allegations.

127.    CA Constitution Art. 1 § 7 protects against denial of equal protection of the laws. S.B. 132 on its face deprives incarcerated women including the individual Plaintiffs and female offenders who are clients of the organizational Plaintiff from equal protection of the laws on the

basis of sex and on the basis of "identity" or "gender identity" or "transgender status" in violation of CA Constitution Art. 1 § 7.

128.    A female-only environment best serves the interests of the government, and of women, in rehabilitation following criminal offenses committed by women. S.B. 132 converts women's correctional facilities into mixed-sex facilities, with no corresponding conversion of men's facilities, imposing on women on the basis of sex a significant disadvantage and burden in the form of serving prison time without the benefit of rehabilitating in a single-sex environment.

129.    S.B. 132 imposes on female offenders increased risks of physical assault, sexual assault, sexual harassment, loss of dignity due to living in close quarters with and exposing one's naked body to persons of the opposite sex, and serious consequences of sexual relations between males and females such as pregnancy, abortion, and sexually transmitted diseases, with no corresponding increased risks imposed on men.

130.    S.B. 132 is not substantially related to any purported important governmental purpose aimed for by S.B. 132, and Defendants cannot justify imposing significant disadvantages, burdens, or increased risks of harms, on female offenders on the basis of sex. Incarcerated men, and incarcerated women, are similarly situated for purposes of whether men and women each are housed in single-sex correctional facilities. S.B. 132 results in elimination of women-only facilities, but not comparable elimination of men-only facilities. S.B. 132 causes harms to women from being housed with men, with no comparable harms imposed on men from being housed with women.

131.    S.B. 132 grants rights to inmates who declare a "transgender, nonbinary, or intersex" identity regarding housing with women, or with men, but also grants additional rights to "Have their perception of health and safety given serious consideration in any bed assignment, placement, or programming decision within the facility in which they are housed" including "but not limited to, granting single-cell status, housing the individual with another incarcerated person of their choice, or removing the individual or individuals who pose a threat from any location where they may have access to the individual who has expressed a safety concern." Cal. Pen. Code § 2606(a)(4). These rights are granted only to inmates who claim a "transgender, nonbinary, or intersex" identity, and not to persons who express safety concerns but whose "identity" is something

31

other than "transgender, nonbinary, or intersex." S.B. 132 thus treats inmates differently on the basis of "gender identity" or "transgender status" causing disadvantage to inmates who have no "gender identity" or whose "gender identity" is not one of the identities favored under the statute. S.B. 132 serves no important governmental interest in treating people differently on the basis of "gender identity" or "transgender status" and does not employ means that are substantially related to any governmental interest purported to be served by the statute.

132.    A controversy has arisen over the constitutionality of S.B. 132, wherein Plaintiffs contend the statute is facially, and as applied to Plaintiffs, unconstitutional and in violation of CA Constitution Art. 1 § 7 by denying equal protection of the laws on the basis of sex and on the basis of "gender identity" or "transgender status." On information and belief, Defendants will contend that it is possible to implement S.B. 132 in a constitutional manner that comports with CA Constitution Art. 1 § 7 and that CDCR has not applied S.B. 132 in a manner that has violated any Plaintiff's rights under CA Constitution Art. 1 § 7.

133.    Plaintiffs request a judicial declaration pursuant to 28 U.S.C. § 2201 that S.B. 132 is unconstitutional on its face and as applied to Plaintiffs under CA Constitution Art. 1 § 7, and that application by CDCR of the directives in Cal. Pen. Code §§ 2605, 2606 denies equal protection of the laws on the basis of sex and of "gender identity" and/or "transgender status."

**EIGHTH CLAIM FOR RELIEF**
**(FOR DECLARATORY JUDGMENT THAT S.B. 132 VIOLATES ARTICLE 1 § 1 OF THE CALIFORNIA CONSTITUTION)**

134.    Plaintiffs reallege and incorporate herein by reference each of the foregoing allegations.

135.    CA Constitution Art. 1 § 1 guarantees a right to privacy. Even in the setting of a correctional facility, women including individual Plaintiffs and the clients whose interests are represented by the organizational Plaintiff, have a right to keep one's physical body (particularly when one's body must be unclothed, as to use a toilet, shower, or change clothes) shielded from the view, scrutiny, and commentary of men. The dignity inherent in women's right to bodily privacy out of the presence of men is premised on long-recognized social norms that acknowledge the

physical, biological, physiological differences between the females and males of the human species, and the prevention of indignity, embarrassment, and even sexual violation in the form of verbal harassment or sexual assault, posed to women who are forced to be unclothed in the presence of men.

136.    In the setting of a correctional facility, inmates may not have a general expectation of privacy as to unavoidable exposure of their unclothed bodies while using toilets, showers, or changing clothes. However, incarcerated women do have a reasonable expectation of privacy that their daily activities that unavoidably involve being unclothed occur outside the presence of men – particularly male inmates.

137.    Allowing men to be housed with women, such that female inmates are forced to live in close quarters with male inmates, including when engaged in daily activities that necessitate exposing one's body to other inmates (such as when using a toilet, shower, or changing clothes), constitutes an egregious breach of the social norms that uphold women's right to bodily privacy from men's view, scrutiny, commentary, or presence. S.B. 132, on its face, constitutes an invasion of women's rights to privacy in violation of CA Constitution Art. 1 § 1.

138.    A controversy has arisen over the constitutionality of S.B. 132 under CA Constitution Art. 1 § 1, wherein Plaintiffs contend the statute is facially unconstitutional, and unconstitutional as applied to Plaintiffs, and on information and belief, Defendants will contend that it is possible to implement S.B. 132 in a constitutional manner that comports with the right to privacy contained in CA Constitution Art. 1 § 1.

139.    Plaintiffs request a judicial declaration pursuant to 28 U.S.C. § 2201 that S.B. 132 is unconstitutional on its face and as applied to Plaintiffs under the rights to privacy guaranteed by CA Constitution Art. 1 § 1.

**NINTH CLAIM FOR RELIEF**
**(FOR PERMANENT INJUNCTION)**

140.    Plaintiffs reallege and incorporate herein by reference each of the foregoing allegations.

141.    SB. 132 is facially unconstitutional, and unconstitutional as applied to Plaintiffs, in the ways above alleged. Enforcement or implementation of S.B. 132 imposes irreparable harms on Plaintiffs. Plaintiffs have no adequate remedy at law, and the balance of equities weighs in favor of upholding Plaintiffs' constitutional rights. Plaintiffs are entitled to a permanent injunction enjoining Defendants from enforcing or implementing S.B. 132 (Cal. Pen. Code §§ 2605, 2606).

## **PRAYER**

WHEREFORE, Plaintiffs pray for judgment as follows:

1. Judgment in Plaintiffs' favor on all claims;

2. A judicial declaration that S.B. 132 is unconstitutional on its face, and as applied to Plaintiffs, under the Eighth Amendment to the U.S. Constitution;

3. A judicial declaration that S.B. 132 is unconstitutional on its face, and as applied to Plaintiffs, under the First Amendment to the U.S. Constitution;

4. A judicial declaration that S.B. 132 is unconstitutional on its face, and as applied to Plaintiffs, under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution;

5. A judicial declaration that S.B. 132 is unconstitutional on its face, and as applied to Plaintiffs, under Article 1 § 17 of the California Constitution;

6. A judicial declaration that S.B. 132 is unconstitutional on its face, and as applied to Plaintiffs, under Article 1 § 2 of the California Constitution;

7. A judicial declaration that S.B. 132 is unconstitutional on its face, and as applied to Plaintiffs, under Article 1 § 4 of the California Constitution;

8. A judicial declaration that S.B. 132 is unconstitutional on its face, and as applied to Plaintiffs, under Article 1 § 7 of the California Constitution;

9. A judicial declaration that S.B. 132 is unconstitutional on its face, and as applied to Plaintiffs, under Article 1 § 1 of the California Constitution;

10. A permanent injunction prohibiting Defendants and their agents from implementing the directives contained in S.B. 132 (Cal. Pen. Code §§ 2605, 2606).

11. Costs, including reasonable attorneys' fees under 42 U.S.C. § 1988 or as otherwise

permitted by law;

12. Such other relief that the Court deems just and equitable.

Dated:  November 17, 2021

RESPECTFULLY SUBMITTED,

By:   /s/ Candice Jackson
Candice Jackson (SBN 224648)
**FREEMAN MATHIS & GARY, LLP**
1010 B Street, Suite 300
San Rafael, California 94901
cjackson@fmglaw.com
Telephone:  415.352.6434

Lauren Adams (Wisconsin Bar No. 1095653)
(*Pro Hac Vice* forthcoming)
WOMEN'S LIBERATION FRONT
1802 Vernon St.  NW, #2036
Washington, DC  20009
Phone:  202-964-1127
legal@womensliberationfront.org

Counsel for Plaintiffs

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**