1   ROB BONTA, State Bar No. 202668
    Attorney General of California
2   PREETI K. BAJWA, State Bar No. 232484
    Supervising Deputy Attorney General
3   ANTHONY N. CORSO, State Bar No. 280618
    COLIN A. SHAFF, State Bar No. 300301
4   Deputy Attorney General
     455 Golden Gate Avenue, Suite 11000
5    San Francisco, CA  94102-7004
     Telephone:  (415) 510-4429
6    Fax:  (415) 703-5843
     E-mail:  Anthony.Corso@doj.ca.gov
7   *Attorneys for Defendants*
    *CDCR, K. Allison, M. Houston, and M. Pallares*

8                IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10                       FRESNO DIVISION

11

12

13   | JANINE CHANDLER; KRYSTAL | 1:21-cv-01657-JLT-HBK |

**JANINE CHANDLER; KRYSTAL GONZALEZ; TOMIEKIA JOHNSON; NADIA ROMERO, individuals; and WOMAN II WOMAN, a California non-profit corporation,**

                                    Plaintiff,

                    v.

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; KATHLEEN ALLISON, Secretary of the California Department of Corrections and Rehabilitation, in her official capacity; MICHAEL PALLARES, Warden, in his official capacity; MONA D. HOUSTON, Warden, in her official capacity; and DOES 1-10, inclusive,**

                                    Defendants.

1:21-cv-01657-JLT-HBK

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

Judge:        The Honorable Jennifer L. Thurston
Date:          May 19, 2022 at 9:00 a.m.
Courtroom:  4, 7th Floor
Trial Date:   N/A
Action Filed:  11/17/2021

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................... 1

Legislative History of S.B. 132 ........................................................................... 2

Summary of the Complaint ................................................................................... 3

Motion to Dismiss Standard of Review ................................................................ 4

Argument .............................................................................................................. 5

I.    The Plaintiffs Cannot Demonstrate Article III Standing ...................... 5

  A.    Legal Standard For Standing ..................................................... 5

  B.    Plaintiffs Fail to Assert Any Immediately Impending Harm
        Resulting From Defendants' Implementation of S.B. 132. ....... 5

  C.    Plaintiffs' Eighth Amendment Claims Are Not Fairly Traceable to
        Defendants' Actions. ................................................................. 6

  D.    Plaintiffs Have Failed to Demonstrate Actual Harm to Any of Their
        First Amendment Rights That Are Fairly Traceable to S.B. 132. ............. 7

  E.    Plaintiffs' Vague and Speculative Allegations of Harm Resulting
        From the Alleged Equal Protection Violations Do Not Establish
        Standing. .................................................................................... 9

  F.    Woman II Woman Cannot Demonstrate Organizational Standing .......... 10

II.   The Court Should Not Exercise Subject Matter Jurisdiction Over Plaintiffs'
      Claims. ..................................................................................................... 12

  A.    The Court Must Dismiss Plaintiffs' California Constitutional
        Claims. ...................................................................................... 12

  B.    The Court Should Abstain From Hearing Plaintiffs' Claims Until
        California Courts Review CDCR's Final Policies Related to S.B.
        132. ............................................................................................ 13

III.  Plaintiffs' Requested Relief May Create an Unconstitutional Condition for
      Transgender Inmates. ............................................................................... 14

IV.   The Court Should Dismiss Plaintiffs' Facial Constitutional Claims. ...... 14

V.    Defendants Houston, Allison, and Pallares Should Be Dismissed because
      their state-entity employer is a named Defendant. ................................ 16

VI.   Dismissal of the Complaint Is Appropriate Because Plaintiffs Do Not
      Allege a Cause of Action. ....................................................................... 16

  A.    The Legislature and CDCR Officials Are Entitled to Discretion in
        Housing Inmates. ...................................................................... 16

  B.    Plaintiffs' Eighth Amendment Allegations Are Insufficient to
        Allege a Constitutional Violation. ............................................. 17

  C.    Plaintiffs' Free Expression Claim Misreads S.B. 132 and Is
        Insufficient to State a Claim Even if Interpreted as Alleged. ............... 19

      1.    S.B. 132 Imposes No Obligations on Inmates to Use Their
            Fellow Inmates' Specified Pronouns. ......................................... 19

i

1

**TABLE OF CONTENTS**
(continued)

2

Page

3
       2.     Plaintiffs' Allegations Fail to State a First Amendment Free Expression Claim Even Under Plaintiffs' Incorrect Reading

4
          of S.B. 132. ................................................................................ 20

5
    D.    Plaintiffs' First Amendment Establishment Claims Are Without Merit. ....................................................................................................... 21

6
    E.    The Ninth Circuit Has Dismissed Identical First Amendment Free Exercise Claims. ................................................................................... 22

7
    F.    Plaintiffs Fail to State a Claim For an Equal Protection Violation. .......... 23

8
Conclusion............................................................................................................... 25

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Memo. Supp. Mot. Dism. (1:21-cv-01657-JLT-HBK)

1

# TABLE OF AUTHORITIES

2

**Page**

3

4

C ASES

5

*Alvarado v. City of San Jose*
6       94 F.3d 1223 (9th Cir. 1996) ........................................................................ 21

7       *Am. Legion v. Am. Humanist Ass'n*
        139 S.Ct. 2067 (2019) .................................................................................... 8
8
        *Ashcroft v. Iqbal*
9       556 U.S. 662 (2009) ................................................................................. 4, 21

10      *Bell Atl. Corp. v. Twombly*
        550 U.S. 544 (2007) ........................................................................................ 4
11
        *Benko v. Quality Loan Service Corp.*
12      789 F.3d 1111 (9th Cir. 2015) ...................................................................... 19

13      *Berg v. Kincheloe*
        794 F.2d 457 (9th Cir. 1986) ........................................................................ 17
14

15      *Bostock* v. *Clayton County*
        140 S. Ct. 1731 (2020) .................................................................................... 9
16

17      *Castro v. Cty. of Los Angeles*
        833 F.3d 1060 (9th Cir. 2016) ...................................................................... 18
18
        *Children's Hosp. & Health Center v. Belshe*
19      188 F.3d 1090 (9th Cir. 1999) ...................................................................... 19

20      *Clapper v. Amnesty Int'l USA*
        568 U.S. 398 (2013) ........................................................................................ 6
21
        *Conn. Parents Union v. Wentzell*
22      462 F. Supp. 3d 167 (D.Conn. 2020) ........................................................... 10

23      *Cruzan v. Special Sch. Dist., # 1*
        294 F.3d 981 (8th Cir. 2002) .......................................................................... 9
24

25      *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't*
        533 F.3d 780 (9th Cir. 2008) ........................................................................ 16
26

27      *CVS Health Corp. v. Vividus, LLC*
        878 F.3d 703 (9th Cir. 2017) ........................................................................ 19

28

iii

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Dittman v. California*
    191 F.3d 1020 (9th Cir. 1999) ........................................................................... 16

4

5

*Doe v. Mass. Dep't of Corr.*
    No. 17-12255-RGS 2018 WL 2994403 (D.Mass. 2018) ..................................... 14

6

*East Bay Sanctuary Covenant v. Biden*
    993 F.3d 640 (9th Cir. 2021) ....................................................................... 5, 10

7

8

*Edmo v. Corizon, Inc.*
    935 F.3d 757 (9th Cir. 2019) ............................................................................. 21

9

*Edwards v. Aguillard*
    482 U.S. 578 (1987) ........................................................................................... 22

10

11

*Fair Hous. of Marin v. Combs*
    285 F.3d 899 (9th Cir. 2002) ............................................................................. 11

12

*Farmer v. Brennan*
    511 U.S. 825 (1994) ..................................................................................... 17, 18

13

14

*Fleck & Assocs. v. City of Phoenix*
    471 F.3d 1100 (9th Cir. 2006) ...............................................................10, 11, 12

15

16

*Friedman v. Arizona*
    912 F.2d 328 (9th Cir. 1990) ............................................................................. 23

17

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*
    (2000) 528 U.S. 167 ............................................................................................ 5

18

19

*Furnace v. Sullivan*
    705 F.3d 1021. (9th Cir. 2013) .......................................................................... 23

20

*Gomez v. United States*
    490 U.S. 858 (1989) ........................................................................................... 20

21

22

*Guy v. Espinoza*
    2020 WL 309525 (E.D. Cal. 2020) ................................................................. 9, 15

23

24

*Hampton v. Baldwin*
    No. 3:18-CV-550-NJR-RJD, 2018 WL 5830730 (S.D. Ill. 2018) ...................... 14

25

*Harper v. Wallingford*
    877 F.2d 728 (9th Cir. 1989) ............................................................................. 20

26

27

28

iv

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Harrington v. Scribner*
    785 F.3d 1299 (9th Cir. 2015) ........................................................................ 17

*Harrison v. Kernan*
    971 F.3d 1069 (9th Cir. 2020.) ................................................................. 24, 25

*In re Zappos.com, Inc.*
    888 F.3d 1020 (9th Cir. 2018) .......................................................................... 6

*Italian Colors Rest. v. Becerra*
    878 F.3d 1165 (9th Cir. 2018) .......................................................................... 8

*Jackson v. Paramo*
    No. 17CV882-CAB (BLM), 2018 WL 571957 (S.D. Cal. Jan. 26, 2018)............ 18

*Jewel v. NSA*
    673 F.3d 902 (9th Cir. 2011) ............................................................................ 9

*John Doe No. 1 v. Reed*
    561 U.S. 186 (2010)......................................................................................... 14

*Jones v. Williams*
    791 F.3d 1023 (9th Cir. 2015) ........................................................................ 20

*Karnoski v. Trump*
    926 F.3d 1180 (9th Cir. 2019) .................................................................. 21, 24

*Kentucky v. Graham*
    473 U.S. 159 (1985)......................................................................................... 16

*Kopp v. Fair Pol. Practices Com.*
    11 Cal.4th 607 (1995) ............................................................................. 13, 15

*Kottner v. Starbucks Corp.*
    628 F.3d 1139 (9th Cir. 2010) .......................................................................... 6

*Lee v. City of L.A.*
    250 F.3d 668 (9th Cir. 2001) .......................................................................... 23

*Lopez v. Candaele*
    630 F.3d 775 (9th Cir. 2010) ........................................................................ 5, 7

*McCabe v. Arave*
    827 F.2d 634 (9th Cir. 1987) .......................................................................... 20

## TABLE OF AUTHORITIES
### (continued)

**Page**

*McElyea v. Babbitt*
  833 F.2d 196 (9th Cir. 1987) (per curiam) ........................................................... 22

*McKune v. Lile*
  536 U.S. 24 (2002)................................................................................................ 17

*Meachum v. Fano*
  427 U.S. 215 (1976).............................................................................................. 17

*Mendez v. Diaz*
  No. 1:19-cv-01759-NONE-BAM (PC), 2020 WL 1974231 (E.D. Cal. Apr. 24,
  2020) ..................................................................................................................... 18

*Montalvo v. Diaz*
  No. 3:19-cv-00363-CAB-JLB, 2020 WL 3469365 (S.D. Cal. June 25, 2020) ..... 18

*National Treasury Employees Union v. United States*
  101 F.3d 1423 (D.C. Cir. 1996)............................................................................ 10

*Nelsen v. King County*
  895 F.2d 1248 (9th Cir. 1990) ................................................................................ 6

*Norsworthy v. Beard*
  87 F. Supp. 3d 1164 (N.D. Cal. 2015) ........................................................... 15, 21

*Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of
  Jacksonville*
  508 U.S. 656 (1993)................................................................................................ 6

*O'Lone v. Estate of Shabazz*
  482 U.S. 342 (1987).............................................................................................. 22

*Obergefell v. Hodges*
  576 U.S. 644 (2015)....................................................................................20, 21, 24

*Ochs v. Thalacker*
  90 F.3d 293 (8th Cir. 1996) .................................................................................. 15

*Or. Prescription Drug Monitoring Program v. United States DEA*
  860 F.3d 1228 (9th Cir. 2017) ................................................................................ 5

*Parents for Privacy v. Barr*
  949 F.3d 1210 (9th Cir. 2020) .......................................................................9, 20, 23, 24

*Pell v. Procunier*
  417 U.S. 817 (1974).............................................................................................. 20

vi

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Peloza v. Capistrano Unified Sch. Dist.*
  37 F.3d 517 (9th Cir. 1994)..................................................................................... 22

4

*Pennhurst State School & Hosp. v. Halderman*

5
  465 U.S. 89 (1984)................................................................................................... 12

6

*Peralta v. Dillard*

7
  744 F.3d 1076 (9th Cir. 2014) (en banc)................................................................. 18

8

*Railroad Commission v. Pullman Co.*
  312 U.S. 496 (1941)................................................................................................. 13

9

*Regents of the University of California v. Doe*

10
  519 U.S. 425 (1997)................................................................................................. 16

11

*Rosati v. Igbinoso*

12
  791 F.3d 1037 (9th Cir. 2015) ................................................................................. 21

13

*S.B. v. Cal. Dep't of Educ.*
  327 F. Supp. 3d 1218 (E.D.Cal. 2018).................................................................... 12

14

*Safe Air For Everyone v. Meyer*

15
  373 F.3d 1035 (9th Cir. 2004)............................................................................... 5, 8

16

*San Remo Hotel v. City & County of San Francisco*

17
  145 F.3d 1095 (9th Cir. 1998)................................................................................. 13

18

*Serrano v. Francis*
  345 F.3d 1071 (9th Cir. 2003)................................................................................. 24

19

*Somers v. Apple, Inc.*

20
  729 F.3d 953 (9th Cir. 2013)..................................................................................... 4

21

*Standing Deer v. Carlson*

22
  831 F.2d 1525 (9th Cir. 1987)................................................................................. 23

23

*Stover v. CCA*
  No. 1:12–cv–00393–EJL, 2015 WL 874288 (D. Idaho 2015).............................. 15

24

*Students & Parents for Privacy v. U.S. Dep't of Educ.*

25
  2016 WL 6134121 (N.D. Ill. 2016) ...............................................................9, 21, 23

26

*Susan B. Anthony List v. Driehaus*

27
  573 U.S. 149 (2014).................................................................................................. 5

28

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Taking Offense v. State of California*
  Cal. Sup. Case No. S270535 ........................................................................... 13

*Tay v. Dennison*
  457 F. Supp. 3d 657 (S.D.Ill. 2020) ............................................................... 14

*Town of Chester v. Laroe Estates, Inc.*
  137 S. Ct. 1645 (2017) ...................................................................................... 5

*Turner v. Safley*
  482 U.S. 78 (1987) ..................................................................................... *passim*

*United Food & Commer. Workers Local 99 v. Brewer*
  2011 WL 4801887 (D.Ariz. 2011) .................................................................. 12

*United States v. Salerno*
  481 U.S. 739 (1987) .......................................................................................... 15

*United States v. Ward*
  989 F.2d 1015 (9th Cir. 1992) ......................................................................... 21

*Van Buskirk v. CNN*
  284 F.3d 977 (9th Cir. 2002) ............................................................................. 4

*Vasquez v. Rackauckas*
  734 F.3d 1025 (9th Cir. 2013) ......................................................................... 12

*Villa v. Maricopa Cnty.*
  865 F.3d 1224 (9th Cir. 2017) ........................................................................... 4

*Virginia v. American Booksellers Ass'n*
  484 U.S. 383 (1988) ........................................................................................... 7

*Walker v. Beard*
  789 F.3d 1125 (9th Cir. 2015) ................................................................... 15, 22

*Washington State Grange v. Washington State Republican Party*
  552 U.S. 442 (2008) ........................................................................................ 14

*Williams v. Wood*
  223 F. App'x 670 (9th Cir. 2007) .................................................................... 18

*Yazzie v. Hobbs*
  977 F.3d 964 (9th Cir. 2020) ............................................................................. 9

viii

Memo. Supp. Mot. Dism. (1:21-cv-01657-JLT-HBK)

**TABLE OF AUTHORITIES**
(continued)

Page

*Ex parte Young*
    209 U.S. 123 (1908)................................................................................ 16

STATUTES

California Penal Code
    § 2605................................................................................................................ 2
    § 2605(a)........................................................................................................... 2
    § 2605(b)........................................................................................................... 2
    § 2605(c)........................................................................................................... 2
    § 2605(d)..................................................................................................... 2, 19
    § 2606............................................................................................................... 2
    § 2606(a)(1)................................................................................................ 2, 19
    § 2606(a)(2)...................................................................................................... 3
    § 2606(a)(3)...................................................................................................... 3
    § 2606(a)(4)...................................................................................................... 3
    § 2606(b)................................................................................................ 3, 6, 13
    § 2606(c)(1)-(3)................................................................................................ 3

S.B. 132, 2020 Cal Stats.
    ch. 182 (Cal. 2020)........................................................................................... 8
    ch. 182 § 2(b) (Cal. 2020.)................................................................................ 2
    ch. 182 § 2(c), (e) (Cal. 2020.)......................................................................... 2
    ch. 182 §2(d)-(h) (Cal. 2020.).......................................................................... 2

Transgender Respect, Agency, and Dignity Act ................................................. 2

CONSTITUTIONAL PROVISIONS

First Amendment ........................................................................................ *passim*

Eighth Amendment ............................................................................4, 6, 14, 17

Eleventh Amendment ............................................................................... 1, 12

Fourteenth Amendments .....................................................................4, 14, 15, 24

**INTRODUCTION**

Plaintiffs, four incarcerated cisgender women and a non-profit entity with inmate clients, claim that Senate Bill 132 (S.B. 132), which permits transgender, nonbinary, or intersex[1] inmates to request housing on the basis of their gender identity and safety concerns, violates Plaintiffs' federal and California constitutional rights. The Complaint facially fails to demonstrate harm sufficient to support standing by any of the Plaintiffs on any of the claims. A factual attack on Plaintiffs' standing demonstrates that the Plaintiffs have not suffered any harm attributable to a First Amendment free expression claim. The organizational Plaintiff cannot demonstrate harm sufficient to prove standing. Moreover, the organizational Plaintiff has made clear in its public statements that the organization was formed to file suit and attack S.B. 132, which is an inappropriate basis to allege standing.

This Court is barred by the Eleventh Amendment from hearing Plaintiffs' California constitutional claims and should abstain from hearing the federal constitutional claims until the California Department of Corrections and Rehabilitation (CDCR) adopts final policies to implement S.B. 132 and California state courts have reviewed the constitutionality of those policies. Even if the Court chooses to hear the matter now, the Plaintiffs' facial challenge cannot stand because courts throughout the Ninth Circuit have rejected challenges to the housing of transgender inmates in women's prisons before the implementation of S.B. 132. The Court should also dismiss the individually named Defendants as redundant to CDCR.

Finally, Plaintiffs' claims are insufficiently pled and lack constitutional merit. Even if successful, Plaintiffs' requested relief would create a potential violation of transgender inmates' rights. Each of these deficiencies independently provides a basis for the Court to dismiss the Complaint. Together they demonstrate Plaintiffs cannot remedy the defects in the Complaint and dismissal should be with prejudice.

---

[1] S.B. 132 protects individuals who self-identify as one transgender, nonbinary, or intersex. Hereinafter transgender will be used an umbrella term that incorporates all three.

1

1  **LEGISLATIVE HISTORY OF S.B. 132**

2      Senate Bill 132 (S.B. 132), the "Transgender Respect, Agency, and Dignity Act," added §§

3  2605 and 2606 to the California Penal Code effective January 1, 2021. In enacting the law, the

4  California Legislature found "[t]he United States Supreme Court recognizes incarcerated

5  transgender individuals are particularly vulnerable to sexual abuse and sexual harassment and that

6  disregarding the known risks to a transgender woman constitutes deliberate indifference in

7  violation of the federal constitution." S.B. 132, 2020 Cal Stats. ch. 182 § 2(b) (Cal. 2020.) The

8  Legislature found "that the rate of sexual assault for transgender women in [California] prisons

9  was 13 times higher than for men in the same prison," and "official data collected by the federal

10  Bureau of Justice Statistics [that] confirms … incarcerated transgender individuals experience

11  exceptionally high rates of sexual victimization." S.B. 132, 2020 Cal Stats. ch. 182 § 2(c), (e)

12  (Cal. 2020.) The Legislature recognized "[t]ransgender men in California prisons also report high

13  rates of sexual and gender-based violence, harassment, and discrimination" and that "[f]orty

14  percent of transgender women respondents reported harassment from other incarcerated

15  individuals." S.B. 132, 2020 Cal Stats. ch. 182 §2(d)-(h) (Cal. 2020.) The Legislative Counsel's

16  Digest notes the law "prohibits staff, contractors, and volunteers of the department from failing to

17  consistently use the gender pronoun and honorific an individual has specified" and recognized

18  transgender individuals' rights to be housed in a facility "designated for men or women based on

19  the individual's preference, except as specified." (Defendants' Request for Judicial Notice

20  ("RJN") Ex. L.)

21      Penal Code § 2605 requires CDCR to request each inmate's gender identity, pronouns and

22  honorific during the inmate's initial intake and classification, or upon request. Cal. Pen. Code §§

23  2605(a) and (c). Inmates are not required to answer the questions and "may not be disciplined for

24  refusing to answer or for not disclosing complete information in response to, the questions." Cal.

25  Pen. Code § 2605(b). CDCR staff, contractors, and volunteers are required to refer to inmates by

26  their specified pronouns and honorifics. Cal. Pen. Code § 2605(d).

27      Cal. Penal Code § 2606 requires CDCR staff refer to inmates "in a manner consistent with

28  the incarcerated individual's gender identity" (Cal. Pen. Code § 2606(a)(1)), and permits

2

Memo. Supp. Mot. Dism. (1:21-cv-01657-JLT-HBK)

1   transgender inmates to be searched "according to the search policy for their gender identity or

2   according to the gender designation of the facility where they are housed, based on the

3   individual's search preference," (Cal. Pen. Code § 2606(a)(2)), be "housed at a correctional

4   facility designated for men or women based on the individual's preference," (Cal. Pen. Code §

5   2606(a)(3)), and to "have [the inmate's] perception of health and safety given serious

6   consideration in any bed assignment, placement, or programming decision …" Cal. Pen. Code §

7   2606(a)(4). CDCR retains the right to deny an inmate's housing request on the basis of

8   management or security concerns, but must have a "specific and articulable basis" for denial. Cal.

9   Pen. Code § 2606(b). In denying housing requests CDCR may not take into consideration an

10   inmate's "(1) … anatomy, including, but not limited to, the genitalia or other physical

11   characteristics, ... (2) … sexual orientation [or] (3) … a factor present among other people

12   incarcerated at the preferred type of facility." Cal. Pen. Code § 2606(c)(1)-(3).

13                    **SUMMARY OF THE COMPLAINT**

14        On November 17, 2021 Plaintiffs filed their Complaint. (ECF No. 1.) Plaintiffs' Complaint

15   cites to the provisions of S.B. 132 and alleges "[t]here is no application of S.B. 132 that avoids

16   violating the constitutional rights of" women in CDCR facilities. (*Id*. at 2:22-24.) Plaintiffs allege

17   a number of "known, elevated risks" from the housing of transgender women in women's

18   facilities. (*Id*. at 2:25-3:1; 14:20-21.) Plaintiffs allege that "[r]egardless of a man's declared

19   'gender identity,' men remain more likely" to engage in violent or harassing behavior than

20   women. (*Id*. at 4:8-14.) Plaintiffs conclude, without more than the above generalized assertions,

21   that the implementation of S.B. 132 "places incarcerated women in significantly increased danger

22   of physical and sexual violence…" (*Id*. at 5:7.) Plaintiffs allege that transgender inmates suffer

23   from higher rates of mental illness and commit higher rates of sexual offenses than other men and

24   therefore that cisgender women are at higher risk of harm when housed with transgender women.

25   (*Id*. at 16: 5-12.)

26        Plaintiffs admit the purpose of S.B. 132 is "avoiding the harms of sexual abuse and sexual

27   harassment to transgender women and of sexual and gender-based violence, harassment, and

28   discrimination to transgender men" (*Id*. at 5:16-17, internal quotes omitted) and "seek[ing] to

                                    3

1   protect the agency and dignity" of transgender inmates. (*Id.* at 5:25-26, internal quotes omitted.)

2   Plaintiffs' reference and incorporate CDCR's "Senate Bill 132 FAQs." (*Id.* at 13:25-26.)

3   Plaintiffs allege and admit that incarcerated women have been informed they will not "be forced

4   to live with a transgender female." (*Id.* at 10:10.) Plaintiffs allege and admit CDCR requires

5   women seeking transfer under S.B. 132 to undergo orientation, that CDCR is evaluating cis-

6   gender women's safety and security concerns, and that CDCR officials have testified before the

7   California Senate "We want to get this right. We want to make sure we're providing safe housing

8   for our population…" (*Id.* at 10:15-28.)

9        Plaintiffs seek declaratory and injunctive relief based upon vaguely asserted First, Eighth,

10   and Fourteenth Amendments claims, and on various violations of the California Constitution.

11                 **MOTION TO DISMISS STANDARD OF REVIEW**

12        "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

13   accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

14   662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Villa v. Maricopa*

15   *Cnty.*, 865 F.3d 1224, 1228-29 (9th Cir. 2017). A claim is facially plausible "when the Plaintiff

16   pleads factual content that allows the court to draw the reasonable inference that the Defendant is

17   liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility cannot be met with

18   conclusory allegations or by the "formulaic recitation of the elements of a cause of action."

19   *Twombly*, 550 U.S. at 555. Plaintiffs must allege specific facts that rise above the mere

20   conceivability or possibility of unlawful conduct. *Iqbal*, 556 U.S. at 678-79; *Somers v. Apple,*

21   *Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013). Although a pleading "does not require 'detailed factual

22   allegations,'" survival of a motion to dismiss "demands more than an unadorned, the defendant-

23   unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Although the court cannot generally

24   consider extrinsic evidence when evaluating a motion to dismiss, the Court may consider

25   documents attached to the complaint, documents incorporated by reference into the complaint, or

26   matters of judicial notice without converting the motion into a motion for summary judgment.

27   *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002).

28

1

**ARGUMENT**

2

**I.    THE PLAINTIFFS CANNOT DEMONSTRATE ARTICLE III STANDING**

3

**A.    Legal Standard For Standing**

4

Plaintiffs have invoked federal jurisdiction and therefore must establish standing. *Lopez v.*

5

*Candaele*, 630 F.3d 775, 785 (9th Cir. 2010). Plaintiffs must establish standing for each separate

6

claim. *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017); *Or. Prescription*

7

*Drug Monitoring Program v. United States DEA*, 860 F.3d 1228, 1233 (9th Cir. 2017). To have

8

Article III standing, a party must demonstrate:

9

10

11

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the Defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

12

13

> *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, (2000) 528 U.S. 167, 180-81.

14

A plaintiff alleging a future injury has standing "if the threatened injury is 'certainly impending,'

15

or there is a 'substantial risk that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 573

16

U.S. 149, 158 (2014). While a facial attack to standing assumes the facts in the complaint are

17

true, a factual attack on standing can rely upon extrinsic evidence without converting a motion to

18

dismiss into a motion for summary judgment. *Safe Air For Everyone v. Meyer*, 373 F.3d 1035,

19

1039 (9th Cir. 2004). Similarly, organizations must have standing to assert claims in federal

20

court. *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021). On the face of the

21

Complaint, all the Plaintiffs lack standing to assert all the claims alleged. A factual attack

22

demonstrates the Plaintiffs lack standing to assert any free expression claims. Similarly, a factual

23

attack demonstrates Woman II Woman cannot prove organizational standing.

24

25

**B.    Plaintiffs Fail to Assert Any Immediately Impending Harm Resulting From Defendants' Implementation of S.B. 132.**

26

The Plaintiffs cannot demonstrate standing because their claims depend upon a chain of

27

hypothetical events involving multiple entities that is insufficient to prove standing. An allegation

28

of harm that "relies on a highly attenuated chain of possibilities, does not satisfy the requirement

5

1   that threatened injury must be certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398,

2   410 (2013). Standing cannot rely upon the "odds" that a chain of events will occur. *Nelsen v.*

3   *King County*, 895 F.2d 1248, 1252 (9th Cir. 1990). "A Plaintiff threatened with future injury has

4   standing to sue if the threatened injury is 'certainly impending,' or there is a 'substantial risk that

5   the harm will occur.'" *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018), quoting *Susan*

6   *B. Anthony List*, *supra*, 573 U.S. at 158; *see also Kottner v. Starbucks Corp.*, 628 F.3d 1139, 1143

7   (9th Cir. 2010) (standing found where plaintiffs were subject to an immediate risk of identity theft

8   after a laptop with plaintiff employees' private data was stolen from the employer.)

9         In asserting an Eighth Amendment claim[2] the Plaintiffs' allegations depend upon five

10  assumptions that are generously described as speculative and are, by Plaintiff's own admissions,

11  asserted only on information and belief. (ECF No. 1 at ¶¶ 42-48.) First, Plaintiffs assume

12  transgender women are more violent than cisgender women. Second, Plaintiffs assume a violent

13  inmate will seek to abuse cisgender females and request a transfer under S.B. 132 to engage in

14  such abuse. Third, Plaintiffs assume CDCR will fail to screen requests for transfer for

15  "management or security concerns with an incarcerated individual's … preferred housing

16  placement." Cal. Pen. Code § 2606(b). Fourth, Plaintiffs assume CDCR will fail its duty to

17  protect and an opportunity for a violent incident to occur will be created. Finally, Plaintiffs

18  assume an inmate will actually commit a harmful act. None of these assumptions are assured and

19  indeed are contradicted by Plaintiffs admission that CDCR is engaging in a thoughtful process to

20  effectuate the transfers. (ECF No. 1 at 21:13-17.)

21        **C.   Plaintiffs' Eighth Amendment Claims Are Not Fairly Traceable to**
22            **Defendants' Actions.**

23        Plaintiffs' Eighth Amendment claims are based on the hypothetical actions of intervening

24  third parties not before the Court. The obligation to prove causation for standing requires that

25  harm "fairly can be traced to the challenged action of the Defendant, and has not resulted from

26  the independent action of some third party not before the court." *Northeastern Fla. Chapter of*

27  ─────────────────────

28        [2] Although Defendants provide a brief analysis of Plaintiffs' Eighth Amendment claims as
      an example, the attenuated assumptions made by Plaintiffs apply equally to each of their claims.

*Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 663 (1993) (internal quotes removed). Plaintiffs' claims depend upon two different interceding third parties who are unrelated to the implementation of S.B. 132. First, Plaintiffs' claim relies upon an inmate causing some harm at a CDCR facility. Second, Plaintiffs' claims depend upon an individual CDCR employee failing their duty to protect. Neither of these potential harms are in question here, neither are related to S.B. 132, and Plaintiffs do not raise an individual claim of failure to protect. Even Plaintiff Gonzalez, who alleges an inmate transferred under S.B. 132 sexually assaulted her, does not allege the cause of the harm was the result of implementing S.B. 132.  (ECF No. 1 at 18:8-9.) Instead, Plaintiffs file suit merely to prevent the transfer of inmates due to some potential series of future events that are directly attributable to actions by other parties not named in this suit. Plaintiffs' allegations fail to plausibly suggest harm resulting from the Defendants' actions.

     **D.**    **Plaintiffs Have Failed to Demonstrate Actual Harm to Any of Their First Amendment Rights That Are Fairly Traceable to S.B. 132.**

Although First Amendment free expression claims are subject to a relaxed standing analysis for pre-enforcement challenges, "[p]laintiffs must still show an actual or imminent injury to a legally protected interest." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also: Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 389 (1988) (finding standing to allege a First Amendment violation because "the law is aimed directly at Plaintiffs.") Here, S.B. 132 impacts only transgender inmates and on its face contains no provisions that affect the Plaintiffs. Plaintiffs instead rely upon misleading, contradictory, and incorrect assertions regarding CDCR's responses to Plaintiffs' grievances in their allegation of harm to Plaintiffs' First Amendment right of free expression. Plaintiffs alternately allege CDCR's responses to grievances have referred to transgender inmates differently than identified in the grievance (ECF No. 1 at 17-18, ¶¶ 69-70) and then that CDCR has rejected their grievances unless they use the pronouns of transgender inmates. (ECF No. 1 at 22-23.) The first claim does not demonstrate harm because the Plaintiffs are not entitled to have CDCR repeat Plaintiffs' willful misgendering of transgender inmates. The second claim is demonstrably false. Defendants have reviewed and appropriately responded to every grievances

7

submitted by the individual Plaintiffs related to S.B. 132, including Plaintiffs' grievances that misgender transgender inmates. (Declaration of J. Thissen ¶ 13, Exhs. A-K.)[3] Defendants have imposed no obligation on the Plaintiffs to use specific terms when filing a grievance and officers who receive grievances cannot reject them on that basis. (*Id* at ¶ 13.) On these bases, Plaintiffs lack the ability to demonstrate harm and do not have standing to raise a free expression claim.

Plaintiffs fail to allege any facts that demonstrate a credible threat of enforcement that would demonstrate some harm to Plaintiffs' First Amendment free expression rights. *See Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1174 (9th Cir. 2018). On its face, S.B. 132 does not impose any obligation on any inmate to use a transgender inmate's pronouns and imposes that duty only on CDCR staff and volunteers. S.B. 132, 2020 Cal Stats. ch. 182 (Cal. 2020); Section VI.C., *infra*. Plaintiffs allege neither that CDCR has attempted to enforce or statements of intent to enforce the law as Plaintiffs interpret it.

Plaintiffs' also do not allege any harm resulting from the alleged free exercise and establishment claims. Plaintiffs are more akin to "offended observers" that lack standing. *Am. Legion v. Am. Humanist Ass'n*, 139 S.Ct. 2067, 2098 (2019). Plaintiffs claim their First Amendment free exercise and religious establishment rights are infringed by nothing more than the presence of transgender inmates in the same facility as them. (ECF No. 1 at 22-23.) Although Plaintiffs allege S.B. 132 does not contain a provision exempting religious women from being housed with transgender inmates, Plaintiffs allege no facts describing how the presence of transgender women in the institution infringes their religious exercise. (ECF No. 1 at 23:9-17.) Plaintiffs do not assert they have actually been required to "expos[e] [their] …unclothed body to the view of" or been required to be celled with transgender women. (*Id*.) Instead, the Plaintiffs contradict their own allegations and admit they have been informed they will not be required to be celled with transgender inmates. (ECF No. 1 at 10:10.) These deficiencies demonstrate Plaintiffs are offended observers who cannot prove any actual harm and therefore do not possess standing to bring their claims.

---

[3] The Court can review extrinsic evidence when evaluating a factual attack on Plaintiffs' standing. *Safe Air For Everyone*, 373 F.3d at 1039; Section I.A., *supra*.

Plaintiffs' free exercise and establishment claims depend upon allegations of harm shared by the general public that cannot serve as the basis for standing. Risks "held in common by all members of the public" cannot form the basis of standing. *Jewel v. NSA*, 673 F.3d 902, 909 (9th Cir. 2011), quoting *Schlesinger v. Reservists Comm. To Stop the War*, 418 US. 208, 220 (1974). Transgender women live, work, and change in front of cisgender women in a number of gender-exclusive spaces, including bathrooms and locker rooms, and are present in workplaces. *See Students & Parents for Privacy v. U.S. Dep't of Educ.*, 2016 WL 6134121 (N.D. Ill. 2016) (transgender persons can access bathrooms); *Parents for Privacy v. Barr*, 949 F.3d 1210, 1217 (9th Cir. 2020) (transgender persons can access gym locker rooms); *see Bostock* v. *Clayton County*, 140 S. Ct. 1731 (2020); *Cruzan v. Special Sch. Dist., # 1*, 294 F.3d 981, 984 (8th Cir. 2002). The equal treatment of all women regardless of their gender identity occurs within civil society and therefore cannot form the basis of harm to prove standing.

Plaintiffs' First Amendment free exercise claim does not satisfy the redressability requirement. A party invoking federal jurisdiction must demonstrate that their requested relief will address the harms alleged. *Yazzie v. Hobbs*, 977 F.3d 964, 967 (9th Cir. 2020). Plaintiffs do not allege housing transgender inmates in women's facilities before S.B. 132 violated their free exercise rights. Therefore, regardless of the outcome of this suit, transgender women will continue to be housed in women's facilities. *See Guy v. Espinoza*, 2020 WL 309525 (E.D. Cal. 2020) (dismissing claim and permitting transgender women to continue living in women's prison facilities before the passage of S.B. 132). The Plaintiffs cannot demonstrate that a favorable order invalidating S.B. 132 will address their free exercise claims and therefore do not have standing.

### E.   Plaintiffs' Vague and Speculative Allegations of Harm Resulting From the Alleged Equal Protection Violations Do Not Establish Standing.

Plaintiffs' equal protection claim fails to allege any harm. Plaintiffs admit S.B. 132 grants transgender inmates the right have their safety and security concerns considered in housing placement. (ECF No. 1 at 25:16-17.) Plaintiffs fail to state how granting transgender inmates such rights causes any harm to the Plaintiffs. Instead, Plaintiffs rely upon the conclusory statement that "S.B. 132 thus treats inmates differently on the basis of 'gender identity' or 'transgender status'

9

Memo. Supp. Mot. Dism. (1:21-cv-01657-JLT-HBK)

1   causing disadvantage to inmates who have no 'gender identity' or whose 'gender identity' is not

2   one of the identities favored under the statute." (*Id*.) Plaintiffs fail to allege how granting

3   transgender inmates the right to make a housing request causes any disadvantage to the Plaintiffs.

4   The provisions of S.B. 132 involve only prison administrators and individual transgender

5   inmates. Any harm alleged by Plaintiffs would occur after the transfer of an inmate, which is a

6   separate event apart from the equal protection violation alleged by Plaintiffs. The equal protection

7   allegations do not demonstrate any harm to the Plaintiffs.

8   **F.    Woman II Woman Cannot Demonstrate Organizational Standing.**

9        Public statements by Woman II Woman (WIIW) demonstrate it cannot have standing

10   because it is an organization formed for the explicit purpose of filing suit to address S.B. 132.

11   Organizations can have standing in two circumstances. First, an organization can assert "direct

12   standing to sue where it establishes that the Defendant's behavior has frustrated its mission and

13   caused it to divert resources in response to that frustration of purpose." *East Bay Sanctuary*

14   *Covenant v. Biden*, 993 F.3d at 663, citing *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th

15   Cir. 2002). Alternatively, an organization can prove representative standing and sue on behalf of

16   its members. *Fleck & Assocs. v. City of Phoenix*, 471 F.3d 1100 (9th Cir. 2006). WIIW cannot

17   meet either standard.

18        WIIW cannot have standing because the organization was formed for the explicit purpose

19   of filing suit to address S.B. 132. An organization cannot "manufacture the injury by incurring

20   litigation costs or simply choosing to spend money fixing a problem that otherwise would not

21   affect the organization at all, but they can show they would have suffered some other injury had

22   they not diverted resources to counteracting the problem." *East Bay Sanctuary Covenant*, 993

23   F.3d at 663. Other circuits have rejected standing for organizations that are formed for the

24   purpose of filing suit. *See National Treasury Employees Union v. United States,* 101 F.3d 1423,

25   1429 (D.C. Cir. 1996); *see also Conn. Parents Union v. Wentzell* 462 F. Supp. 3d 167, 176

26   (D.Conn. 2020). WIIW admits it is "a non-profit organization that is for us and by us. We initially

27   did this in response to the messages we got regarding #S.B. 132." (RJN Exh. M.) At the time of

28   its formation WIIW declared "[t]hings just got real. Thankful for the guidance from our

10

W[omen's] L[iberation]F[ront] mothers … @WomensLibFront…" (RJN Exh. N). The only completed section on WIIW's "What We Do" webpage is dedicated entirely to WIIW's creation in response to and litigation regarding S.B. 132. (RJN Ex. O.) Far from experiencing a frustration of its mission, WIIW's statements demonstrates the organization was formed with the guidance of Plaintiffs' counsel and with the mission of serving as a Plaintiff in this suit.  This flies in the face of Plaintiffs' allegations in the complaint and the holding of *Fair Hous. of Marin. See Fair Hous. Of Marin*, 285 F.3d at 905. WIIW further fails to demonstrate with any specificity the manner of its diversion of resources. WIIW's mission is to serve as a plaintiff in this suit and it therefore cannot demonstrate any harm.

WIIW cannot rely on alleged harm to its clients to prove representative organizational standing. First, as discussed above, because the individual Plaintiffs cannot demonstrate any harm sufficient to prove standing, WIIW also cannot demonstrate sufficient harm. *See* Sections I.B through I.E, *supra*. Second, organizations cannot prove standing based upon injury to their clients. *Fleck & Assocs. v. City of Phoenix*, 471 F.3d at 1106. WIIW and Plaintiffs' counsel have repeatedly distinguished between the organization's members and its clients. The only allegation that currently incarcerated women are members of WIIW is Plaintiffs' claim that the organization is a "non-profit organization run by formerly and currently incarcerated women." (ECF No. 1 at 2:2-3.) This sole allegation contradicts the remainder of Plaintiffs' allegations in the Complaint and is inconsistent with public statements by WIIW and press releases by Plaintiffs' counsel. Plaintiffs allege WIIW "is a nonprofit corporation… organized by formerly incarcerated women to advocate for incarcerated women" (ECF No. 1 at 18:22.) and that S.B. 132 harms the constitutional rights of "female offenders who are clients of the organizational Plaintiff." (*Id*. at 24:21-23.) WIIW admits it represents "those clients of Woman II Woman who remain incarcerated in California." (*Id*. at 19:7.) Woman II Woman's "Who We Are" page lists only two organizational members, both formerly incarcerated, (RJN Ex. P) and its "About" page describes the organization as "a community of empowered women *previously* impacted by incarceration." (RJN Ex. Q, emphasis added.) Plaintiffs' counsel's press release admits their knowledge of the distinction between WIIW's members and its client, describing WIIW as "a nonprofit org created

11

by *formerly* incarcerated women for incarcerated women." (RJN Exh. R, emphasis added.) Although WIIW serves incarcerated clients, its members are all formerly incarcerated women. S.B. 132's provisions apply only to currently incarcerated individuals, and therefore the law impacts only WIIW's clients and not its members. Because organizations cannot prove standing based upon harms to clients, WIIW cannot prove representational standing. *see Fleck & Assoc.,* 471 F.3d at 1105-06.

## II.    THE COURT SHOULD NOT EXERCISE SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS.

The Court cannot hear Plaintiffs' California constitutional claims and should abstain from hearing the federal constitutional claims until CDCR finalizes and implements policies related to S.B. 132 that are reviewed by California state courts.

### A.    The Court Must Dismiss Plaintiffs' California Constitutional Claims.

The Eleventh Amendment bars this Court from hearing Plaintiffs' California constitutional claims. The Supreme Court has repeatedly warned against the usurpation of state court rights to evaluate the conduct of state actors under a state's constitution and laws. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (holding "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."); *see also Vasquez v. Rackauckas*, 734 F.3d 1025, 1041 (9th Cir. 2013) (holding "A federal court may not grant injunctive relief against state officials on the basis of state law, when those officials are sued in their official capacity.") (quotations omitted). Courts in this district and throughout the Ninth Circuit regularly decline to hear requests for injunctive relief from state laws under state constitutions even when raised with analogous federal claims. *See S.B. v. Cal. Dep't of Educ.*, 327 F. Supp. 3d 1218, 1235 (E.D.Cal. 2018); *see also United Food & Commer. Workers Local 99 v. Brewer* 2011 WL 4801887, at *16-17 (D.Ariz. 2011). Although analogous, Plaintiffs' claims under the federal and California Constitutions are legally distinct and the Court should dismiss the California state constitutional claims.

**B.    The Court Should Abstain From Hearing Plaintiffs' Claims Until California Courts Review CDCR's Final Policies Related to S.B. 132.**

Even where a court would otherwise have jurisdiction, a court may abstain from hearing a matter when subsequent events may make it easier or unnecessary to resolve that dispute. *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 501-502 (1941). Abstention is appropriate when "(1) the federal Plaintiff's complaint requires resolution of a sensitive question of federal constitutional law; (2) the constitutional question could be mooted or narrowed by a definitive ruling on the state law issues; and (3) the possibly determinative issue of state law is unclear." *San Remo Hotel v. City & County of San Francisco* 145 F.3d 1095, 1104 (9th Cir. 1998), citing *Pullman*, *supra*. Each of these factors is present in this matter.

First, the federal constitutional questions regarding housing transgender inmates according to their gender identity will have a significant impact on millions of transgender and cisgender inmates across the country. Although federal courts regularly hear questions relating to transgender inmate rights, there exists no binding, compelling, or even persuasive authority that clarifies the issues raised in the Complaint. Second, if any litigation occurs in California state courts regarding S.B. 132, those courts can rewrite the substance of the law. *Kopp v. Fair Pol. Practices Com.*, 11 Cal.4th 607, 643 (1995). Rewriting the substance of the law may moot or narrow the federal constitutional issues raised by Plaintiffs. Third, both CDCR's exercise of its discretion and litigation related to other transgender rights laws in California make evaluating the outcome of Plaintiffs' California constitutional issues unclear. S.B. 132 grants CDCR significant discretion to evaluate housing requests based upon safety and security concerns and indeed Plaintiffs admit this in the Complaint. (Cal. Pen. Code § 2606(b), ECF No. 1 at 10:15-28.) Plaintiffs admit Defendants are consulting with national experts to ensure the appropriate and constitutional implementation of CDCR's discretionary authority under S.B. 132. (*See* ECF No. 1 at 27:7-11.) The California Supreme Court's review of the free speech implications of S.B. 219, another statute regulating the use of pronouns, may inform CDCR's implementation of S.B. 132. *See Taking Offense v. State of California*, Cal. Sup. Case No. S270535. Each of these factors demonstrates the issues raised by the Plaintiffs are not clear under California state law and that

13

Plaintiffs' Complaint may be rendered moot by future events. Based upon these factors, the Court should abstain from hearing this matter at this time.

### III. PLAINTIFFS' REQUESTED RELIEF MAY CREATE AN UNCONSTITUTIONAL CONDITION FOR TRANSGENDER INMATES.

S.B. 132's directive for CDCR to consider transgender inmates' safety concerns and housing requests is consistent with court rulings across the country. Since the passage of S.B. 132 courts across the nation have ordered state departments of correction to evaluate transgender women's housing requests based upon the inmate's gender identity and feelings of safety. *See Tay v. Dennison*, 457 F. Supp. 3d 657, 690 (S.D.Ill. 2020) (ordering the Illinois Department of Corrections to develop an individualized case management plan, including housing assignment, based upon "Plaintiff's need for safety, her past history of victimization" due to ongoing violation of Plaintiff's Fourteenth Amendment and Eighth Amendment rights); *Doe v. Mass. Dep't of Corr.*, No. 17-12255-RGS 2018 WL 2994403, at *32 (D.Mass. 2018) (finding transgender Plaintiff likely would succeed on Equal Protection claim and granting a preliminary injunction based upon Plaintiff's "hardships includ[ing] fears for her physical safety, the potential for sexual violence and assault…"); *see also Hampton v. Baldwin*,  No. 3:18-CV-550-NJR-RJD, 2018 WL 5830730 at *24 (S.D. Ill. 2018). Each of these courts has evaluated and ordered housing evaluations for transgender inmates based upon the same factors present in S.B. 132.

### IV. THE COURT SHOULD DISMISS PLAINTIFFS' FACIAL CONSTITUTIONAL CLAIMS.

A constitutional challenge to a policy is "'facial' [if] it is not limited to Plaintiff['s] particular case, but challenges application of the law more broadly...." *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). "Facial challenges are 'disfavored' because they: (1) 'raise the risk of premature interpretation of statutes on factually barebone records;' (2) run contrary 'to the fundamental principle of judicial restraint'; and (3) 'threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution.'" *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 451 (2008). "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set

14

1   of circumstances exists under which the Act would be valid. The fact that the Act might operate

2   unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly

3   invalid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

4           Rulings by courts in this circuit and district demonstrate a facial challenge is inappropriate

5   because transgender women can be constitutionally housed in women's prisons. Even if S.B. 132

6   is invalidated, transgender inmates housed in women's prisons before the implementation of S.B.

7   132 will remain in CDCR facilities. *See Guy v. Espinoza*, 2020 WL 309525 (E.D. Cal. 2020)

8   (discussing and dismissing a complaint challenging the housing of transgender women in

9   women's facilities before the passage of S.B. 132.) Courts have dismissed arguments that housing

10  a transgender woman poses any more significant risk than any housing any other woman. *See*

11  *Norsworthy v. Beard*, 87 F. Supp. 3d 1164, 1194 (N.D. Cal. 2015). Like inmates who have

12  asserted living with inmates of a different race violates their free exercise rights, transgender

13  inmates can be housed in women's facilities in a manner that is consistent with Plaintiffs' free

14  exercise rights. *See Ochs v. Thalacker*, 90 F.3d 293, 296-97 (8th Cir. 1996), cited with approval

15  in *Walker v. Beard*, 789 F.3d 1125, 1137 (9th Cir. 2015); *see also Stover v. CCA*, No. 1:12–cv–

16  00393–EJL, 2015 WL 874288 (D. Idaho 2015) (dismissing complaint alleging concurrent

17  transgender and cisgender inmate use of sweat lodge constituted a free exercise violation.) Courts

18  in this district have recognized transgender inmates can be housed in a manner that complies with

19  the Equal Protection Clause of the Fourteenth Amendment. *See Guy v. Espinoza*, 2020 WL

20  309525, *supra*.

21          Facial invalidation is especially inappropriate here because CDCR has not decided upon a

22  final implementation of S.B. 132. Future litigation in California courts may allow the California's

23  state courts "to remedy a constitutional defect by literally rewriting statutory language." *Kopp v.*

24  *Fair Pol. Practices Com.*. 11 Cal.4th at 643. While Defendants believe that no revision is

25  required under either the federal or California Constitutions, it would be far more "consistent with

26  legislative intent" (*Kopp*, *supra*, 11 Cal.4th at 643) for any facial challenge to await both CDCR's

27  implementation of S.B. 132 and the final interpretation by California courts than to render the law

28  entirely unenforceable at this early stage. Invalidating S.B. 132 before CDCR finalizes the law's

15

Memo. Supp. Mot. Dism. (1:21-cv-01657-JLT-HBK)

implementation risks exposing vulnerable transgender inmates to the kind of verbal and physical assault the Legislature enacted S.B. 132 to prevent. As Plaintiffs admit, CDCR continues to work with experts to establish policies and protocols that ensure a safe environment for all inmates. (ECF No. 1 at 21:13-17.) It is therefore inappropriate to permit a facial challenge at this time.

## V. DEFENDANTS HOUSTON, ALLISON, AND PALLARES SHOULD BE DISMISSED BECAUSE THEIR STATE-ENTITY EMPLOYER IS A NAMED DEFENDANT.

A suit against a state employee in their official capacity is effectively a suit against their employing entity. *See Regents of the University of California v. Doe*, 519 U.S. 425, 429 (1997); *Dittman v. California*, 191 F.3d 1020, 1026 (9th Cir. 1999); *Ex parte Young*, 209 U.S. 123, 149-150 (1908). The employing government entity is the real party in interest when an action is brought against a government employee acting in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Individual Defendants may be dismissed when a complaint names both a state government entity and a state officer acting in their official capacity, as Defendants. *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008). Plaintiffs have sued CDCR, a state entity, and have also sued the Secretary of CDCR and two wardens in their official capacity. (ECF No. 1 at 19-20.) Plaintiffs allege all Defendants are responsible for "implementing" S.B. 132 without distinguishing the party responsible. (*See* ECF No. 1.) The Court should dismiss the individual Defendants because they are redundant to CDCR.

## VI. DISMISSAL OF THE COMPLAINT IS APPROPRIATE BECAUSE PLAINTIFFS DO NOT ALLEGE A CAUSE OF ACTION.

### A. The Legislature and CDCR Officials Are Entitled to Discretion in Housing Inmates.

The Legislature and CDCR are entitled to discretion when creating and implementing housing decisions and policies. Courts grant this discretion because they "'are ill equipped to deal with the increasingly urgent problems of prison administration and reform. …[R]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, *all of which are peculiarly within the province of the legislative and executive branches of government*." *Turner v. Safley* 482 U.S. 78, 84-85 (1987) (citing *Procunier v. Martinez*, 416 U.S. 396, 405 (1974)) (emphasis added). "Prison administration is, moreover, a task that has been

16

1    committed to the responsibility of those branches, and *separation of powers concerns counsel a*

2    *policy of judicial restraint*" and "[w]here a state penal system is involved, federal courts have . . .

3    additional reason to accord deference to the appropriate prison authorities." *Id.* at 85 (emphasis

4    added). Moreover, inmates are not guaranteed placement in any particular prison, and life in a

5    prison that is viewed as less favorable to the prisoner "does not infringe or implicate a liberty

6    interest of the prisoner." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). "It is well settled that the

7    decision where to house inmates is at the core of prison administrators' expertise." *McKune v.*

8    *Lile*, 536 U.S. 24, 39 (2002). These principles warrant deference and dismissal where, as here, the

9    Legislature has made clear findings in support of S.B. 132, CDCR continues to research and

10   prepare policies with the aid of national experts, and the plaintiffs allege challenges resulting

11   solely from CDCR and the Legislature's housing decisions.

        **B.**    **Plaintiffs' Eighth Amendment Allegations Are Insufficient to Allege a**
                **Constitutional Violation.**

14         Plaintiffs bear the burden of proving both prongs of an Eighth Amendment violation. First,

15   Plaintiffs must demonstrate the risk of harm is objectively "sufficiently serious." *Farmer v.*

16   *Brennan*, 511 U.S. 825, 834 (1994). Second, the Plaintiff must allege prison officials have a

17   culpable state of mind sufficient to demonstrate deliberate indifference to the inmate's safety. *Id.*

18   Deliberate indifference exists only if the "official knows of and disregards an excessive risk to

19   inmate health or safety." *Harrington v. Scribner*, 785 F.3d 1299, 1304 (9th Cir. 2015). When

20   seeking injunctive relief, the Plaintiff must demonstrate prison administrators' "attitudes and

21   conduct at the time suit is brought and persisting thereafter" demonstrate Defendants "were at the

22   time suit was filed … knowingly and unreasonably disregarding an objectively intolerable risk of

23   harm, and that they will continue to do so." *Farmers,* 511 U.S. at 845-46. An injunction is

24   appropriate only if allegations assert "inmates face a substantial risk of serious harm and [an

25   administrator] disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

26         An inmate alleging an objective failure under the Eighth Amendment "must have more than

27   a mere suspicion that an attack will occur." *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).

28   An inmate's "speculative and generalized fears of harm at the hands of other prisoners do not rise

17

1    to a sufficiently substantial risk of serious harm to his future health." *Williams v. Wood*, 223 F.

2    App'x 670, 671 (9th Cir. 2007) (citing *Farmer*, 511 U.S. at 843), *cert. denied*, 552 U.S. 849

3    (2007); *Jackson v. Paramo*, No. 17CV882-CAB (BLM), 2018 WL 571957, at *8 (S.D. Cal. Jan.

4    26, 2018), *report and recommendation adopted*, No. 17CV882-CAB-BLM, 2018 WL 1531927

5    (S.D. Cal. Mar. 28, 2018). Plaintiffs allege that implementing S.B. 132 subjects Plaintiffs to a

6    substantially increased risk of harm. (*Id*. at 21:6-7.) Nearly identical claims have been dismissed

7    where inmates alleged the merging of sensitive needs yards and general population created an

8    increased risk of harm to sensitive needs inmates. *See Montalvo v. Diaz*, No. 3:19-cv-00363-

9    CAB-JLB, 2020 WL 3469365, at *6 (S.D. Cal. June 25, 2020); *Mendez v. Diaz*, No. 1:19-cv-

10   01759-NONE-BAM (PC), 2020 WL 1974231, at *5 (E.D. Cal. Apr. 24, 2020) (dismissing claims

11   because the plaintiff did not allege prison administrators were "aware of a non-speculative,

12   specific risk to his health and safety," nor were there "any facts demonstrating that

13   implementation of the NDPF policy would always violate the Eighth Amendment…"), *report and*

14   *recommendation adopted*, 2020 WL 2731993 (E.D. Cal. May 26, 2020). The Court should

15   dismiss the same insufficient claims of a speculative risk of harm raised here.

16       Even a prison official who "knew of a substantial risk to inmate health or safety may be

17   found free from liability if they responded reasonably to the risk, even if the harm ultimately was

18   not averted." *Farmer*, 511 U.S. at 844; *see also Castro v. Cty. of Los Angeles*, 833 F.3d 1060,

19   1067 (9th Cir. 2016). *see also Peralta v. Dillard*, 744 F.3d 1076, 1082 (9th Cir. 2014) (en banc).

20   Plaintiffs' admit "Defendants have also 'slowed down' implementation to consult with 'national

21   experts' on how best to implement S.B. 132 while meeting Defendants' known duty to provide

22   safe housing to all populations in California prisons, including incarcerated women." (ECF No. 1

23   at 21:13-17.) The complaint references CDCR's "FAQ" regarding its efforts to implement S.B.

24   132 and is therefore reviewable by the Court. (ECF No. 1 at 13;25-28.) CDCR's FAQ makes

25   clear every request for housing under S.B. 132 is reviewed "by a multi-disciplinary classification

26   committee chaired by the Warden and made up of custody, medical and mental health care staff,

27   and a PREA Compliance Manager." (RJN Ex. S.) Plaintiffs incorrectly allege the provisions of

28   S.B. 132 permit transgender inmates "the right" to select their housing placement (ECF No 1 at

18

16:13-14) and that "any man who does not 'identify' as 'exclusively male' has the right to be
housed with women." (*Id*. at 9:8-10.) CDCR denies any such absolute right exists because "[p]art
of the review process for transgender, non-binary and intersex people requesting housing based
on their gender identity will include an evaluation of the safety of the person making the request
as well as the safety of the people at the facility where the person has asked to be housed." (RJN
Ex. S.) CDCR has exercised its right of review, denying nine requests for transfer from male to
female institutions as of February 25, 2022. (RJN Ex. S.) Plaintiffs' allegations and referenced
materials demonstrates CDCR is not acting with deliberate indifferent to Plaintiff's safety.

### C. Plaintiffs' Free Expression Claim Misreads S.B. 132 and Is Insufficient to State a Claim Even if Interpreted as Alleged.

#### 1. S.B. 132 Imposes No Obligations on Inmates to Use Their Fellow Inmates' Specified Pronouns.

Plaintiffs' unnecessarily narrow reading of S.B. 132 is inconsistent with basic statutory
interpretation. "If the language [of a statute] has a plain meaning or is unambiguous, the statutory
interpretation inquiry ends there." *CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 706 (9th Cir.
2017). To determine meaning of a statute the Court must "examine not only the specific provision
at issue, but also the structure of the statute as a whole, including its object and policy."
*Children's Hosp. & Health Center v. Belshe*, 188 F.3d 1090, 1096 (9th Cir. 1999). If the statutory
language lacks a plain meaning, the Court may "employ other tools, such as legislative history, to
construe the meaning of ambiguous terms." *Benko v. Quality Loan Service Corp*., 789 F.3d 1111,
1118 (9th Cir. 2015). Applying these rules makes Plaintiffs' reading of S.B. 132 untenable.

Plaintiffs incorrectly assert inmates are required to refer to transgender inmates by their
specified pronouns because S.B. 132 "contains no exception, exemption, or distinction between
CDCR staff, and CDCR inmates…" (ECF No. 1 at 22:7-9.) Plaintiffs fail to note that S.B. 132
neither mentions nor imposes obligations of any kind on other inmates. Instead, section 2605(d)
specifically limits the obligation to use an inmate's specified pronouns to "staff, contractors, and
volunteers of the department…" Although section 2606(a)(1) does not mention other inmates, the
Legislature's comments confirm only CDCR "staff and contractors" are obligated to use an
inmate's specified pronouns. (RJN Exh. B, P. 2.) To read the law as Plaintiffs propose requires

19

the Court to neglect the complete statutory scheme, ignore the Legislature's stated intent, and insert language not included by the Legislature in the statute,

Plaintiffs' frame their allegations with the clear purpose of raising a constitutional issue where none exists. Accepting the Plaintiff's interpretation of the law as correct violates the well settled policy of avoiding interpretation of a statute in a manner "that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question." *Gomez v. United States*, 490 U.S. 858, 864 (1989).

### 2.   Plaintiffs' Allegations Fail to State a First Amendment Free Expression Claim Even Under Plaintiffs' Incorrect Reading of S.B. 132.

The U.S. Supreme Court has made clear "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015). A prison regulation that impinges on First Amendment rights "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987) It is well settled that prisons can prohibit language that is so "inflammatory as to be reasonably likely to cause violence at the prison." *See McCabe v. Arave*, 827 F.2d 634, 638 (9th Cir. 1987); *Harper v. Wallingford*, 877 F.2d 728, 733 (9th Cir. 1989) (upholding prison ban on sharing written materials that pose a threat of causing violence in the prison.) The Supreme Court has recognized the fundamental right of transgender people "to define and express their identity." *Obergefell v. Hodges*, 576 U.S. 644, 652 (2015); *see also Parents for Privacy*, 949 F.3d at 1217 (recognizing a state entity's legitimate interest in affirming dignity of transgender individuals).

Plaintiffs' admission of the dual purposes of S.B. 132 demonstrates the state's significant interest in barring inmates from repeatedly and willfully misgendering transgender inmates. Plaintiffs admit S.B. 132 ensures institutional safety by "preventing sexual victimization of some [transgender inmates] who are at high risk of victimization…" (*Id.* at 15:14-15) and protects the "agency and dignity of inmates who identify [as] … transgender, nonbinary, or intersex." (ECF No 1 at 5:21-24.) Plaintiffs' assertions are consistent with the Legislature's stated intent for the

20

1   law. (RJN Ex. A-J.) These stated purposes are identical to the rulings in *Obergefell* and *Parents*

2   *for Privacy* and therefore provide a constitutionally sufficient state interest. Because the

3   Legislature and CDCR have a clear and justifiable interest, Plaintiffs cannot state a free

4   expression claim.

### D.   Plaintiffs' First Amendment Establishment Claims Are Without Merit.

6       The existence of transgender people is a well-established fact of medicine and science

7   recognized by the Ninth Circuit. Plaintiffs incorrectly assert recognizing an individual's gender

8   identity constitutes the establishment of a religion. (ECF No. 1 at 23:26.) Religious beliefs are

9   "those that stem from a person's moral, ethical, or religious beliefs about what is right and wrong

10  and are held with the strength of traditional religious convictions." *United States v. Ward*, 989

11  F.2d 1015, 1018 (9th Cir. 1992) (quotation marks and citation omitted); *see also Alvarado v. City*

12  *of San Jose*, 94 F.3d 1223, 1229 (9th Cir. 1996), (holding "a religion addresses fundamental and

13  ultimate questions having to do with deep and imponderable matters," "consists of a belief-

14  system as opposed to an isolated teaching," and "often can be recognized by the presence of

15  certain formal and external signs.") Recognizing transgender individuals meets none of these

16  criteria. Instead, the Ninth Circuit has repeatedly recognized transgender individuals and the

17  scientifically based standard of transgender medical care. *Rosati v. Igbinoso*, 791 F.3d 1037, 1040

18  (9th Cir. 2015) (holding transgender inmates are entitled to specialists with "experience in

19  transgender medicine.") *see also Edmo v. Corizon, Inc.*, 935 F.3d 757, 788-89 (9th Cir. 2019)

20  (recognizing "established standards of care in the area of transgender health care" for

21  "transgender inmates); *Karnoski v. Trump*, 926 F.3d 1180, 1187, fn. 1 (9th Cir. 2019);

22  *Norsworthy v. Beard*, 87 F. Supp. 3d at 1175. As with Plaintiffs' free expression claims, the Court

23  may decline to accept Plaintiffs' clearly incorrect legal conclusion that gender identity is a

24  religion. (*See Iqbal*, *supra*.)

25      Treating the well-established fact of transgender identity as a religion would create

26  significant issues in the administration of prisons. *See Alvarado v. City of San Jose*, 94 F.3d 1223,

27  1230 (9th Cir. 1996) (holding "[i]f anything can be religion, then anything the government does

28  can be construed as favoring one religion over another, and . . . the government is paralyzed.")

21

Memo. Supp. Mot. Dism. (1:21-cv-01657-JLT-HBK)

1   Plaintiffs' allegation presents an unsubstantiated and unworkable argument on the establishment

2   of religion. If the Court accepts Plaintiffs' claim of establishment inmates would be able to create

3   similar allegations of establishment of religion for psychiatric and psychological care, among

4   other medical conditions. Such a standard is unworkable and should be dismissed.

5       The Plaintiffs' claims fail even if evaluated under the establishment clause. A law violates

6   the establishment clause if it "was not adopted for secular purpose, if its principal effect either

7   advances or inhibits religion, or if it results in excessive entanglement of government with

8   religion." *Edwards v. Aguillard*, 482 U.S. 578, 107 (1987). The legislative history of S.B. 132

9   demonstrates the law was enacted without reference to religion. (See RJN Ex. A-J.) The law was

10  passed for and has the principal effect of ensuring transgender inmates are not subject to abuse.

11  (*Id.*) Finally, the law is entirely disentangled from religion except when improperly construed as a

12  religion itself by Plaintiffs. Like the dismissal of an establishment claim challenging the teaching

13  of evolution, the recognition of transgender identity is based upon "the gathering and studying of

14  data, and modification of new data. It is an established scientific theory which is used as the basis

15  for many areas" within the penal system and when determining medical care in and out of

16  prisons. *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994).

17      **E.    The Ninth Circuit Has Dismissed Identical First Amendment Free Exercise**
18              **Claims.**

19      CDCR's interest in ensuring the safety of inmates provides a sufficient basis to justify the

20  restrictions alleged. Plaintiffs' claim that the mere presence of transgender inmates in women's

21  prisons prevents the free exercise of their religion. (ECF No. 1 at 23:13-14) "The free exercise [of

22  religion] … is necessarily limited by the fact of incarceration, and may be curtailed in order to

23  achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833

24  F.2d 196, 197 (9th Cir. 1987) (per curiam) (internal citations omitted); *see also O'Lone v. Estate*

25  *of Shabazz*, 482 U.S. 342, 348-49 (1987); *Turner*, 482 U.S. at 89-91. Where an inmate has met

26  their burden to allege a sincerely held belief, prison administrators bear the burden of showing the

27  challenged action is "reasonably related to legitimate penological interests." *Walker v. Beard*, 789

28  F.3d at 1138, quoting *Turner*, 482 U.S. at 89. S.B. 132 was passed to address the Legislature's

22

Memo. Supp. Mot. Dism. (1:21-cv-01657-JLT-HBK)

finding that "almost 40% of incarcerated transgender individuals reported experiencing sexual victimization while incarcerated, compared to four percent of all incarcerated individuals. ... In California, a study of the state's prisons designated for men found that the rate of sexual assault for transgender women in those prisons was 13 times higher than for men in the same prisons." (RJD Ex. I, P. 2.) Plaintiffs admit this purpose. (ECF No. 1 at 5:16-17.) Courts have recognized the state's legitimate interest in ensuring the safety of the prison environment in the face of less obvious risks to inmate safety. *See Friedman v. Arizona*, 912 F.2d 328, 331–32 (9th Cir. 1990), (superseded by statute on other grounds) (growing beards validly prohibited); *Standing Deer v. Carlson*, 831 F.2d 1525, 1528–29 (9th Cir. 1987) (wearing headbands). The well-recognized interest in ensuring the security of prisons provides a clear and sufficient basis for the law.

The Ninth Circuit has evaluated and dismissed identical free exercise claims. "A policy that allows transgender students to use school bathroom and locker facilities that match their self-identified gender in the same manner that cisgender students utilize those facilities does not infringe ... First Amendment free exercise rights." *Parents for Privacy*, 949 F.3d at 1240. This matter is not meaningfully different from *Parents for Privacy*, where the court dismissed claims that a school's policy "forces [cisgender female students] to be exposed to an environment in school bathrooms and locker facilities that conflicts with, and prevents them from fully practicing, their religious beliefs." *Parents for Privacy*, 949 F.3d at 1234. S.B. 132 is, like the Student Safety Plan in *Parents for Privacy*, a neutral and generally applicable law that is subject merely to rational basis review. *Id.* S.B. 132 is rationally related to the legitimate interests in protecting transgender individuals' safety and well-being and eliminating discrimination on the basis of an individual's gender identity. *Compare Parents for Privacy*, 949 F.3d at 1238 *with* RJN Ex. A-J. Plaintiffs cannot state a free exercise claim and dismissal is appropriate.

## F.   Plaintiffs Fail to State a Claim For an Equal Protection Violation.

In order to state an Equal Protection claim, a prisoner must plausibly allege "that the Defendants acted with an intent or purpose to discriminate against the Plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030. (9th Cir. 2013); *Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001). Intentional discrimination is not merely the

23

1    disparate treatment of different individuals. The state must have "acted at least in part because of

2    a Plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003). Plaintiffs

3    fail to allege intentional discrimination and instead conclude without any explanation that S.B.

4    132 "on its face deprives incarcerated women … equal protection of the laws on the basis of sex

5    and on the basis of 'identity' or 'gender identity' or 'transgender status' in violation of the

6    Fourteenth Amendment of the U.S. Constitution." (ECF No. 1, P. 24:21-24.) The Ninth Circuit

7    has rejected the Plaintiff's argument that laws based upon gender identity discriminate on the

8    basis of gender. *Parents for Privacy*, 949 F.3d at 1228 (holding just because a law "addresses the

9    topics of sex and gender by seeking to accommodate a transgender student's gender identity, or

10   because it segregates facilities by gender identity, does not mean that the [law] harasses other

11   students on the basis of their sex.") Plaintiffs conclude with neither support nor explanation that

12   the law serves no important purpose and therefore is unconstitutional. (*Id.* at 25:8-10.) Plaintiffs

13   fail to allege any intent to discriminate, fail to identify the protected class they are members of,

14   and fail to address the rational basis standard for evaluating the law's purpose. The Plaintiffs

15   therefore fail to state an Equal Protection claim.

16        Plaintiffs' complaint and referenced materials make clear S.B. 132 meets Plaintiffs'

17   proposed heightened standard of review. Laws that discriminate based upon gender identity are

18   subject to intermediate scrutiny. *Karnoski*, 926 F.3d at 1201; *see also Harrison v. Kernan* 971

19   F.3d 1069, at 1078-79 (9th Cir. 2020.) The Legislature and CDCR are entitled to deference that

20   "informs the application of intermediate scrutiny. *Karnoski*, 926 F.3d at 1201; *Turner v.*

21   *Safley* 482 U.S. at 84-85; Section VI.A., *supra*. Plaintiffs admit there exist two important

22   government interests furthered by S.B. 132. First, the law recognizes the dignity of transgender

23   individuals. (ECF No 1 at 5:25-27.) S.B. 132's grant for inmates to request housing in accordance

24   with their gender identity and perception of safety is consistent with the Supreme Court's

25   recognition that individuals have the right "to define and express their identity." *Obergefell*, 576

26   U.S. at 652. Second, the law reduces the risk and rate of assault on transgender inmates. (ECF No.

27   1. at 15:14-15). In the particular context of prisons, the state's interest in ensuring the safety and

28   security of inmates is a well-established basis for prison regulations. The Legislature identified

24

these purposes and made lengthy factual findings that demonstrate the need for protections related to S.B. 132. (RJN A-J.) The Plaintiff's admissions and the Legislature's statements of purpose demonstrate S.B. 132 was based upon a "reasoned analysis by policymakers, rather than discriminatory animus or the mechanical application of tradition, often inaccurate assumptions" about transgender inmates, as alleged by the Plaintiffs. *Harrison*, 971 F.3d at 1078 (quotations omitted). Dismissal is appropriate based upon either interest admitted by the Plaintiffs.

## CONCLUSION

Plaintiffs lack standing to bring suit, raise California state constitutional issues that this Court is barred from hearing, and allege limited facts that are insufficient to support the claims made. For these reasons, Defendants request this Court to grant this motion and dismiss this case.

Dated:  April 11, 2022                        Respectfully submitted,

ROB BONTA
Attorney General of California
PREETI K. BAJWA
Supervising Deputy Attorney General


*/s/ Anthony Corso*
ANTHONY N. CORSO
Deputy Attorney General
*Attorneys for Defendants*
*CDCR, K. Allison, M. Houston, and M. Pallares*

SA2021402445
43169413.docx