SHAWN MEERKAMPER (SBN 296964)
shawn@transgenderlawcenter.org
**TRANSGENDER LAW CENTER**
P.O. Box 70976
Oakland, California 94612
Telephone: (510) 587-9696

AMANDA C. GOAD (SBN 297131)
agoad@aclusocal.org
**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**
1313 W. 8th Street, #200
Los Angeles, California 90017
Telephone: (213) 977-9500

CHRISTINA S. PAEK (SBN 341994)
cpaek@lambdalegal.org
**LAMBDA LEGAL**
4221 Wilshire Boulevard, Suite 280
Los Angeles, California 90010
Telephone: (213) 382-7600

NORA HUPPERT (SBN 330552)
nhuppert@lambdalegal.org
**LAMBDA LEGAL**
65 E. Wacker Place, Suite 2000
Chicago, Illinois 60601
Telephone: (312) 663-4413

RICHARD SAENZ (*pro hac vice* forthcoming)
rsaenz@lambdalegal.org
**LAMBDA LEGAL**
120 Wall Street, 19th Floor
New York, New York 10005
Telephone: (212) 809-8585

DIMITRI D. PORTNOI (SBN 282871)
dportnoi@omm.com
MICHAEL J. SIMEONE (SBN 326844)
simeone@omm.com
ELIZABETH A. ARIAS (SBN 318283)
earias@omm.com
SHIVANI I. MORRISON (SBN 342874)
smorrison@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone: (213) 430-6000

SHILPI AGARWAL (SBN 270749)
sagarwal@aclunc.org
**ACLU FOUNDATION OF NORTHERN CALIFORNIA**
39 Drumm Street
San Francisco, California 94111
Telephone: (415) 621-2493

*Attorneys for Proposed Intervenors*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA (FRESNO DIVISION)**

JANINE CHANDLER, et al.,

Plaintiffs,

v.

CALIFORNIA DEP'T OF CORRECTIONS AND REHABILITATION, et al.,

Defendants.

Case No. 1:21-cv-01657-JLT-HBK

**DECLARATION OF KELLI BLACKWELL**

1. I make this declaration based on my own personal knowledge, and if called to testify, I could and would do so as follows:

2. I am a Black transgender woman. My pronouns are "she," "her," and "hers." I am 55 years old.

3. I am submitting this declaration in support of a motion to intervene in this lawsuit, to explain my interest in the lawsuit and my reasons for wanting to help defeat the lawsuit.

4. The first name written on my birth certificate was "Kelly," but after I came out as a transgender woman I started going by "Kelli" because it feels more feminine.

5. I am currently incarcerated at the Central California Women's Facility ("CCWF"). I have been living here since April 9, 2021.

6. I have been in the custody of the California Department of Corrections & Rehabilitation ("CDCR") since October of 1990. For many years, I was living as a transgender woman in facilities designated for men.

7. I consider myself an advocate for the transgender and LGBTQ communities. I have been in touch with the organization TGI Justice Project for years about my own struggles and the struggles of other transgender people in CDCR custody.

8. I was aware of SB 132 as it progressed through the legislative process. Then, in late 2019, I participated in an information session about the bill. CDCR staff called all the openly transgender women incarcerated at Mule Creek State Prison at that time into a room, shared some information about SB 132, and had us fill out a survey about our experiences and needs as transgender women.

9. I was elated when I found out in late 2020 that SB 132 was going to become law.

10. In January 2021, right after SB 132 took effect, I formally requested transfer to a women's facility.

11. That same month, I participated in a formal interview to document my preferred pronouns, my search preference, and my housing preference. At that time, CDCR staff asked me about my gender identity and about the history of my identifying and living as a transgender woman. I told them about how I came out as transgender many years ago and that I have been taking gender-affirming hormones for a long time. I have also applied to undergo gender-affirming surgery, but I have not been able to do so yet.

12. Several weeks after my interview, I was transferred to CCWF.

13. A few transgender women were already living here at CCWF when I arrived, and at least two other transgender women transferred from Mule Creek to CCWF at the same time I did. However, I am only aware of one additional transgender woman transferring into CCWF from facilities designated for men in the past several months.

14. On multiple occasions prior to my coming here, CDCR personnel questioned my interest in transferring to a women's facility. They repeatedly asked why I wanted to transfer. They told me that I was well-situated and respected at Mule Creek, a facility designated for men, and suggested that I should not give that status up. Staff members also told me and other transgender women to expect lots of conflict and drama if we transferred to a facility designated for women.

15. It seemed like CDCR staff were trying to make transgender women afraid of transferring and discourage us from seeking transfers to women's facilities as SB 132 permits.

16. CDCR staff also told me that if I had any problems at CCWF, I should not be surprised at what I was seeing in that environment, and I should not hesitate to request to come back.

17. It was important to me to transfer to a women's facility for safety reasons. I survived multiple serious incidents of physical violence while incarcerated at men's facilities. Most notably, in 2001 at New Folsom (also known

as the California State Prison-Sacramento), multiple other incarcerated people attacked me, and the beating broke bones in my jaw and neck. In 2008 at Salinas Valley State Prison, I again was attacked by another incarcerated person, and I lost 8 teeth in that incident. These incidents were hallmarks of a broader pattern of violence, which is why I felt unsafe being housed with men.

18. I also had to physically defend myself on many other occasions when I was housed with men, and I got in trouble quite a few times for fighting. Some of those situations felt very risky, especially because as a transgender woman taking medication to increase my estrogen levels and decrease my testosterone levels, I have lost much of the muscle mass I used to have.

19. When I was housed with men, I used to spend time every day thinking about how dangerous my situation was and how badly I needed to get out of there to a safer environment.

20. Here at CCWF, I feel physically safer. I appreciate that I am no longer being punched or beaten by fellow incarcerated people on a regular basis. I also appreciate that I no longer feel pressured to enter into a relationship with a cisgender man just so that he can help me try to stay safe from physical and sexual violence.

21. However, I am frustrated about how some of the staff here at CCWF treat transgender women. Many staff members have made it clear that they are uncomfortable with the presence of transgender women in this women's facility.

22. At CCWF, I have seen and experienced disproportionate discipline directed towards transgender women, while cisgender women routinely suffer no consequences for the same behavior. The warden has also threatened to send me back to a men's prison.

23. For the most part, I have felt warmly received by cisgender women here at CCWF. Most of the people who were living here prior to SB 132 taking effect support fairness, equity, and safety for everyone, and seem to feel fine about

sharing space with transgender women. Only a small percentage of the incarcerated cisgender women I have met here have expressed concern or caused me problems.

24. On the other hand, many members of the staff and administration at this facility have made it clear that they have problems with the presence of transgender women, and have sent messages to the incarcerated population that seem calculated to stir up concern and conflict about our presence.

25. It is scary to me that the plaintiffs in this lawsuit, who include some cisgender women housed here at CCWF, are trying to get a court to strike down SB 132 as unconstitutional and make CDCR return to its former policy of housing people based solely on their genital anatomy, without regard to their gender identity or their sense of safety.

26. I am concerned that if the plaintiffs were to succeed in this lawsuit, I could be sent back to a facility designated for men, where I would be subject to significant harassment and violence, just like I endured in the past. I am particularly wary about this because I am not currently eligible for parole, and I have not been able to access gender-affirming surgery.

27. I am also concerned about CDCR's ability to respond to the plaintiffs' arguments in this lawsuit fully and appropriately. Given the discriminatory treatment I have experienced from many CDCR staff members, and the inherent tension between incarcerated people and the agency holding us captive, I do not trust CDCR and its officials to explain or represent my interests as a transgender woman trying to maintain my safety and dignity while incarcerated.

28. It is important to me that I continue to have the ability to live in a women's facility and otherwise have CDCR acknowledge my identity as a transgender woman. At the same time, it is also important to me that other transgender or gender-variant people who are in CDCR's custody now or in the future must have their true identities respected and be able to choose a housing arrangement, based on their gender identity, that feels relatively safe.

29. I want to participate in this lawsuit in order to speak my truth as a transgender woman and to help the court understand that SB 132 has improved safety, autonomy, and dignity for women like me.

I declare under penalty of perjury of the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 14 day of April, 2022 at Chowchilla, California.

Kelli A. Blackwell

Kelli Blackwell