SHAWN MEERKAMPER (SBN 296964)
shawn@transgenderlawcenter.org
**TRANSGENDER LAW CENTER**
P.O. Box 70976
Oakland, California 94612
Telephone:    (510) 587-9696

AMANDA C. GOAD (SBN 297131)
agoad@aclusocal.org
**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**
1313 W. 8th Street, Suite 200
Los Angeles, California 90017
Telephone:    (213) 977-9500

CHRISTINA S. PAEK (SBN 341994)
cpaek@lambdalegal.org
**LAMBDA LEGAL**
4221 Wilshire Boulevard, Suite 280
Los Angeles, California 90010
Telephone:    (213) 382-7600

NORA HUPPERT (SBN 330552)
nhuppert@lambdalegal.org
**LAMBDA LEGAL**
65 E. Wacker Place, Suite 2000
Chicago, Illinois 60601
Telephone:    (312) 663-4413

RICHARD SAENZ (*pro hac vice* pending)
rsaenz@lambdalegal.org
**LAMBDA LEGAL**
120 Wall Street, 19th Floor
New York, New York 10005
Telephone:    (212) 809-8585

DIMITRI D. PORTNOI (SBN 282871)
dportnoi@omm.com
MICHAEL J. SIMEONE (SBN 326844)
msimeone@omm.com
ELIZABETH A. ARIAS (SBN 318283)
earias@omm.com
SHIVANI I. MORRISON (SBN 342874)
smorrison@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone:    (213) 430-6000

SHILPI AGARWAL (SBN 270749)
sagarwal@aclunc.org
**ACLU FOUNDATION OF NORTHERN CALIFORNIA**
39 Drumm Street
San Francisco, California 94111
Telephone: (415) 621-2493

*Attorneys for Proposed Intervenors*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| JANINE CHANDLER, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>CALIFORNIA DEP'T OF CORRECTIONS AND REHABILITATION, et al.,<br><br>　　　　　Defendants. | Case No. 1:21-cv-01657-JLT-HBK<br><br>**PROPOSED INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>Hearing Date:<br>Time:<br>Judge:　　　　Hon. Jennifer L. Thurston<br>Courtroom:　　4, 7th Floor |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................. 1

II.  FACTUAL BACKGROUND ................................................................................ 2

III. LEGAL STANDARD ........................................................................................... 3

IV.  ARGUMENT ........................................................................................................ 4

    A.   Plaintiffs Fail to Allege an Equal Protection Violation ........................... 4

        1.   SB 132 Does Not Constitute Sex Discrimination Against Cisgender Women .................................................................. 4

        2.   SB 132 Is Substantially Related to an Important Government Interest ....................................................................... 8

    B.   Plaintiffs Fail to Allege an Eighth Amendment Violation ..................... 10

    C.   Plaintiffs Cannot Demonstrate Redressability Because the Relief They Seek Would Not Permit CDCR to Violate the Equal Protection Clause, the Eighth Amendment, and PREA ................................................ 12

V.   CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

**CASES**

Page

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................ 3, 10

*B. P. J. v. W. Va. State Bd. of Educ.*,
550 F. Supp. 3d 347 (S.D. W. Va. 2021) .............................................. 13

*Becker v. Sherman*,
No. 1:16–cv–0828, 2017 WL 6316836 (E.D. Cal. Dec. 11, 2017), *report and
recommendation adopted*, 2018 WL 623617 (E.D. Cal. Jan. 30, 2018) ................................ 16

*Brown v. Plata*,
563 U.S. 493 (2011) ................................................................................ 7

*City of Cleburne v. Cleburne Living Ctr.*,
473 U.S. 432 (1985) ................................................................................ 12

*Crowder v. Diaz*,
No. 2:17-cv-1657, 2019 WL 3892300 (E.D. Cal. Aug. 19, 2019), *report and
recommendation adopted*, 2019 WL 5566433 (E.D. Cal. Oct. 29, 2019) ................................ 9

*Cruzan v. Special Sch. Dist. No. 1*,
294 F.3d 981 (8th Cir. 2002) ................................................................ 5

*Doe 1 v. Trump*,
275 F. Supp. 3d 167 (D.D.C. 2017) ...................................................... 14

*Doe ex rel. Doe v. Boyertown Area Sch. Dist.*,
897 F.3d 518 (3d Cir. 2018) .................................................................. 5

*Doe v. Mass. Dep't of Corr.*,
No. 17-12255-RGS, 2018 WL 2994403 (D. Mass. June 14, 2018) ............................ 13, 14, 17

*Edmo v. Corizon, Inc.*,
935 F.3d 757 (9th Cir. 2019) ................................................................ 5

*Edmo v. Corizon, Inc.*,
949 F.3d 489 (9th Cir. 2020) ................................................................ 10

*EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*,
884 F.3d 560 (6th Cir. 2018), *aff'd sub nom. Bostock v. Clayton Cnty.*, 140 S.
Ct. 1731 (2020) ...................................................................................... 9

*Fabian v. Hosp. of Cent. Conn.*,
172 F. Supp. 3d 509 (D. Conn. 2016) .................................................. 10

*Farmer v. Brennan*,
511 U.S. 825 (1994) ........................................................................ 10, 15, 16

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ................................................................................ 3

*Frost v. Agnos*,
152 F.3d 1124 (9th Cir. 1998) .............................................................. 15

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Greene v. Tilton*,
  No. 2:09-cv-0793, 2012 WL 691704 (E.D. Cal. Mar. 2, 2012), *report and
  recommendation adopted*, 2012 WL 1130602 (E.D. Cal. Mar. 29, 2012)................................ 7

4

5

*Grimm v. Gloucester Cnty. Sch. Bd.*,
  972 F.3d 586 (4th Cir. 2020)...................................................................... 13

6

7

*Hampton v. Baldwin*,
  No. 3:18-CV-550, 2018 WL 5830730 (S.D. Ill. Nov. 7, 2018) ................................. 13, 15, 17

8

*Harrison v. Kernan*,
  971 F.3d 1069 (9th Cir. 2020)...................................................................... 8

9

10

*Hecox v. Little*,
  479 F. Supp. 3d 930 (D. Idaho 2020)............................................................... 6

11

*Johnson v. California*,
  543 U.S. 499 (2005)................................................................................ 11

12

13

*Karnoski v. Trump*,
  926 F.3d 1180 (9th Cir. 2019)................................................................ 6, 8, 13

14

*Kastl v. Maricopa Cnty. Cmty. Coll. Dist.*,
  No. 02-cv-1531, 2004 WL 2008954 (D. Ariz. June 3, 2004), *aff'd*, 325 F.
  App'x 492 (9th Cir. 2009)...................................................................... 10, 14

15

16

*McQueen v. Brown*,
  No. 2:15-cv-2544 JAM AC P, 2018 WL 1875631 (E.D. Cal. Apr. 19, 2018),
  *report and recommendation adopted,* 2018 WL 2441713 (E.D. Cal. May 31,
  2018) ............................................................................................ 15

17

18

*Michelle v. Cal. Dep't of Corr. & Rehab.*,
  No. 1:18-cv-01743, 2021 WL 1516401 (E.D. Cal. Apr. 16, 2021), *report and
  recommendation adopted sub nom. Concepcion v. Cal. Dep't of Corr. &
  Rehab*, 2021 WL 3488120 (E.D. Cal. Aug. 9, 2021)............................................. 13

19

20

*Norsworthy v. Beard*,
  87 F. Supp. 3d 1104 (N.D. Cal. 2015) ...................................................... 13, 17

21

*Olive v. Harrington*,
  No. 1:15-cv-01276, 2016 WL 4899177 (E.D. Cal. Sept. 14, 2016) ............................ 15

22

23

*Parents for Priv. v. Barr*,
  949 F.3d 1210 (9th Cir.), *cert. denied*, 141 S. Ct. 894 (2020) ............................. 5, 9

24

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984)................................................................................ 3

25

*Schwenk v. Hartford*,
  204 F.3d 1187 (9th Cir. 2000)............................................................... passim

26

27

*Simon v. E. Ky. Welfare Rts. Org.*,
  426 U.S. 26 (1976)............................................................................ 4, 12

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013)......................................................................... 3

*Stover v. Corr. Corp. of Am.*,
    No. 1:12–cv–00393, 2015 WL 874288 (D. Idaho Feb. 27, 2015) ......................................... 16

*Taking Offense v. State*,
    66 Cal. App. 5th 696 (2021), *review granted on other grounds*, 286 Cal. Rptr.
    3d 248 (Mem)................................................................................. 6, 9

*Tay v. Dennison*,
    457 F. Supp. 3d 657 (S.D. Ill. 2020) ................................... 14, 15, 16, 17

*Tay v. Dennison*,
    No. 19-cv-00501, 2020 WL 2100761 (S.D. Ill. May 1, 2020)................................. 13

*Thomas v. District of Columbia*,
    887 F. Supp. 1 (D.D.C. 1995) ....................................................................... 16

*Turner v. Safley*,
    482 U.S. 78 (1987) ..................................................................... 8, 15

*United States v. Virginia*,
    518 U.S. 515 (1996) ..................................................................... 10

*Villa v. Maricopa Cnty.*,
    865 F.3d 1224 (9th Cir. 2017)......................................................................... 3

*Villery v. Grannis*,
    No. 1:10–cv–01022–RRB, 2013 WL 1499263 (E.D. Cal. Apr. 11, 2013) ............................. 11

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
    529 U.S. 765 (2000).............................................................. 4, 12

*Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
    858 F.3d 1034 (7th Cir. 2017)......................................................................... 13

*Zollicoffer v. Livingston*,
    169 F. Supp. 3d 687 (S.D. Tex. 2016) ................................................. 15

**STATUTES**

Cal. Penal Code § 2606................................................................. 3, 11, 14, 17

Cal. Penal Code § 2606(a)(3).................................................................. 1, 5

Cal. Penal Code § 2606(b) ......................................................................... 3

Cal. Penal Code § 2606(c) ...................................................................... 3, 7

Cal. Penal Code § 2606(d) ......................................................................... 3

Senate Bill No. 132, Transgender Respect, Agency, and Dignity Act (Jan. 1, 2021) ................... 2

**TABLE OF AUTHORITIES**
(continued)

**Page**

## OTHER AUTHORITIES

2020 Cal. Legis. Serv. ch. 182, § 2 ............................................................................. 2, 8

Statement of Interest of the United States, *Diamond v. Ward*, 5:20-cv-00453 (M.D.
   Ga. Apr. 22, 2021).......................................................................................................... 15

Valerie Jenness et al., Ctr. for Evidence-Based Corr., *Violence in California
   Correctional Facilities: An Empirical Examination of Sexual Assault* (2007)......................... 2

## REGULATIONS

28 C.F.R. § 115.42(c).......................................................................................................... 16

28 C.F.R. § 115.42(d).......................................................................................................... 16

28 C.F.R. § 115.42(e).......................................................................................................... 16

## I.   INTRODUCTION

California's Senate Bill No. 132 ("SB 132") protects incarcerated transgender people by requiring Defendants, the state's prison system and its leaders, to house them according to their gender identity if they so request.  SB 132 thus ended California's prior default practice of automatically housing all incarcerated transgender people according to their genitalia without exception.  The law marked a crucial first step toward ending the pervasive violation of incarcerated transgender people's constitutional right to be free of horrifically unsafe conditions of confinement and discriminatory treatment.

Plaintiffs' lawsuit argues that SB 132, which is designed to curtail the unconstitutionally violent and discriminatory conditions that result from housing transgender women in men's facilities, is itself unconstitutional because it will result in the mere presence of some transgender women in women's facilities.[1]  But Plaintiffs' allegations fall far short of describing how SB 132 has or plausibly will result in any injury to incarcerated cisgender women approaching the level of any constitutional violation.  On the contrary, the relief that Plaintiffs request—declaratory relief holding the statute facially unconstitutional and a permanent injunction against its enforcement—would not permit Defendants to resume a plainly unconstitutional policy that discriminates against incarcerated transgender people and places them at substantial risk of serious harm.  For those reasons, Plaintiffs cannot demonstrate that their claims are redressable and fail to state a claim upon which relief can be granted, and this Court should dismiss their complaint.

Defendants argued for this same result in their Motion to Dismiss.  Yet they did so in part by asserting broad statutory and constitutional discretion over housing policies and decisions and claiming that they "have not decided on a final implementation" of a law which has been binding

---

[1] The complaint refers to transgender women (and other transgender, nonbinary, or intersex people assigned male at birth) incorrectly by describing them as men who "claim[] a 'transgender, nonbinary, or intersex' 'identity.'"  Compl. ¶17. Transgender women and other transgender or nonbinary people assigned male at birth are not men.  Broadly speaking, it is the presence of transgender women and other transgender or nonbinary people assigned male at birth in women's facilities that Plaintiffs challenge.  For that reason, Proposed Intervenors here sometimes refer to transgender women as a shorthand, though SB 132's protections apply equally to transgender women and to other transgender, nonbinary, or intersex people.  Cal. Penal Code § 2606(a)(3).

POINTS & AUTHORITIES ISO
MOTION TO DISMISS
CASE NO. 1:21-CV-01657-JLT-HBK

1   on them since January 1, 2021.  Dkt. No. 15 at 16–18.  Defendants do not have the wide

2   discretion they claim: the text of SB 132 commands nothing less than full implementation, and

3   the Constitution demands that incarcerated transgender people be protected from both cruel and

4   unusual punishment and discrimination.

5   **II.      FACTUAL BACKGROUND**

6          Transgender women incarcerated in men's facilities are at extreme risk of physical and

7   sexual violence and persistent harassment.  To protect them and other incarcerated transgender,

8   nonbinary, and intersex people, California lawmakers enacted SB 132, also known as the

9   Transgender Respect, Agency, and Dignity Act.  This law requires the California Department of

10  Corrections ("CDCR")—the Defendants—to house incarcerated transgender people according to

11  their gender identity if that is their request.  A broad coalition of advocacy organizations,

12  including proposed intervenor the Transgender Gender-Variant Intersex Justice Project (TGIJP),

13  formally sponsored and shaped SB 132 based on extensive feedback from currently and formerly

14  incarcerated people.  *See* Def.'s Req. for Judicial Notice, Ex. A, Dkt. No. 15-3.  The law took

15  effect on January 1, 2021.

16         In enacting SB 132, the California Legislature found that 40 percent of incarcerated

17  transgender women reported being harassed by other incarcerated people, and 38 percent reported

18  being harassed by CDCR staff.  2020 Cal. Legis. Serv. ch. 182, § 2(g), (h).  The Proposed

19  Intervenors' own experiences bear this out, *see* Dkt. No. 19-3–19-6, and their stories are not

20  unusual.  A statewide study found that transgender women housed in men's facilities in California

21  were *13 times more likely* to be sexually assaulted than men in the same facilities.[2]

22         SB 132 protects incarcerated transgender people like the Proposed Intervenors in several

23  ways, but the law's central protections come from its housing provisions: it requires Defendants

24  to house transgender, nonbinary, and intersex people in facilities designated for men or women

25  based on the person's stated preference and perception of personal safety, subject to one

26  _____

27  [2] 2020 Cal. Legis. Serv. ch. 182, § 2(c); Valerie Jenness et al., Ctr. for Evidence-Based Corr.,
   *Violence in California Correctional Facilities: An Empirical Examination of Sexual Assault* 54

28  (2007), https://cpb-us-e2.wpmucdn.com/sites.uci.edu/dist/0/1149/files/2013/06/Jenness-et-
   al._PREA-Report.pdf.

POINTS & AUTHORITIES ISO
MOTION TO DISMISS
CASE NO. 1:21-CV-01657-JLT-HBK

1  exception.  Cal. Penal Code § 2606.  Defendants may deny such a housing request for

2  "management or security concerns," but their ability to do so is significantly limited—they may

3  not deny a request "based on any discriminatory reason, including, but not limited to," anatomy

4  (including "genitalia or other physical characteristics"), "sexual orientation," or any "factor

5  present among other people incarcerated at the preferred type of facility."  *Id.* § 2606(c).  If

6  Defendants intend to deny such a request, they must provide "a meaningful opportunity to

7  verbally raise any objections" and "certify in writing a specific and articulable basis" for their

8  decision, which they must provide to the person who made the request.  *Id.* § 2606(b), (d).

9        Plaintiffs Janine Chandler, Krystal Gonzalez, Tomiekia Johnson, Nadia Romero, and the

10  organization Woman II Woman challenge SB 132 on various federal and state constitutional

11  grounds.  In all, Plaintiffs bring: (1) a federal Eighth Amendment claim; (2) a federal First

12  Amendment claim; and (3) a federal Equal Protection claim.  Compl. ¶¶ 81–105.  They also bring

13  several California state constitutional claims.  *Id.* ¶¶ 106–141.

14        On April 11, 2022, Defendants filed their Motion to Dismiss Plaintiffs' complaint.  Dkt.

15  No. 15.  Defendants argue, among other things, that Plaintiffs lack standing; that Plaintiffs' state

16  constitutional claims are barred by *Pennhurst State School & Hospital v. Halderman*, 465 U.S.

17  89, 106 (1984); that Defendants are entitled to wide constitutional and statutory discretion over

18  housing decisions; and that Plaintiffs fail to state valid federal constitutional claims.  *See* Dkt. No.

19  15, *passim.*

20  **III.   LEGAL STANDARD**

21        "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

22  accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Villa v. Maricopa Cnty.*,

23  865 F.3d 1224, 1228 (9th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

24  Plausibility requires the allegations to "rise above the mere conceivability or possibility of

25  unlawful conduct."  *Somers v. Apple, Inc.*, 729 F.3d 953, 960 (9th Cir. 2013).  Additionally, a

26  plaintiff invoking this Court's jurisdiction "must demonstrate standing separately for each form of

27  relief sought."  *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185

28  (2000).  To do so, they "must demonstrate redressability—a 'substantial likelihood' that the

1    requested relief will remedy the alleged injury in fact." *Vt. Agency of Nat. Res. v. United States*

2    *ex rel. Stevens*, 529 U.S. 765, 771 (2000) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S.

3    26, 45 (1976)).

4    **IV.    ARGUMENT**

5           Plaintiffs bring claims under the First Amendment, the Eighth Amendment, the Equal

6    Protection Clause, and various provisions of the California Constitution.  Compl. ¶¶ 106–141.  In

7    their Motion to Dismiss, Defendants explain why this Court cannot exercise jurisdiction over the

8    state constitutional claims and why Plaintiffs lack standing to assert their First Amendment

9    claims.  Dkt. No. 15 at 5–9.  Proposed Intervenors agree and do not repeat those arguments here.

10          Plaintiffs' claims under the Equal Protection Clause and the Eighth Amendment must also

11   be dismissed, not because Defendants are entitled to this Court's total deference in areas of

12   housing and placement decisions, as they claim, but because neither provision is violated by the

13   mere presence of transgender women in women's facilities.  Dkt. No. 15 at 16.  To the contrary,

14   SB 132 is a necessary departure from Defendants' past practice that housed many transgender

15   people in conditions of confinement that violated the Eighth Amendment, through discriminatory

16   decision-making that violated the Equal Protection Clause.  The declaratory and injunctive relief

17   that Plaintiffs seek would not leave Defendants free to violate the Constitution by sending back

18   those who have obtained transfers or by foreclosing future transfers.  Therefore, Plaintiffs' claims

19   are not redressable, and should be dismissed.

20          **A.    Plaintiffs Fail to Allege an Equal Protection Violation**

21          Plaintiffs advance several equal protection theories, each aimed at reframing state action

22   to protect incarcerated transgender people as discrimination against cisgender women.  Courts

23   confronting such theories have rejected them, and this Court should do the same.

24                 **1.    SB 132 Does Not Constitute Sex Discrimination Against Cisgender
                          Women**

25          ***First***, Plaintiffs claim that SB 132 constitutes sex discrimination because it "converts

26   women's correctional facilities into mixed-sex[3] facilities, with no corresponding conversion of

27   _____

28   [3] Here, Plaintiffs rely on an incorrect notion of "sex" that limits its definition to the sex one is
     assigned at birth.  But the Ninth Circuit has recognized that "sex" is more complicated and not

1  men's facilities" and imposes "corresponding increased risks" on cisgender women but not on

2  cisgender men.  Compl. ¶¶ 100, 101.  But this is factually incorrect: the law's provisions apply

3  equally to men's and women's facilities (such that transgender people may request a transfer to

4  either, based on their personal perception of safety—including transgender men who may request

5  to transfer from a women's facility to a men's facility).  *See Parents for Priv. v. Barr*, 949 F.3d

6  1210 (9th Cir.), *cert. denied*, 141 S. Ct. 894 (2020) (holding that an analogous school policy that

7  treated men's and women's facilities equally did not discriminate based on sex); Cal. Penal Code

8  § 2606(a)(3).  The law, if anything, only ameliorates the mixed-sex housing that resulted from

9  Defendants' prior policy of automatically housing transgender women in men's facilities and

10  transgender men in women's facilities.  In fact, Plaintiffs' desire for a policy that houses people

11  based solely on sex assigned at birth would *require* Plaintiffs to be housed with transgender men.

12  No matter what policy Defendants maintain, some transgender people will be present in the same

13  facilities as Plaintiffs.

14       It is not a violation of equal protection to house some transgender people assigned male at

15  birth in women's facilities.  To the extent that Plaintiffs argue that "living in close quarters with"

16  and sharing facilities with transgender women itself works an act of sex discrimination, courts

17  across the country have rejected this argument across a wide variety of contexts.  *See, e.g.,*

18  *Parents for Priv.*, 949 F.3d at 1228 (rejecting sex discrimination claim in schools owing to "the

19  mere presence of transgender students in locker and bathroom facilities"); *Cruzan v. Special Sch.*

20  *Dist. No. 1*, 294 F.3d 981, 984 (8th Cir. 2002) (rejecting sex discrimination claim in employment

21  where the plaintiff "does not assert [the transgender employee] engaged in any inappropriate

22  conduct other than merely being present in the women's faculty restroom"); *Doe ex rel. Doe v.*

23  *Boyertown Area Sch. Dist.*, 897 F.3d 518, 536 (3d Cir. 2018) (in challenge to trans-inclusive

24  school policy, rejecting attempt "to equate mere presence [of transgender people] in a space with

25  harassing activity" directed toward cisgender women).

26       *Second*, Plaintiffs claim that SB 132 grants transgender people "special rights" that it does

27  limited in this way, and that transgender women are women, regardless of their sex assigned at
   birth.  *Edmo v. Corizon, Inc.*, 935 F.3d 757, 768 (9th Cir. 2019); *Schwenk v. Hartford*, 204 F.3d

28  1187 (9th Cir. 2000).

POINTS & AUTHORITIES ISO
MOTION TO DISMISS
CASE NO. 1:21-CV-01657-JLT-HBK

1    not grant to those who "have no gender identity" or whose gender identity is not "favored under

2    the statute."  Compl. ¶ 103.  This is pure nonsense.  As the Ninth Circuit has recognized,

3    *everyone* has a gender identity; for those who are cisgender, that gender identity simply matches

4    their sex assigned at birth.  *See, e.g.*, *Karnoski v. Trump*, 926 F.3d 1180, 1187 n.1 (9th Cir. 2019)

5    (citing Brief of Amici Curiae American Medical Association et al.); *see also Hecox v. Little*, 479

6    F. Supp. 3d 930, 945 (D. Idaho 2020) (explaining that transgender people have "a gender identity

7    [that] does not align with the sex [assigned] at birth") (internal quotation omitted).  Plaintiffs'

8    claim that SB 132 discriminates against "female prisoner[s] without any gender identity" is

9    indecipherable and is not plausible.  Plaintiffs have failed to identify any such person or allege

10   any such specific injury.

11          Nor does SB 132 give transgender people "special rights" by permitting them to be

12   housed according to their gender identity, a right that Plaintiffs already have.  California courts

13   have rejected a similar argument in a challenge to an analogous state law involving long-term

14   care facilities where the plaintiff "fail[ed] to show that the right afforded to transgender residents

15   by the room assignment provision—the right to a room assignment in accordance with the

16   resident's gender identity—[was] any different from the right afforded to non-transgender

17   residents."  *Taking Offense v. State*, 66 Cal. App. 5th 696, 727 (2021), *review granted on other*

18   *grounds*, 286 Cal. Rptr. 3d 248 (Mem).  Plaintiffs' equal protection claims fail for the same

19   reason—incarcerated cisgender people already enjoy the right to be housed according to their

20   gender identity while in CDCR's custody.  *See, e.g.*, *Hecox*, 479 F. Supp. 3d at 975 (noting that

21   "cisgender athletes … may compete on athletic teams consistent with their gender identity" in

22   analysis of policy preventing transgender student-athletes from doing so).

23          *Third*, Plaintiffs assert that SB 132 is a government classification on the basis of gender

24   identity or transgender status that does not employ means substantially related to an important

25   government interest—in other words, they argue that it does not survive heightened scrutiny.

26   Compl. ¶ 102.  Defendants rightly note that Plaintiffs have not plausibly alleged any

27   discriminatory intent or purpose sufficient to trigger any scrutiny under the Equal Protection

28   Clause.  Dkt. No. 15 at 24.

However, Defendants also erroneously argue that they are afforded wide constitutional and statutory "discretion when creating and implementing housing decisions and policies" because of separation-of-powers concerns and under the Due Process Clause. Dkt. No. 15 at 16–17. But prison administrators cannot escape the commands of the Equal Protection Clause, and "[c]ourts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Brown v. Plata*, 563 U.S. 493, 511 (2011); *see also Greene v. Tilton*, No. 2:09-cv-0793, 2012 WL 691704, at *8 (E.D. Cal. Mar. 2, 2012) (holding that deference to CDCR prison administration did not preclude equal protection gender discrimination claims), *report and recommendation adopted*, 2012 WL 1130602 (E.D. Cal. Mar. 29, 2012). Plaintiffs' claims fail not because CDCR is immune from judicial review of its housing decisions, but because it does not violate the Constitution to house transgender women in women's facilities. In fact, as demonstrated more thoroughly below, the Constitution often *requires* it.

The text of the statute does not grant Defendants the broad discretion they assert: it explicitly limits their ability to deny transfers, prohibiting them from doing so "based on any discriminatory reason," which the statute clarifies includes on the basis of anatomy (including genitalia), sexual orientation, or any factor present among other people incarcerated at the preferred type of facility. Cal. Penal Code § 2606(c). Thus, it would be a clear violation of the text of SB 132 for CDCR to require a transgender woman to undergo surgical vaginoplasty before granting her a transfer, for example. Similarly, CDCR cannot deny a transgender woman's transfer request based on her convictions or disciplinary history so long as it incarcerates cisgender women with similar records in its women's prisons, as that would run afoul of the non-discrimination provision. *Id.* This is no small limitation, and CDCR is further required to "certify in writing" its nondiscriminatory, "specific and articulable basis" for any denials. *Id.*

Neither can Defendants derive this discretion from the constitutional deference principles announced in *Turner v. Safley*, as they claim to do in their Motion to Dismiss. Dkt. No. 15 at 16; *Turner v. Safley*, 482 U.S. 78 (1987). The Ninth Circuit has held—in a case to which Defendants themselves were parties—that *Turner*'s relaxed standard of review for constitutional challenges to

1  prison administration simply does not apply to gender discrimination claims.  *Harrison v.*

2  *Kernan*, 971 F.3d 1069, 1078 (9th Cir. 2020) (holding that prison regulations "which facially

3  discriminate on the basis of gender ... must receive intermediate scrutiny" in spite of *Turner*).  In

4  doing so, the court cautioned that gender classifications cannot be based on stereotype, or on

5  "mechanical application of traditional, often inaccurate assumptions about gender," nor may they

6  "rely on overbroad generalizations about" gender.  *Id.* at 1077–78 (internal quotations omitted).

7      **2.**        **SB 132 Is Substantially Related to an Important Government Interest**

8        As explained above, Plaintiffs have not plausibly alleged any discriminatory intent or

9  purpose sufficient to trigger any heightened scrutiny under the Equal Protection Clause.  But even

10  if this Court *does* view SB 132 as a government classification of transgender people receiving

11  heightened scrutiny, whether viewed as gender discrimination or discrimination on the basis of

12  transgender status,[4] the law is substantially related to the achievement of an important

13  government interest.

14        Protecting transgender people from the extreme risk of physical and sexual assault and

15  harassment that they face in prisons—a degree of risk that incarcerated cisgender people

16  statistically do not share—is undeniably an important government interest.  The California

17  legislature recognized exactly this in enacting SB 132, acknowledging in the preamble that

18  incarcerated transgender people are "particularly vulnerable to sexual abuse and sexual

19  harassment"; that "a study of the state's prisons found that the rate of sexual assault for

20  transgender women" was "13 times higher than for men"; that "almost 40 percent of incarcerated

21  transgender individuals reported experiencing sexual victimization while incarcerated compared

22  to 4 percent of all incarcerated individuals"; and that transgender people "deserve respect, agency,

23  and dignity."  2020 Cal. Legis. Serv. ch. 182, § 2.

24        The statute serves another government interest that is no less important: partially

25  remedying the long, troubling history of discrimination by CDCR against incarcerated

26  _____

27  [4] The Ninth Circuit has held that discrimination against transgender people receives heightened scrutiny both because it is sex discrimination and because it is discrimination on the basis of one's status as transgender.  *Schwenk*, 204 F.3d at 1202 (sex discrimination); *Karnoski*, 926 F.3d

28  at 1200 (transgender status).

1  transgender people. *See, e.g.*, *Crowder v. Diaz*, No. 2:17-cv-1657, 2019 WL 3892300, at *13

2  (E.D. Cal. Aug. 19, 2019) (summarizing the discrimination incarcerated transgender people face

3  generally and noting the plaintiff's experience of discrimination in CDCR facilities), *report and*

4  *recommendation adopted*, 2019 WL 5566433 (E.D. Cal. Oct. 29, 2019).  Courts have held that

5  similar policies prohibiting discrimination against transgender people in a wide variety of

6  contexts serve an important government interest, even a compelling one.  For example, courts

7  have long held that the government has a compelling interest in prohibiting sex discrimination,

8  and that the government interest is no less compelling where that discrimination is targeted at

9  transgender people. *See, e.g.*, *Schwenk*, 204 F.3d at 1202 (holding that discrimination against

10  transgender people constitutes sex discrimination); *EEOC v. R.G. & G.R. Harris Funeral Homes,*

11  *Inc.*, 884 F.3d 560, 591 (6th Cir. 2018) (recognizing the government's "compelling interest in

12  combating discrimination in the workforce" in addressing termination of transgender employee),

13  *aff'd sub nom. Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020).  Indeed, the Ninth Circuit and

14  California's courts have both held that state laws protecting transgender people's access to

15  particular spaces or facilities based on their gender identity rather than their sex assigned at birth

16  may serve a compelling state interest. *Taking Offense*, 66 Cal. App. 5th 696 (holding that

17  California has a compelling interest in analogous housing provisions protecting transgender

18  people in long-term care facilities); *Parents for Priv.*, 949 F.3d at 1238 n.21 (noting that, for

19  purposes of the strict scrutiny analysis, school district was not precluded from "asserting an

20  interest in providing an accommodating and safe school environment for transgender students and

21  assuring that they do not suffer the stigmatizing injury of discrimination by being denied access to

22  multi-user bathrooms that match their gender identity").

23       The means that California has selected—provisions allowing transgender people to

24  request housing, search policies, and pronoun usage consistent with their gender identity—are

25  substantially related to these government objectives.  Plaintiffs make no effort to allege otherwise

26  in their complaint, apart from conclusory allegations that the statute is "not substantially related to

27  any purported important governmental interest." *Iqbal*, 556 U.S. at 678 (complaint "that offers

28  labels and conclusions or a formulaic recitation of the elements of a cause of action will not do");

1  Compl. ¶ 102.  At most, Plaintiffs point out that the statute prohibits CDCR from denying a

2  transfer based on "anatomy, genitalia, physical characteristics, and physiology," which are traits

3  they claim "differentiate men as a class from women as a class."  *Id*. ¶ 7.  But it is precisely these

4  assumptions that the Equal Protection Clause forbids CDCR to make—"generalizations about the

5  way women are," *United States v. Virginia*, 518 U.S. 515, 550 (1996), even if those

6  generalizations are about their bodies' failure to conform to "socially-constructed gender

7  expectations."  *Schwenk*, 204 F.3d at 1202; *see also Kastl v. Maricopa Cnty. Cmty. Coll. Dist.*,

8  No. 02-cv-1531, 2004 WL 2008954, at *2 (D. Ariz. June 3, 2004), *aff'd*, 325 F. App'x 492 (9th

9  Cir. 2009) ("[N]either a woman with male genitalia nor a man with stereotypically female

10  anatomy, such as breasts, may be deprived of a benefit or privilege of employment by reason of

11  that nonconforming trait.").  Discrimination based on sex "is not only discrimination because of

12  maleness and discrimination because of femaleness," but also "discrimination because of the

13  properties or characteristics by which individuals may be classified as male or female."  *Fabian v.*

14  *Hosp. of Cent. Conn.*, 172 F. Supp. 3d 509, 526 (D. Conn. 2016).

15       Because Plaintiffs' equal protection theories are incoherent and conclusory, and because

16  even if they were not, SB 132 would survive heighted scrutiny, these claims must be dismissed.

17       **B.       Plaintiffs Fail to Allege an Eighth Amendment Violation**

18       Prison officials violate the Eighth Amendment rights of an incarcerated person when they

19  know of, and disregard, an excessive risk to the incarcerated person's health and safety.  *Edmo v.*

20  *Corizon, Inc.*, 949 F.3d 489, 500-01 (9th Cir. 2020).  Plaintiffs argue that the mere presence of

21  some transgender women in women's facilities constitutes a violation of cisgender women's

22  Eighth Amendment rights.  Such a claim requires a showing of deliberate indifference to

23  conditions that pose a substantial risk of serious harm.  *Farmer v. Brennan*, 511 U.S. 825, 828

24  (1994).  But Plaintiffs do not allege *actually existing conditions* of substantial risk, except for the

25  "psychological distress and terror" that they claim results from the mere presence of transgender

26  women in facilities with cisgender women.  Compl. ¶ 83.  Plaintiffs' remaining allegations of

27  harm rest almost entirely on the bigoted and baseless notion that transgender women as a group

28  have a propensity to "violate [cisgender] women's safety" and that the statute should require

transgender women requesting a transfer to demonstrate a "lower risk of male pattern violence than for an average [cisgender] man." *Id.* ¶¶ 8, 84. Plaintiffs fail to plead *any* specific facts to support this offensive assertion, which asks this Court to assess individual transgender people based on stereotypes and assumptions about transgender people as a group, and thus invites the Court to itself violate equal protection principles. *Infra* at 13; *see also Johnson v. California*, 543 U.S. 499, 507 (2005) (holding that CDCR's concerns about violence could not justify a government classification because the resulting stigmatization contributed to the problem it was trying to correct). For that reason, it cannot be the basis for a conditions of confinement claim. And, as addressed more fully below, CDCR cannot foreclose an avenue for transgender women to seek relative safety from the very real and unreasonable risks of harm they face in men's prisons, in violation of their Eighth Amendment rights.

Plaintiffs' allegation that SB 132 *might* result in conditions of substantial risk of serious harm to cisgender women at some *future* date is pure speculation and completely ignores the provisions in SB 132 that permit CDCR to deny transfers specifically due to security concerns. Cal. Penal Code § 2606; *see also* Compl. ¶¶ 34, 35; *Villery v. Grannis*, No. 1:10–cv–01022–RRB, 2013 WL 1499263, at *2 (E.D. Cal. Apr. 11, 2013) ("the official must have more than a mere suspicion that an attack will occur") (internal quotations omitted).

Plaintiffs do allege a single instance of harm by a transgender woman against Plaintiff Krystal Gonzalez, Compl. ¶ 70, but nothing in SB 132 prohibits Defendants from preventing or remedying one incarcerated person's assault of another, nor does the statute permit assault, limit CDCR's authority to maintain order within its facilities and among a facility's residents, or minimize prison officials' mandate to protect incarcerated people. That Defendants were required to refer to Gonzalez's alleged assailant as a transgender woman is the only supposed fact alleged to have been mandated by SB 132, and has no impact on Gonzalez's health and safety. *Id.* The statute simply requires Defendants to treat transgender women similarly to cisgender women by housing them in women's facilities. Plaintiffs clearly do not allege that the only or best mechanism to address an allegation of assault by an incarcerated cisgender woman is to transfer her to a men's prison. Without any justification, however, they argue that CDCR *must* do so—as

1  a matter of constitutional law—to *all* transgender women.  The collective punishment Plaintiffs

2  seek cannot be justified by any of the allegations contained in their Complaint.

3        C.    **Plaintiffs Cannot Demonstrate Redressability Because the Relief They Seek**
                **Would Not Permit CDCR to Violate the Equal Protection Clause, the Eighth**

4                  **Amendment, and PREA**

5        Resting upon their outlandish theory that the mere existence of transgender women in

6  women's facilities violates the Constitution are Plaintiffs' astonishing requests for relief:

7  declaratory relief facially invalidating SB 132 and a permanent injunction against its enforcement.

8  Compl. at 34.  But to establish Article III standing, Plaintiffs "must demonstrate redressability—a

9  'substantial likelihood' that the requested relief will remedy the alleged injury in fact." *Stevens*,

10  529 U.S. at 771 (quoting *Simon*, 426 U.S. at 45).  Plaintiffs' claims are not redressable because

11  the relief they request—an injunction against the implementation and enforcement of SB 132—

12  would not permit CDCR to remove transgender women from women's prisons or foreclose future

13  transfers in violation of Defendants' independent obligations under the Equal Protection Clause,

14  the Eighth Amendment, and the federal Prison Rape Elimination Act ("PREA").  An injunction

15  against implementing the specific policy contained in SB 132 would do nothing to change

16  CDCR's obligations to maintain a similar policy as required by the Constitution, and thus would

17  do nothing to remedy Plaintiff's alleged injuries, which they claim stem from the presence of

18  transgender women in women's facilities.  *See* Compl.  And even if Plaintiffs' requested relief

19  were construed as a request to ban transgender women from CDCR's women's prisons, such a

20  ban would violate these same sources of law.

21        ***Equal Protection.***  Even if SB 132 itself were enjoined, Defendants could not resume a

22  policy of housing all transgender people based on their genitalia or their sex assigned at birth

23  rather than based on their gender identity, as such a policy would treat transgender people

24  differently than their cisgender counterparts.  In doing so, it would run afoul of the Equal

25  Protection Clause by impermissibly classifying on the bases of both sex and transgender status, in

26  ways not justified by any government interest.

27        The Equal Protection Clause is "essentially a direction that all persons similarly situated

28  should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

1   Transgender women are women, who are similarly situated to other women.  *See B. P. J. v. W.*

2   *Va. State Bd. of Educ.*, 550 F. Supp. 3d 347, 353–54 (S.D. W. Va. 2021) (observing that a

3   transgender girl "is not most similarly situated with cisgender boys; she is similarly situated to

4   other girls").  Specifically, "courts have found that transgender woman prisoners are similarly

5   situated to cisgender woman prisoners for purposes of an equal protection claim."  *Tay v.*

6   *Dennison*, No. 19-cv-00501, 2020 WL 2100761, at *2 (S.D. Ill. May 1, 2020); *see also Michelle*

7   *v. Cal. Dep't of Corr. & Rehab.*, No. 1:18-cv-01743, 2021 WL 1516401, at *10 (E.D. Cal. Apr.

8   16, 2021), *report and recommendation adopted sub nom. Concepcion v. Cal. Dep't of Corr. &*

9   *Rehab*, 2021 WL 3488120 (E.D. Cal. Aug. 9, 2021); *Norsworthy v. Beard*, 87 F. Supp. 3d 1104,

10   1120 (N.D. Cal. 2015) (finding that transgender woman prisoner adequately stated an equal

11   protection claim based on allegations that "Defendants treated her differently from a similarly

12   situated non-transgender woman").

13        A policy that conditions placement in sex-segregated facilities based on genitalia or birth-

14   assigned sex rather than gender identity discriminates on the basis of sex.  *See, e.g.*, *Hampton v.*

15   *Baldwin*, No. 3:18-CV-550, 2018 WL 5830730, at *11 (S.D. Ill. Nov. 7, 2018) (finding that, in

16   maintaining a prison policy that assigns placements based on genitalia, "a sex-based classification

17   is used"); *Tay*, 2020 WL 2100761 (finding that a policy that houses based on genitalia alone

18   discriminates on the basis of sex); *Doe v. Mass. Dep't of Corr.*, No. 17-12255-RGS, 2018 WL

19   2994403, at *9 (D. Mass. June 14, 2018) (finding that a policy that assigns based only on

20   "biological sex assignment at birth" constituted a sex-based classification); *Norsworthy*, 87 F.

21   Supp. 3d at 1120.  That is because a policy that decides which sex-segregated facility a person

22   may use based on their birth-assigned sex "necessarily rests on a sex classification" and "cannot

23   be stated without referencing sex."  *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 608 (4th

24   Cir. 2020) (quotations omitted); *see also Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist.*

25   *No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017) (holding that a school restroom policy

26   based on birth-assigned sex was inherently based on a sex classification and applying heightened

27   scrutiny).  Because such a policy also employs a classification of transgender people as a group, it

28   discriminates on the basis of transgender status.  *Karnoski*, 926 F.3d at 1200–01; *Norsworthy*, 87

POINTS & AUTHORITIES ISO
MOTION TO DISMISS
CASE NO. 1:21-CV-01657-JLT-HBK

1  F. Supp. 3d at 1119.

2      Neither could such a reversion to the status quo ante by potentially sending some

3  transgender women back to men's facilities be justified by any purported government interest.

4  Any attempt to justify it based on security grounds resulting from SB 132 would be fatally flawed

5  for two reasons.  First, SB 132 already permits CDCR to deny transfers based on certain security

6  concerns, Cal. Penal Code § 2606, and CDCR has any number of other means short of facility

7  transfer to address misconduct by a person of any gender.  Second, "generalized concerns for

8  prison security are insufficient to meet the demanding burden [required] to justify sex-based

9  classifications." *Doe*, 2018 WL 2994403, at *10.

10     And the fact that CDCR's discretion to deny a transfer is limited under the statute does not

11 change the equal protection analysis, as those limits are consistent with equal protection

12 principles.  SB 132 explicitly prohibits CDCR from denying a transfer request based on

13 stereotypes of what a man or woman *should* be like.  "The defining characteristic of a transgender

14 individual is that their inward identity, behavior, and possibly their physical characteristics, do

15 not conform to stereotypes of how an individual of their assigned sex should feel, act and look."

16 *Doe 1 v. Trump*, 275 F. Supp. 3d 167, 210 (D.D.C. 2017).  It is exactly this kind of stereotyping

17 that occurs when a prison concludes that access to a sex-segregated facility may be denied to "a

18 woman with male genitalia [or] a man with stereotypically female anatomy, such as breasts ... by

19 reason of that nonconforming trait." *Kastl*, 2004 WL 2008954, at *2.  The same is true of other

20 physical characteristics like size.  *See, e.g.*, *Tay v. Dennison*, 457 F. Supp. 3d 657, 681 (S.D. Ill.

21 2020) (holding that it was sex discrimination to house a transgender woman in a men's facility

22 because of her physical size, in the absence of any evidence that the prison would "assign a very

23 small man to a women's prison—or an exceptionally large woman to a men's prison—based on

24 that individual's size alone").

25     Unless they can survive heightened scrutiny, Defendants' policies must treat transgender

26 women in the same way that they treat similarly situated non-transgender women.  A policy that

27 would place a cisgender woman in a men's facility, for punitive or protective reasons, would be

28 outrageous and universally condemned, and could not be justified even under rational basis

1   review or the deferential standard in *Turner v. Safley*.  *See Turner*, 482 U.S. 78 (1987); *Hampton*,

2   2018 WL 5830730, at *12 (finding that a similar housing policy was likely not substantially

3   related to the interest of prison security because "[cisgender] inmates can be equally aggressive

4   and violent, perhaps more so than [the transgender plaintiff].  Yet, no one would suggest those

5   women should be housed in the men's division.").  And because CDCR could not enforce a

6   policy that places a cisgender woman in a men's facility, it cannot enforce a policy that places all

7   transgender women in men's facilities.

8       ***Eighth Amendment.***  In recognition of the intense danger that incarcerated transgender

9   people face, many courts have acknowledged that prison officials who fail to protect them from

10  harm by housing them according to their genitalia or sex assigned at birth may violate the Eighth

11  Amendment, including a court in this District in a case against Defendants themselves.  *See, e.g.*,

12  *Farmer*, 511 U.S. 825; *McQueen v. Brown*, No. 2:15-cv-2544 JAM AC P, 2018 WL 1875631

13  (E.D. Cal. Apr. 19, 2018), *report and recommendation adopted,* 2018 WL 2441713 (E.D. Cal.

14  May 31, 2018); *Tay*, 457 F. Supp. 3d at 662; *Zollicoffer v. Livingston*, 169 F. Supp. 3d 687 (S.D.

15  Tex. 2016); *see also Schwenk*, 204 F.3d 1187.  The U.S. Department of Justice has also

16  concluded that "[p]rison officials violate the Constitution by ... categorically refusing to assign

17  transgender prisoners to housing that corresponds to their gender identity even if an

18  individualized risk assessment indicates that doing so is necessary to mitigate a substantial risk of

19  serious harm [.]"[5]

20      To make such a claim under the Eighth Amendment requires showing that "prison

21  officials knew of and disregarded a substantial risk of serious harm to the plaintiff."  *Olive v.*

22  *Harrington*, No. 1:15-cv-01276, 2016 WL 4899177, at *5 (E.D. Cal. Sept. 14, 2016); *see also*

23  *Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998) ("a prison official may be held liable if he

24  acted with 'deliberate indifference' to a substantial risk of serious harm").

25      The first prong of the test, the "objective" component, asks whether the condition is

26  sufficiently serious—sexual abuse, to which incarcerated transgender people are

27

28  [5] Statement of Interest of the United States, *Diamond v. Ward*, 5:20-cv-00453, at *9 (M.D. Ga. Apr. 22, 2021) (Doc. No. 65).

POINTS & AUTHORITIES ISO
MOTION TO DISMISS
CASE NO. 1:21-CV-01657-JLT-HBK

disproportionately subject, is sufficient.  *Farmer*, 511 U.S. at 833–34.  So, too, is "unsolicited sexual touching, harassment, and coercion," which transgender women in men's facilities also experience at disproportionate rates.  *Thomas v. District of Columbia*, 887 F. Supp. 1, 4 (D.D.C. 1995).  The Proposed Intervenors' stories demonstrate each of these harms, and as the California legislature recognized when passing SB 132, incarcerated transgender people face them at far higher rates than their cisgender counterparts.  *See* Dkt. No. 19-3–19-6.

The second prong, the "subjective" component, can be established by showing that the plaintiff belongs to "an identifiable group of prisoners who are frequently singled out for violent attack by other inmates," which transgender people undoubtedly are, or by showing that prison officials "had been exposed to information concerning the risk," which CDCR could not possibly deny after receiving a transfer request.  *Farmer*, 511 U.S. at 842–43 (citations omitted).  CDCR therefore could not foreclose pending transfer requests and send transgender women back to men's facilities without violating the Eighth Amendment.  *See Becker v. Sherman*, No. 1:16–cv–0828, 2017 WL 6316836, at *5 (E.D. Cal. Dec. 11, 2017) (holding that a sudden change to incarcerated transgender woman's protective housing status was sufficient to state a failure to protect claim), *report and recommendation adopted*, 2018 WL 623617 (E.D. Cal. Jan. 30, 2018); *Tay*, 457 F. Supp. 3d at 685 ("Given Plaintiff's history of sexual harassment, assaults, and rapes while incarcerated in the men's division of IDOC, keeping her there may be tantamount to confining her in a cell with a cobra."); *Stover v. Corr. Corp. of Am.*, No. 1:12–cv–00393, 2015 WL 874288, at *9 (D. Idaho Feb. 27, 2015) (housing a transgender woman with male prisoners created "such an obvious risk of sexual assault that the policy amounts to deliberate indifference").

**PREA.**  The relief that Plaintiffs request would also violate PREA's requirement that a prison, "[i]n deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates," consider "whether a placement would ensure the inmate's health and safety" and give that person's "own views with respect to his or her own safety ... serious consideration." 28 C.F.R. § 115.42(c), (e).  PREA also requires that an incarcerated transgender person's housing placement and programming assignments "be reassessed at least twice each year to review any

1    threats to safety." *Id*. § 115.42(d).  Permanently enjoining Defendants from enforcing SB 132—

2    and thus from complying with its requirements that transgender people "[h]ave their perception of

3    health and safety given serious consideration" and that "their housing and placement shall be

4    reassessed" with any new safety concerns—would be ineffectual because PREA would require

5    essentially the same conduct.  Cal. Penal Code § 2606.

6        Thus, the relief that Plaintiffs seek would not remedy any injury that they have alleged

7    because it would not permit CDCR to remove all transgender women from women's facilities nor

8    foreclose the possibility of future transfers.  Defendants' obligations under the Constitution to

9    house transgender people free of a substantial risk of serious harm and discriminatory treatment,

10   as well as their obligations under PREA, would prevent them from simply reverting back to the

11   status quo that predated SB 132 even if the specific statute were enjoined.  *See, e.g.*, *Norsworthy*,

12   87 F. Supp. 3d 1104; *Tay*, 457 F. Supp. 3d 657; *Doe*, 2018 WL 2994403; *Hampton*, 2018 WL

13   5830730.

14   **V.      CONCLUSION**

15       Plaintiffs' complaint must be dismissed because in addition to the defects identified by

16   Defendants in their Motion to Dismiss, Dkt. No. 15, Plaintiffs' Eighth Amendment and equal

17   protection claims rest entirely on the implausible theory that having to exist in the same facility as

18   transgender women and nonbinary and intersex people is an injury rising to the level of a

19   constitutional violation.  Plaintiffs have failed to identify deliberate indifference to a substantial

20   risk of serious harm apart from the bigoted and baseless assertions that transgender women are

21   more likely than other women to commit assault, or that their mere presence imposes

22   psychological terror on cisgender women.  Neither have Plaintiffs identified any coherent equal

23   protection theory, nor explained how SB 132 is not substantially related to an important

24   government interest.  Finally, Plaintiffs lack standing because the relief that they ask this Court to

25   grant—declaratory and injunctive relief against SB 132 in all its applications—would not permit

26   CDCR to inflict enormous constitutional injury on the rights of incarcerated transgender people

27   across California and thus would not remedy their alleged injury.  Proposed Intervenors

28   respectfully request that the Court grant Defendants' motion and dismiss Plaintiffs' complaint.

1    Dated:  May 16, 2022                      Respectfully Submitted,

2

3                                              By:     s/ *Nora Huppert*
                                               NORA HUPPERT
4                                              RICHARD SAENZ
                                               CHRISTINA S. PAEK
5                                              **LAMBDA LEGAL**

6
                                               DIMITRI D. PORTNOI
7                                              MICHAEL J. SIMEONE
                                               ELIZABETH A. ARIAS
8                                              SHIVANI I. MORRISON
                                               **O'MELVENY & MYERS LLP**
9
                                               SHAWN MEERKAMPER
10                                             **TRANSGENDER LAW CENTER**

11                                             AMANDA C. GOAD
                                               **ACLU FOUNDATION OF SOUTHERN**
12                                             **CALIFORNIA**

13                                             SHILPI AGARWAL
                                               **ACLU FOUNDATION OF NORTHERN**
14                                             **CALIFORNIA**

15                                             *Counsel for Proposed Intervenors*

16

17

18

19

20

21

22

23

24

25

26

27

28

POINTS & AUTHORITIES ISO
MOTION TO DISMISS
CASE NO. 1:21-CV-01657-JLT-HBK