CANDICE JACKSON (SBN 224648)
**FREEMAN MATHIS & GARY, LLP**
1010 B Street, Suite 300
San Rafael, California 94901
Telephone: (415) 352-6434
cjackson@fmglaw.com

LAUREN ADAMS (*Pro Hac Vice*)
**WOMEN'S LIBERATION FRONT**
1802 Vernon St. NW, #2036
Washington, DC 20009
Telephone: (202) 964-1127
legal@womensliberationfront.org

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA (FRESNO DIVISION)

| | |
|---|---|
| JANINE CHANDLER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CALIFORNIA DEP'T OF CORRECTIONS AND REHABILITATION, et al., <br><br> Defendants. | Case No. 1:21-cv-01657-JLT-HBK <br><br> **DECLARATION OF TOMIEKIA JOHNSON IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS** |

The declaration of Tomiekia Johnson follows:

///

///

///

I, Tomiekia Johnson, hereby declare:
1. I make this declaration based on my own personal knowledge, and if called to testify, I could and would do so as follows:
2. I ama Plaintiff in this lawsuit. I am a 43-year-old woman currently incarcerated in Central California Women's Facility. I am the mother of a 14-year-old daughter.
3. I have filed a number of grievances, true and correct copies of which are attached to the Defendants' Motion to Dismiss. In these grievances, I made a number of complaints and claims, including descriptions of social and cultural changes that have been imported into the women's prison since SB 132 was implemented, changes to security protocols that limit what little freedom the women have in prison, incidents of retaliation against me by staff and other inmates for my advocacy, and the effects on my physical and mental health from dealing with all of this.
4. I am very offended at being treated by the Proposed Intervenors and their counsel as if I am some sort of bigot. I have trans friends and we have no problems. I don't want the biological females who identify as trans or nonbinary to be transferred to men's prisons, and nobody on this case is asking for that. It is not bigoted to ask for sex-separated facilities when I am changing, showering, sleeping, and using the toilet. We have a right to insist on accommodations that give some privacy and dignity.
5. I have been retaliated against for standing up for women in here. I have been put in ad seg in an attempt to "keep me safe," and the prison tossed my property including paperwork I had that corroborated my claims, such as 602s that were not attached to the Motion to Dismiss. They did this to get me to shut up, and they also did this because one of the men (M.C.H.) under SB 132 was trying to intimidate me and other witnesses to his behavior.
6. M.C.H. is gigantic, tall, physically scary-looking, non-feminine, bizarre, creepy. His hair is a masculine haircut, but wild and unkempt. When I first saw him walking on the main yard, I knew he was a man right away. I thought to myself "that's one of those 132 men." I was appalled. I knew that some men were pretending to be transgender, and since he does not look or act anything like a woman, I assumed he was one of the pretenders.
7. M.C.H. even shoved a transman (biological female) who was helping us gather info for the case. This transman was placed in solitary for "protection" at the same time as me, which made me wonder why they were treated differently when they should have had the same rights and privileges under the law, since they both identify as transgender. It was one of many things that made me conclude that SB 132 is really just for the benefit of males, not for females no matter how they identify. The writers of SB 132 sure knew what a woman was when they made sure that none of the provisions of the law benefited us in any way.
8. This type of "protective custody" doesn't work, is non-conducive to rehabilitation, and serves only as a weapon to women like myself who want to speak out and speak up for ourselves.
9. It is my understanding that because of my work for CDCR as an inmate, that I fall under SB 132's requirements to use so-called "preferred pronouns." Requiring me to call men "she or her" violates my right to use common sense language to describe what I see and to speak freely about the problems I see happening from housing men with women.

10. My gender identity of female is not based on how I feel, it is based on science. Since humans cannot change sex, in my beliefs it is impossible to actually "be" a woman if you were born male, because by definition a person born male grows up to be a man. And it should go without saying, but since apparently I have to say it: Women don't have penises.
11. On Friday, May 20, 2022 an older black lady ran into my room and told me that a woman "was raped on the yard by one of the men" the night before. She was very upset and said that the rapist (J.R.) gave the victim drugs, took her into the port-a-potty, and raped her. I subsequently learned from another witness who was very upset, that the victim was anally penetrated, and that another man (M.C.), also transferred under SB 132, acted as "look-out" while J.R. raped the victim. To my knowledge, the person in charge during that incident (Sgt. Vang) refused to even leave his office once he heard there had been a sexual assault, and took no steps to help the victim. Emergency medical help had to be called for the victim due to the drugs. The rapist remained in the general population until the next day, after he threatened to also rape other women.
12. The victim and the perpetrators live in different buildings, so they only really had access to her on the yard. This tells me that women don't even need to share cells with men to be at risk of the worst kind of consequences of having to be housed with men.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration was executed on May 27, 2022 at Chowchilla, California.

Tomiekia Johnson