CANDICE JACKSON (SBN 224648)
**FREEMAN MATHIS & GARY, LLP**
1010 B Street, Suite 300
San Rafael, California 94901
Telephone: (415) 352-6434
cjackson@fmglaw.com

LAUREN ADAMS (*Pro Hac Vice*)
**WOMEN'S LIBERATION FRONT**
1802 Vernon St. NW, #2036
Washington, DC 20009
Telephone: (202) 964-1127
legal@womensliberationfront.org

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA (FRESNO DIVISION)

| | |
|---|---|
| JANINE CHANDLER, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>CALIFORNIA DEP'T OF CORRECTIONS AND REHABILITATION, et al.,<br><br>　　　　Defendants. | Case No. 1:21-cv-01657-JLT-HBK<br><br>**DECLARATION OF SAGAL SADIQ IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS** |

The declaration of Sagal Sadiq follows:

///

///

///

I, Sagal Sadiq, hereby declare:

1. I make this declaration based on my own personal knowledge. I am over the age of 18 and competent to testify. If called to testify, I could and would do so as follows:

2. I am a 51-year-old Muslim transgender man currently incarcerated in CCWF. As a biological female, I have been housed in women's facilities during my entire incarceration. As a transgender man, I am supposed to be entitled to the protections given under SB 132. However, that is not what I have experienced and observed in the time since this law has been implemented; instead, the law is only used for the benefit of biological males who are transgender or nonbinary, many of whom have done nothing since arriving at CCWF but engage in predatory behavior toward the women here.

3. The climate here has changed since these SB 132 transfers started arriving. I have been at CCWF since 2017, and during that time women have coexisted with transgender men (who are biological females) and with the very small number of fully assimilated trans women (who are biological males).

4. Under SB 132, these "trans-predators" as I call them, are just here to try to have sex with women. There are women who live here who I consider sisters, who are young and impressionable and have their own histories of sexual traumas. This has become an environment where they can no longer work on rehabilitating themselves, because they are in a constant state of hypervigilance. The threat looms daily and you never know who is next. Even if it is true that they are at risk of violence in the men's prison, this is just trading one victim set for another one.

5. I observed one of the SB 132 transfers peep on a woman in the bathroom multiple times. The first time I thought it was happenstance, but the second time I knew it couldn't be an accident. Both times it was the same woman using the toilet, both times the "occupied" sign was clearly visible. My suspicions were confirmed because with both incidents, he did not get up to use the bathroom after she had exited. When she confronted him, he did not react how a person would normally act if it had been an accident. The perpetrator was about 6'3" and of Native American descent, with facial tattoos, shoulder length hair, medium build. He was very "male-looking."

6. Even though it was happening to this woman and not to me, watching somebody be preyed upon was a trigger, and I submitted a 602 to the housing staff. The officer asked me why I was documenting it and I said this behavior was inappropriate and I believed that it was going to escalate, but it needed to stop.

7. Sometime after this, the predator I reported decided to retaliate against me. We were in the kitchen and he "shoulder-checked" me, which means when he walked by me he hit me with his shoulder super hard in the kitchen in an effort to bully me and dissuade me from carrying on with the 602 grievance I had filed. I told the captain about it, and asked him to check the cameras in the area where it happened, but he claimed that based on the angle he could not discern what happened other than us walking by each other. I was not shown the video but in my opinion it is not possible that the interaction (and physical contact) was not caught on camera, if we were visible. This is because my entire body jerked after he shoved me, and I was turned around. This would have been caught on camera.

8. Shortly after this incident, I was put along with the victim of the peeping and Plaintiff Tomiekia Johnson to administrative segregation (solitary). We were taken, thoroughly frisked, and put in a cage. I felt I was being kidnapped, and the staff laughed at me when I said that. I said "I haven't done anything wrong." and a staff member responded with "Yeah." They claimed that it was for our protection, but if they really wanted to protect us they would address the predatory behavior of this man, not lock up the whistleblowers.

9. I believe this was done to punish us for speaking up about it, and in particular for putting it down on paper and forcing CCWF to answer to it. One of the reasons I believe this - instead of believing it was for our safety - is because under SB 132, I should have the right as any transgender inmate to have a person removed from my area if I do not feel safe with them - a right that the SB 132 transfers exercise freely with the cooperation of prison staff. Instead, I am the one who was taken away along with others who dared to speak up. And word travels fast. Women are already reluctant and scared to speak up, partly because they don't trust that the prison will protect them. Knowing that they will not only be unprotected, but also actively punished for reporting, is an effective way for the prison to reduce complaints that they don't want to deal with.

10. In ad seg, I learned that they were not planning to send me back to my own yard, but instead move me to another yard. That was absolutely unfair and unacceptable to me. I wanted my life back - the same yard, my same job. I wanted an actual investigation into my reports. So I went on a hunger strike and I did not eat for 28 days. I ended up in the hospital and then in a skilled nursing facility. I did not know how long they were going to let me starve, but in the end I am back on my yard with my job back. However, the women I was taken away with are not so lucky, and have not been returned to their

rightful spot. In addition, the staff destroyed some of the paperwork and documentation that we had gathered.

11. The administration is doing nothing meaningful to protect women from being preyed upon. They play musical beds with the inmates, just moving them from yard to yard with a new set of victims. They even put them in 508, which houses the developmentally disabled inmates. Why would you put a sex offender - who has the means and the motive to rape - in with these defenseless women?

12. These men misbehave with impunity. They wear tight pants clearly showing their genitals (which is against the rules), but women get written up for having panty lines or a bra strap going, and will be sent to go change their clothes.

13. Despite being eligible to request a transfer to a men's facility, I have not done so because I don't want to be assaulted, beaten, or raped. When SB 132 was first implemented, I was offered a chance to go and I declined. I would have been able to have a room to myself, but even with that, I wouldn't go because I do not believe I would be safe. From what I know, other trans men were offered a chance to transfer as well, and needless to say nobody took them up on it.

14. It is my belief that all of this is happening because the patriarchy protects itself. If a man wants to be a woman, then he is entitled to be whatever he wants to be because he is a man and the patriarchy will protect him. But a trans man is a biological woman, and therefore the patriarchy wants to keep them exactly where they belong, in a marginalized category. The patriarchy is protecting itself and it's working out super well for them, and it's horrifying. This absolutely cannot continue.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration was executed on May 27th, 2022 at Chowchilla, California.

Sagal Sadiq