CANDICE JACKSON (SBN 224648)
**FREEMAN MATHIS & GARY, LLP**
1010 B Street, Suite 300
San Rafael, California 94901
Telephone: (415) 352-6434
cjackson@fmglaw.com

LAUREN ADAMS (*Pro Hac Vice*)
**WOMEN'S LIBERATION FRONT**
1802 Vernon St. NW, #2036
Washington, DC 20009
Telephone: (202) 964-1127
legal@womensliberationfront.org

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA (FRESNO DIVISION)

| | |
|---|---|
| JANINE CHANDLER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEP'T OF CORRECTIONS AND REHABILITATION, et al.,<br><br>Defendants. | Case No. 1:21-cv-01657-JLT-HBK<br><br>**DECLARATION OF AYANNA GREEN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS** |

I, Ayanna Green, hereby declare:

1. I make this declaration based on my own personal knowledge. I am over the age of 18 and competent to testify. If called to testify, I could and would do so as follows:

2. I am a 44 year old woman, female at birth, a lesbian, and a mother. From 1997 to 2022, I was incarcerated in California women's prison (CCWF) after a murder conviction when I defended myself at age 19 from three men who jumped me for being out as a lesbian. I was paroled and released on May 17, 2022.

3. In more than two decades of incarceration in women's prison I have lived peaceably with several post-op transwomen – people born male who socially and medically transitioned to become women, with vaginas – and have found them to be beautiful human beings who, like myself and the other women in prison, want to rehabilitate and heal and re-enter society. I have also lived in harmony with several transmen – people born female who socially and medically transition to become men. In my experience, neither post-op transwomen, nor transmen, are threats to incarcerated women or cause problems for women living and rehabilitating together in a women's prison.

4. Over my years in prison, I became a peer facilitator and counselor, active in a peer health educator group and as a facilitator in Emotions Anonymous, and (at least prior to COVID which halted most visitations among different units) would often be called upon by staff to visit women in my own and other yards to counsel and help them work through trauma and healing from abuse.

5. From my training and experience I know that rape and abuse victims often blame themselves, and feel shame for their victimization, which may even stop them from wanting to admit or report what has happened to them. When they are ready to do that, they need and deserve a safe, supportive environment to share vulnerably about what happened to the and to talk especially with other women who understand how they feel and have been through similar experiences, how to heal and recover.

6. The post-op transwomen I have been incarcerated with had all transferred to women's prison before SB 132 took effect. To my knowledge not a single post-op transwoman has transferred to CCWF after or because of SB 132. Instead, that law has been a giant loophole to be abused by cross-dressing men who now get transferred into women's

prison. This abuse is happening both because of how SB 132 was written and how it is working in implementation.

7. Most of the cross-dressing men claiming a "transgender identity" and granted transfer (or still awaiting transfer) under SB 132 are sex offenders, most are heterosexual men who want to be housed with women with vaginas to get penis-in-vagina sex, most stop taking any feminizing hormone medications right after getting into women's prison, they all refer to themselves as men when speaking to the women inmates, many have threatened to "fight you like a man" to women inmates, some have threatened to rape us, and they all have working penises that they are using to have sex with female inmates.

8. Nearly all of these cross-dressing men transferred to CCWF under SB 132 are placed in general population, in the 8-person cells that exist at CCWF. We women inmates were told by prison staff when these men began being transferred into our institution that if we felt unsafe or feared having to share a cell with one or more of these men, our only option was to be removed from our living quarters and taken to "jail" (administrative segregation); we had no right to ask not to be housed with any of of these men.

9. In my 25 years of being incarcerated I have never met a female inmate who was not the victim of physical or sexual abuse by men while on the outside. Women in prison have been battered, raped, trafficked, and prostituted by men, and this abuse is often directly related to the crimes women commit that land them in prison. In prison, women need and deserve the opportunity to heal, improve ourselves, and rehabilitate to return into society, rejoin our children and our families.

10. Forcing women (including post-op transwomen) to be housed with cross-dressing men who say "I'm a transgender woman" but they make no efforts and take no steps to transition to be a woman stops women from working on healing and improving their lives

- 3 -

DECLARATION OF AYANNA GREEN
1:21-CV-01657-JLT-HBK

because it is impossible for women to get vulnerable and work through their past trauma and abuse issues when they are now constantly in reasonable fear of being physically or sexually attacked by aggressive criminal men who have working penises and use them in prison.

11. Forcing women (including post-op transwomen) to live in prison with male inmates who are not feminine, not even trying to fit in with women, and who have working penises they use to have sex and threaten women, violates the right of all women inmates to be kept safe from sexual harassment and sexual assault, as well as physical assault and violence, in prison.

12. A small number of women in prison are glad to see these men arrive because such women have missed having heterosexual sex and attention from men, and these transferred men take advantage of these vulnerable women by making them their "girlfriends" and having sex with them, risking disease and pregnancy to these women. While consensual sex between any inmates is against prison rules, I noticed that consensual sex between female inmates was disciplined severely by prison staff, while staff turned their backs on knowing of the consensual sex happening between the transferred men and women.

13. Most women in prison, though, live in constant fear that these men, who work together in groups or packs, can beat or rape them at any time, maybe when we return to our cell after working at our prison job, or when we go to the shower, or when we are outside on the yard. SB 132 has not been about equality for real transwomen, but all about letting cross-dressing men have access to vulnerable women at the expense of women's mental, emotional, and physical health and safety.

14. One prison officer told me that two women were suddenly, in the middle of the night, transferred to CIW as a "medical transfer" to keep it quiet that these women had gotten

pregnant by two of these SB 132-transferred men. I do not know what has happened to these women.

15. At least one woman inmate told me that prison staff told her to "go to R&R to get some condoms," which seemed to me to accept and encourage heterosexual sex in prison, not caring at all about the risk that it is very difficult even to know whether these men having sex with the women are truly obtaining consent, or threatening or coercing them in some way to have sex, and even with consensual sex pregnancy in prison puts a great physical and emotional burden onto women.

16. The vast majority of women in prison now live in a state of fear, defensiveness, and "flight or fight" mentality – and since women in prison cannot "flight," their options are to accept being threatened with male violence and intimidation (that re-traumatizes them based on their suffering of abuse from men outside prison), or try to be prepared to defend themselves and fight back if attacked by these men.

17. Based on my experiences, I have yet to see a woman in a domestic violence dispute who even when she fights back, sends the man to the hospital with broken bones or permanent life-threatening injuries. When men fight, you can hear bones break. Even when women do get into altercations with each other the level of violence and physical damage does not even compare to what is inflicted by a man.

18. Leaving women to live in prison this way is disrupting the goal of rehabilitation; instead of women ready to re-enter society healed and better, SB 132 is making women hurt and bitter. Women cannot work on rehabilitating ourselves while living with these cross-dressing men who actively use their penises and there is nowhere to escape from them.

19. Everyone convicted of a crime has to do our time, but none of us should have to serve our time thrown into a cell with a working penis that can rape us. While male guards and

officers work in women's prisons, that never made me feel like I could get raped or seriously hurt or beat up at any moment, but being locked in a cell with a male criminal who could rape me all night long with no repercussions is truly cruel.

20. I was released from prison on May 17, 2022, but I talk regularly with my friends still incarcerated. I have been told that just last week a woman inmate was drugged and then sexually assaulted in a port-a-potty in CCWF by one "transgender woman" inmate while another male inmate stood guard outside the port-a-potty. I do not want to disclose the victim's name but will call her "A."

21. I know this alleged victim, and I know that after a pre-prison life of being prostituted and abused by men, she prided herself on not being in a sexual or romantic relationship with anyone for over a year; A. was focusing on cleaning up her life and working through her traumas, to get out of prison and be a mother to her child. The male inmate who allegedly assaulted her (he is an SB 132 transfer) then threatened a bunch of women who confronted him, by threatening to beat and rape them all.

22. This is just the latest incident that justifies the fears of women living with cross-dressing men in women's prison. While incarcerated, I was once told by a woman officer for the prison words to the effect, "I feel like they're waiting for something really bad to happen to you all, so they can finally make some changes." From what I observed and in conversation with multiple women officers, they don't feel safe around these men either, or feel they are able to control that kind of male violence and aggression.

23. I have four transmen friends in CCWF, who were born female but identify as men and have committed to social and medical transition. They take testosterone hormones, they have had mastectomy, and they have asked for genital surgery but CDCR has not provided the surgeries to them. They are dedicated to transition though, and several of them have

applied to transfer to men's prison because they see themselves as men and want to be treated as men.

24. Even though SB 132 gives these transmen the right to request transfer, CDCR has not approved a single transman's request, even after at least one of them filed a grievance (form 602) for CDCR's refusal to grant the request. By contrast, the men who come from men's prison stop taking hormones and don't even want genital surgery because they want their penis to work. This shows how one-sided SB 132 really is, that having a "transgender identity" has only resulted in transfer for men who claim (but do nothing to transition) to be "transgender women" but never for female-born transmen who have fully committed to transition.

25. If any of these men put into women's prison under SB 132 are actually unsafe in men's prisons, there are over 30 prisons in California, and I do not understand why the solution wouldn't be to put these men in their own prison instead of into the two women's prisons. It is unacceptable for the State to promote rape, violence, and aggression against women (including post-op transwomen) who are serving their time to rehabilitate and work on making ourselves better, from men abusing a loophole law to get access to vaginas for sex and abuse.

26. SB 132 is not creating equality, it is creating division and hostility, and it should be overturned. Letting cross-dressing men come into women's prison and intimidate, threaten, and assault women is harmful to all women and particularly disrespectful to post-op transwomen.

///
///
///

27. The law should allow CDCR to approve inmate requests to transfer to men's or women's prisons only on a case by case basis looking at whether someone has committed to transitioning to the opposite gender.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES THAT THE FOREGOING IS TRUE AND CORRECT.

SIGNED IN SAN FRANCISCO, CALIFORNIA ON MAY 26, 2022.

_____
Ayanna Green