SHAWN MEERKAMPER (SBN 296964)
shawn@transgenderlawcenter.org
**TRANSGENDER LAW CENTER**
P.O. Box 70976
Oakland, California 94612
Telephone:   (510) 587-9696

AMANDA C. GOAD (SBN 297131)
agoad@aclusocal.org
**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**
1313 W. 8th Street, Suite 200
Los Angeles, California 90017
Telephone:   (213) 977-9500

CHRISTINA S. PAEK (SBN 341994)
cpaek@lambdalegal.org
**LAMBDA LEGAL**
4221 Wilshire Boulevard, Suite 280
Los Angeles, California 90010
Telephone:   (213) 382-7600

NORA HUPPERT (SBN 330552)
nhuppert@lambdalegal.org
**LAMBDA LEGAL**
65 E. Wacker Place, Suite 2000
Chicago, Illinois 60601
Telephone:   (312) 663-4413

RICHARD SAENZ (*pro hac vice* forthcoming)
rsaenz@lambdalegal.org
**LAMBDA LEGAL**
120 Wall Street, 19th Floor
New York, New York 10005
Telephone:   (212) 809-8585

DIMITRI D. PORTNOI (SBN 282871)
dportnoi@omm.com
MICHAEL J. SIMEONE (SBN 326844)
msimeone@omm.com
ELIZABETH A. ARIAS (SBN 318283)
earias@omm.com
SHIVANI I. MORRISON (SBN 342874)
smorrison@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone:   (213) 430-6000

SHILPI AGARWAL (SBN 270749)
sagarwal@aclunc.org
**ACLU FOUNDATION OF NORTHERN CALIFORNIA**
39 Drumm Street
San Francisco, California 94111
Telephone: (415) 621-2493

*Attorneys for Proposed Intervenors*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| JANINE CHANDLER, et al.,<br><br>                    Plaintiffs,<br><br>     v.<br><br>CALIFORNIA DEP'T OF CORRECTIONS AND REHABILITATION, et al.,<br><br>                    Defendants. | Case No. 1:21-cv-01657-JLT-HBK<br><br>**PROPOSED INTERVENORS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>Judge:        Hon. Jennifer L. Thurston<br>Courtroom:   4, 7th Floor |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 1

    A. Plaintiffs' Declarations Are Improper, Inadmissible, and Ineffective. .................... 1

    B. Plaintiffs Offer No Legal Analysis to Rebut Proposed Intervenors' Arguments ................................................................................................................ 3

        1. Equal Protection ........................................................................................... 4

        2. The Eighth Amendment .............................................................................. 6

        3. Standing ....................................................................................................... 7

III. CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Anonymous v. Weiner*,
  50 Misc. 2d 380 (N.Y. Sup. Ct., N.Y. Cnty., 1966)..................................................................4

*Barrows v. Jackson*,
  346 U.S. 249 (1953)...............................................................................................................10

*Bemis v. Edwards*,
  45 F.3d 1369 (9th Cir. 1995)....................................................................................................3

*Blaisdell v. Frappiea*,
  729 F.3d 1237 (9th Cir. 2013)..................................................................................................4

*Borowski v. DePuy, a Div. of Boehringer Mannheim Co.*,
  850 F.2d 297 (7th Cir. 1988)....................................................................................................4

*Bostock v. Clayton Cnty.*,
  140 S. Ct. 1731 (2020).............................................................................................................6

*Diamond v. Owens*,
  131 F. Supp. 3d 1346 (M.D. Ga. 2015) ...................................................................................9

*Farmer v. Brennan*,
  511 U.S. 825 (1994).............................................................................................................6, 7

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010)...................................................................................................................2

*Hyseni v. Penske Logistics LLC*,
  No. CV-19-05671-PHX-DWL, 2021 WL 3371530 (D. Ariz. Aug. 3, 2021) ...........................4

*In re Mortg. Elec. Registration Sys., Inc.*,
  754 F.3d 772 (9th Cir. 2014)..................................................................................................10

*Karnoski v. Trump*,
  926 F.3d 1180 (9th Cir. 2019)..................................................................................................6

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014)..................................................................................................2

*Norsworthy v. Beard*,
  87 F. Supp. 3d 1164 (N.D. Cal.), *appeal dismissed and remanded*, 802 F.3d
  1090 (9th Cir. 2015).................................................................................................................8

*Parents for Priv. v. Barr*,
  949 F.3d 1210 (9th Cir.), *cert. denied*, 141 S. Ct. 894 (2020) .................................................5

*Simon v. E. Ky. Welfare Rts. Org.*,
  426 U.S. 26 (1976)...................................................................................................................7

*Soberal-Perez v. Heckler*,
  717 F.2d 36 (2d Cir. 1983).....................................................................................................10

# TABLE OF AUTHORITIES
## (continued)

Page

*State v. Brown*,
    836 S.W.2d 530 (Tenn. 1992) .................................................................................... 2

*Taking Offense v. State*,
    66 Cal. App. 5th 696, *review granted on other grounds*, 286 Cal. Rptr. 3d 248
    (Mem) (2021) .............................................................................................................. 5

*United States v. Freeman*,
    498 F.3d 893 (9th Cir. 2007) ...................................................................................... 2

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
    529 U.S. 765 (2000) ................................................................................................... 7

**STATUTES**

Cal. Penal Code § 2606 .................................................................................................... 5, 9

**OTHER AUTHORITIES**

2020 Cal. Legis. Serv. ch. 182, § 2(a) .................................................................................. 6

Andrew R. Flores et al., The Williams Inst., *How Many Adults Identify as
    Transgender in the United States?* (2016) ................................................................. 9

*Cisgender*, Oxford English Dictionary ............................................................................... 4

*Fact Check*, TransAdvocate ................................................................................................. 6

Senate Bill No. 132, Transgender Respect, Agency, and Dignity Act (Jan. 1, 2021) ....... 4

**RULES**

Fed. R. Civ. P. 26(a)(2)(B) .................................................................................................. 2

Fed. R. Evid. 701 ................................................................................................................. 2

Fed. R. Evid. 701 advisory committee's note (2000 amendments) .................................... 2

## I. INTRODUCTION

Citing to a mere *seven* cases across the twenty-five pages of their Opposition brief, Plaintiffs have offered essentially no basis in law to rebut Proposed Intervenors' arguments that their Complaint states no Equal Protection or Eighth Amendment claim, and that none of their claims are redressable. In place of any legal support, Plaintiffs offer two things. First, a free-flowing screed against the "neologism[s]" and "poetic language" of a "New Age-ish spirituality" akin to "mysteries and paradox" that is the radical concept that transgender and nonbinary people exist and are worthy of dignity and protection. Dkt. No. 36 at 2, 19. Second, to support their unmoored prose: not one, not two, but *twelve* declarations, none of which reinforce their jurisdictional allegations, and virtually *all* of which are inadmissible. Plaintiffs utilize this new factual material not to bolster this Court's jurisdiction to hear their factually attacked claim, but in a vain and improper attempt to (1) reinforce their *other* claims, (2) bolster their standing arguments in general, (3) smuggle in undisclosed expert declarations not based on personal knowledge, and (4) worst of all, exploit this litigation to propagate a baseless claim of sexual assault on an anonymous third party, which their declarants freely admit is nothing more than a rumor based on anonymous hearsay.

This effort is as astonishing as it is futile. Even if this evidence were not fatally flawed in all of the ways described below, Plaintiffs would *still* be left unable to state legally valid claims and without Article III standing. Not one of their declarations or new conclusory arguments addresses any of the critical flaws in their constitutional claims identified by Proposed Intervenors in their Memorandum, Dkt. No. 32. And Plaintiffs' effort to elevate thinly veiled gossip to the level of an "allegation"—an ambitious label for what the declarations themselves reveal to be anonymous third-party rumors of harm against yet another anonymous third party—do nothing to improve their arguments for standing. This Court should dismiss their claims.

## II. ARGUMENT

### A. Plaintiffs' Declarations Are Improper, Inadmissible, and Ineffective.

In their Motion, Defendants raised a very narrow "factual attack" against Plaintiffs' free expression claim. Dkt. No. 15 at 8. When a defendant raises a factual attack, the plaintiff "must

support her jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgment context." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010)) (citation omitted). Rather than offer such competent proof, Plaintiffs here have provided twelve declarations which do nothing to dispute Defendant's "factual attack," and nearly all of which are inadmissible.[1]

Two of these declarations are made by scholars not disclosed under Rule 26 nor qualified as experts, and who clearly do not offer testimony "rationally based on the perception of the witness." *United States v. Freeman*, 498 F.3d 893, 902 (9th Cir. 2007) (quoting Fed. R. Evid. 701); *see also* Fed. R. Civ. P. 26(a)(2)(B). One declarant writes that he speaks "based on [his] personal knowledge," and then goes on to make grand pronouncements about the "factual, objective meaning" of words, the purportedly "fixed and immutable nature of being either male or female," and vast generalizations about sexual difference, supported by "[s]tudies." Wright Decl., Dkt. No. 36-4 ¶¶ 1–16. The other declarant also claims to speak "based on [her] personal knowledge," and then proceeds to base almost every factual claim on articles and studies authored by others. Burt Decl., Dkt. No. 36-5, *passim.* Neither offers permissible lay testimony, which "'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" Fed. R. Evid. 701 advisory committee's note (2000 amendments) (quoting *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992)).

Three of the remaining ten declarations are essentially an effort to plead a new allegation of harm, to an anonymous third party not involved in the litigation, that allegedly occurred inside a CDCR women's facility. In purporting to identify a transgender woman as the assailant in what they refer to as an "Alleged Rape," Plaintiffs quote from the declarations as though they are recounting facts laid out by the declarants themselves. But even the most surface-level examination of the declarations reveals an attempt to elevate to the level of an "allegation" what the declarations show to be nothing more than thinly veiled rumors originating from anonymous

---

[1] Defendants have filed a Motion to Strike these declarations, Dkt. No. 38. Proposed Intervenors agree that all should be struck for the reasons explained by Proposed Intervenors here and by Defendants in their filing.

third parties—who themselves heard it from additional anonymous third parties—about an allegation of harm against yet another anonymous third party.

The first declarant states that "an older black lady ran into my room and *told me*" that an assault had happened the night before. Johnson Decl., Dkt. No. 36-3 ¶ 11 (emphasis added). No identification of the supposed assailant happens in this initial bout of hearsay, except that—confoundingly—the declarant places her initials inside the story ("[the anonymous third party] said that the rapist (A.B.)[2] . . . "). *Id.* The second declarant states that she "went to the yard and *was told by multiple [anonymous] inmates* that [someone] was raped by A.B." the day before. Le Decl., Dkt. No. 36-7 ¶ 5 (emphasis added). The whisper campaign only gets worse from there. A third declaration, which Plaintiffs claim "corroborated" these rumors, is made by a declarant who *was not even in the facility* at the time that the incident allegedly occurred, but who "talk[s] regularly with [her] friends still incarcerated" and claims to "*have been told* [] just last week" of the incident which she attributes to a transgender woman who she does not name. Green Decl., Dkt. No. 36-8 ¶ 20 (emphasis added). And the source of the alleged threats which Plaintiffs refer to, Dkt. No. 36 at 6, as "confirmed"? One declarant heard about it from someone else—that's it. Le Decl. ¶¶ 5–7.

Plaintiffs attempt to recycle rumors and innuendo into this litigation by relying entirely on the statements of anonymous third parties,[3] offered for the truth of the matter asserted, and without any apparent personal knowledge of the anonymous declarants themselves. This is not only shocking and improper at the Motion to Dismiss stage; it is also inadmissible. *See Bemis v. Edwards*, 45 F.3d 1369, 1373 (9th Cir. 1995) (excluding a written hearsay statement and noting that, even if an exception applies, "the declarant must also have personal knowledge").

### B.   Plaintiffs Offer No Legal Analysis to Rebut Proposed Intervenors' Arguments

Plaintiffs utilize their remaining declarations as a slapdash substitute for legal support or analysis in defense of their claims, which they opt not to provide, save for seven case citations. In

---

[2] Initials changed from the original declaration for anonymity.

[3] Plaintiffs also include a declarant who claims to have seen the alleged victim intoxicated and unresponsive. But the declarant ascribes a *cause* to that medical emergency only through further hearsay, which she heard the next day. Le Decl. ¶¶ 3–5.

1  submitting these declarations, Plaintiffs do not even attempt to address the arguments in Proposed

2  Intervenors' Memorandum directly.  Even if these declarations were properly offered for

3  jurisdictional purposes, were relevant, and were not inadmissible, Plaintiffs would *still* be left

4  unable to state a claim, and without standing.

### 1.  Equal Protection

As courts across the country have held, "it is not a violation of equal protection to house some transgender people assigned male at birth in women's facilities." Dkt. No. 32 at 5 (discussing precedent at length).  Like similar policies, SB 132 grants no "special rights" by simply permitting transgender people "to be housed according to their gender identity." *Id*. Plaintiffs make no attempt to contest either of these arguments, except to say without elaboration that the statute "burden[s] the female sex unilaterally" by housing some transgender women in women's facilities and that "fair alternatives exist." *Id.*  Plaintiffs in this case are not *pro se* litigants—they are represented by sophisticated legal counsel—and so no rule of liberal construction prevents this Court from "hold[ing] missing or inaccurate legal terminology or muddled draftsmanship against them." *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013).  Something more than "the ostrich-like tactic of pretending that potentially dispositive authority against [a party's] contention does not exist" is required of them.  *Hyseni v. Penske Logistics LLC*, No. CV-19-05671-PHX-DWL, 2021 WL 3371530, at *4 (D. Ariz. Aug. 3, 2021) (internal quotations omitted) (quoting *Borowski v. DePuy, a Div. of Boehringer Mannheim Co.*, 850 F.2d 297, 304 (7th Cir. 1988)).

Unable to offer any cogent legal theory to explain how SB 132 could possibly constitute sex discrimination, Plaintiffs instead complain about the use of the word "cisgender"[4] and claim that the word forces Plaintiffs into a conceptualization of gender with which they disagree, in

---

[4] The Oxford English Dictionary defines "cisgender" as "[d]esignating a person whose sense of personal identity and gender corresponds to his or her sex at birth" or, put simply, as "[c]ontrasted with *transgender*." *Cisgender*, Oxford English Dictionary, https://www.oed.com/view/Entry/35015487.  The authors of the OED would surely be surprised to hear that "cisgender" is a "neologism that has no objective or stable meaning," as they have traced its usage back more than a quarter of a century, at least. *Id.*  More importantly, courts have conceptualized the distinctions between people who are transgender and those who are not for at least fifty-six years. *See, e.g.*, *Anonymous v. Weiner*, 50 Misc. 2d 380 (N.Y. Sup. Ct., N.Y. Cnty., 1966).

violation of the Equal Protection Clause. Dkt. 36 at 2, 3. This argument is not only wrong; it also misses the point. As Proposed Intervenors explained, SB 132's provisions apply equally to men's and women's facilities, and they give the Plaintiffs—regardless of their own views about transgender people and gender identity—the exact same protections that they give transgender people: the right to request housing consistent with their gender identity based on their perception of personal safety. *See* Dkt. No. 32 at 6. This is a right which Plaintiffs already enjoy, as demonstrated by their new declarations, in which they identify themselves as women.[5] *See* Chandler Decl., Dkt. No. 36-1 ¶ 2 ("I am a 50-year-old woman."); Romero Decl., Dkt. No. 36-2 ¶ 2 ("I am a 44-year-old Hispanic woman."); Johnson Decl., Dkt. No. 36-3 ¶ 2 ("I am a 43-year-old woman."). If anything, these new declarations only further demonstrate their inability to "show that the right afforded to transgender" people by SB 132 "is any different from the right afforded to non-transgender" people. *Taking Offense v. State*, 66 Cal. App. 5th 696, 727, *review granted on other grounds*, 286 Cal. Rptr. 3d 248 (Mem) (2021); *see also Parents for Priv. v. Barr*, 949 F.3d 1210 (9th Cir.) (holding that an analogous school "policy that treats all students equally does not discriminate based on sex"), *cert. denied*, 141 S. Ct. 894 (2020).

Plaintiffs and Proposed Intervenors obviously disagree sharply about who transgender people are and how to conceptualize them. This is clear from Plaintiffs' qualms with the word "cisgender," from their continued insistence on referring to transgender women as "men," and from their extended six-page soliloquy on the First Amendment, unburdened by any case law, that waxes eloquent on the "'miraculous' phenomena" and "New Age-ish spirituality" of the "gender soul." But this dispute is about much more than dictionary definitions. Plaintiffs are entitled to hold their private views about transgender women, but they are not entitled to impose those views on the world by fiat, and they have provided no basis *in law* to substitute their own feelings for the prevailing view of the medical professions,[6] the Ninth Circuit, the Supreme Court

---

[5] If Plaintiffs felt that their self-perception of having no gender identity did not match their current housing in women's facilities (no matter how logically inconsistent that may be with their self-identification as women), SB 132 would grant them the same protection that it grants others: the ability to request different housing.

[6] Plaintiffs falsely claim that "SB 132 expressly precludes consideration of: gender dysphoria diagnosis and need for medical treatment in the form of 'transition[.]'" Dkt. No. 36 at 9. The word "diagnosis" does not appear in the text of SB 132, and nothing in the law prevents CDCR

of the United States, and most importantly, the California Legislature.  *See, e.g.*, *Karnoski v. Trump*, 926 F.3d 1180, 1187 n.1 (9th Cir. 2019) (citing Brief of Amici Curiae American Medical Association et al.); *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1737 (2020); 2020 Cal. Legis. Serv. ch. 182, § 2(a).  No matter what words Plaintiffs use to describe the transgender people protected by SB 132, the statute's protections are the plainly constitutional acts of a democratically elected state legislature.

### 2. The Eighth Amendment

Once again, Plaintiffs produce essentially no legal basis to rebut Proposed Intervenors' arguments that (1) Plaintiffs "do not allege *actually existing conditions* of substantial risk" and that (2) their "remaining allegations of harm rest almost entirely on the bigoted and baseless notion that transgender women as a group" have a propensity for assault.[7]  Dkt. No. 32 at 10.

Instead, Plaintiffs first point out that the Eighth Amendment can protect against substantial risk of serious damage to future health in addition to past harm.  Dkt. No. 36 at 13.  For this point, Plaintiffs expend their Eighth Amendment section's sole case citation on *Farmer v. Brennan*, 511 U.S. 825 (1994).  Plaintiffs' use of *Farmer* in seeking to invoke a federal Court's equitable power to send transgender women back to the danger of men's facilities en masse should win a prize for irony.  In *Farmer*, an incarcerated transgender woman—Dee Farmer—sought monetary and injunctive relief under the Eighth Amendment for prison officials' decision to transfer her to a particular prison and house her in the general population with men, where she was then beaten and raped, even though they knew of the danger she would inevitably face there because she was a transgender woman.  *Id*. at 830, 831.  The District Court granted summary

---

from considering whether a person requesting transfer has a gender dysphoria diagnosis or whether they have sought or undertaken medical transition in general, just that CDCR may not deny based on anatomy, including "genitalia."  Cal. Penal Code § 2606(c)(1).

[7] Plaintiffs attempt to back this claim up with an inadmissible and improper expert declaration, which this Court should not consider.  *See* Burt Decl. ¶ 6.  But even still, the supposed expert's dubious claim that trans women "offend at a rate statistically indistinguishable from [cisgender men]" relies entirely on a single study *whose very author* has repeatedly and vigorously disputed this interpretation, writing that such "claims about trans criminality, specifically rape likelihood, [are] misrepresenting the study findings" and that "we were certainly not saying that we found trans women were a rape risk."  *Fact Check*, TransAdvocate, https://www.transadvocate.com/fact-check-study-shows-transition-makes-trans-people-suicidal_n_15483.htm (last visited June 5, 2022).

judgment to the government under an Eighth Amendment standard that, at the time, required Ms. Farmer to show "actual knowledge"—in other words, that she had actually expressed that danger to the officials. *Id.* at 831. The Supreme Court reversed, holding in part that deliberate indifference only required Ms. Farmer to show that the officials were "aware of an obvious, substantial risk to [her] safety," which could include showing that she "belongs to an identifiable group of prisoners," such as transgender women, "who are frequently singled out for violent attack by other" incarcerated people. *Id.* at 843. As explained more thoroughly below, *Farmer* illuminates exactly why Plaintiffs' claims are not redressable: the requested injunction would not leave Defendants free to ignore the Eighth Amendment and create dozens of Dee Farmers by sending transgender women back to men's facilities.

But this Eighth Amendment theory is also critically flawed for two additional reasons. First, Plaintiffs' claim of past harm rests entirely on their outrageous and inadmissible attempt, explained above, to portray an anonymous rumor as an actual allegation of harm against an anonymous third party not involved in the litigation. Second, even if an instance of harm by a transgender woman *had* occurred, any suggestion that this shows a substantial risk of *future* harm would necessarily rely on a bigoted inference: that a different transgender woman in the future would have a propensity to harm solely by virtue of membership in the same group as the first.

### 3. Standing

Standing requires "redressability—a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 45 (1976)). As Proposed Intervenors explained, the injunction Plaintiffs request "would not permit CDCR to remove transgender women from women's prisons or foreclose future transfers in violation of Defendants' independent obligations under the Equal Protection Clause, the Eighth Amendment, and the federal Prison Rape Elimination Act ('PREA')." Dkt. No. 32 at 12. *Yet again*, Plaintiffs offer no response to this argument apart from their conclusory statement that "[their] injuries are redressable by a favorable decision for Plaintiffs (restoring pre-SB 132 status quo)." Dkt. No. 36 at 12. This parenthetical is revealing: Plaintiffs claim that their injury stems from the presence of

1  transgender women, a group *already* present to some extent in women's facilities during their

2  desired "pre-SB 132 status quo." *Id.*; *see also* Norsworthy Decl., Dkt. No. 36-11 ¶ 2 ("despite

3  being a trans[] woman . . . from 2018-2022 I was incarcerated in a California women's prison").

4      Declining to articulate any theory of redressability, Plaintiffs instead defend their standing

5  arguments generally by first pointing evasively to PREA.[8]  But PREA's mandated risk screenings

6  for sexual abusiveness (which includes consideration of prior acts and convictions) do not, as

7  Plaintiffs claim, conflict with SB 132's anti-discrimination provisions, which preclude CDCR

8  from denying transfer requests based on factors already present among other incarcerated people

9  at the desired facility.  Dkt. No. 36 at 11.  This argument does nothing to address Plaintiffs'

10 standing defects and it defies basic logic: SB 132 only requires CDCR to treat transgender women

11 in women's facilities the same as it does other women in those facilities, so SB 132 poses no

12 obstacle to PREA compliance unless CDCR is somehow unable to perform risk assessments of

13 cisgender women based on these same factors.  All SB 132 requires is that CDCR not act on risk

14 assessments by sending transgender women back to men's facilities, unless CDCR would do the

15 same to cisgender women, which all involved would recognize as an outrageous method of

16 addressing any safety concerns identified by a PREA risk assessment.  "Any suggestion that

17 housing a female inmate with a history of violence against women would be a novel security

18 challenge is hard to square with the fact that CDCR already houses many women with a history of

19 violence, including violence against their female partners." *Norsworthy v. Beard*, 87 F. Supp. 3d

20 1164, 1194 (N.D. Cal.), *appeal dismissed and remanded*, 802 F.3d 1090 (9th Cir. 2015).

21     Next, Plaintiffs bewilderingly attempt to distinguish a number of cases cited against them,

22 which they do not identify by name, and which have no obvious relation to their standing

23 arguments.  First are cases involving "a binary framework . . . whereas SB 132 allows

24 [transgender people] who do not [identify] as women" to request transfers to women's facilities

25 or to remain there based on their personal perception of safety.  Dkt. No. 36 at 12.  But it is

26 Defendants' prior "practice of automatically housing all incarcerated transgender people

---

[8] Plaintiffs raise this argument for the first time in their Opposition brief.  It is addressed here nonetheless.  Plaintiffs also contradict themselves, arguing first that PREA and SB 132 are co-extensive and then that they conflict.  Dkt. No. 36 at 9, 11.

according to their genitalia without exception" that these cases call into question, regardless of the precise identity of the plaintiff. Dkt. 32 at 1. And Plaintiffs' own declarations reveal a desire for many transgender people who do not identify as women to have the option to be housed in women's facilities. Chandler Decl. ¶ 5 ("I believe that trans[] men . . . should be housed" in women's facilities); Johnson Decl. ¶ 4 ("I have trans friends and we have no problems. I don't want [people assigned female at birth] who identify as trans *or nonbinary* to be transferred to men's prisons.") (emphasis added).

Nor is case law "that references health care, not housing, of 'transgender' [sic] individuals" inapplicable here. Dkt. No. 36 at 12. The Eighth Amendment and the Equal Protection Clause apply to both health care and housing, and Plaintiffs do not articulate any basis to draw any distinctions between health care cases and housing cases (or even which cases should be distinguished). *See, e.g.*, *Diamond v. Owens*, 131 F. Supp. 3d 1346, 1380 (M.D. Ga. 2015) (denying a motion to dismiss transgender plaintiff's Eighth Amendment claims involving both health care and housing). No more distinguishable are "cases that discuss individualized risk," which Plaintiffs argue are inapplicable because "SB 132 undercuts any individualized risk assessment." Dkt. No. 36 at 12. Without elaboration, it is unclear what this means. But SB 132 protects "the *individual's* preference" concerning housing and search, and the statute's denial and anti-discrimination provisions reference "management and security concerns with an incarcerated *individual's*" preference. Cal. Penal Code § 2606. These provisions do not preclude individualized assessment, they merely require CDCR to assess transgender people in the same manner as cisgender people. Finally, Plaintiffs seek to distinguish cases protecting transgender women that are based "on a rationale that 'it only happens in very small numbers.'" Dkt. No. 36 at 12. Again, Plaintiffs' precise meaning is difficult to ascertain. But they appear to object to exactly how many transgender people, who comprise approximately 0.6 percent of the U.S. population,[9] might be within SB 132's protections. Luckily for all who seek its protection, the Constitution does not think in these terms. *See, e.g.*, *Soberal-Perez v. Heckler*, 717 F.2d 36, 42

---

[9] Andrew R. Flores et al., The Williams Inst., *How Many Adults Identify as Transgender in the United States?* (2016), https://williamsinstitute.law.ucla.edu/wp-content/uploads/Trans-Adults-US-Aug-2016.pdf.

(2d Cir. 1983) ("[a] suspect class does not merit constitutional protection against discrimination merely because it has reached 'major' proportions").

Finally, the baseless rumors introduced by Plaintiffs in their new declarations do nothing to improve their standing analysis. For one, this Court should simply not consider them, as they are improper and inadmissible as explained more thoroughly above, *supra* at 2–3. But even still, these rumors concern an allegation of harm made by anonymous third parties against yet another anonymous third party—*not* against anyone directly involved in this litigation. Outside of the narrow context of third-party standing, which Plaintiffs have not established here, "one may not claim standing . . . to vindicate the constitutional rights of some third party." *Barrows v. Jackson*, 346 U.S. 249, 255 (1953).

## III.   CONCLUSION

Rather than offer a coherent defense of their claims rooted in legal analysis, Plaintiffs offer an insufficient substitute: improper and inadmissible facts, which themselves turn out to be based on gossip, rumors, and anything *but* personal knowledge. Plaintiffs' twelve declarations roam far beyond the bounds of the specifically attacked jurisdictional allegation, and so this Court simply should not consider them.[10] But these declarations are not just improper and inadmissible; they are also ineffectual. Nothing contained in their pages rescues Plaintiffs' standing arguments or renders them able to state a claim for relief. This Court should dismiss Plaintiffs' claims.

---

[10] In the unlikely event that this Court considers Plaintiffs' far-ranging use of extrinsic evidence as a basis to convert to a motion for summary judgment, deciding issues beyond the attacked jurisdictional allegation, Proposed Intervenors would request notice and "a fair opportunity to present material relevant," *In re Mortg. Elec. Registration Sys., Inc.*, 754 F.3d 772, 781 (9th Cir. 2014), including evidence to dispute Plaintiffs' rumors of a sexual assault against an anonymous third party.

Dated: June 10, 2022                                Respectfully Submitted,


By:      s/ *Nora Huppert*
NORA HUPPERT
RICHARD SAENZ
CHRISTINA S. PAEK
**LAMBDA LEGAL**

DIMITRI D. PORTNOI
MICHAEL J. SIMEONE
ELIZABETH A. ARIAS
SHIVANI I. MORRISON
**O'MELVENY & MYERS LLP**

SHAWN MEERKAMPER
**TRANSGENDER LAW CENTER**

AMANDA C. GOAD
**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**

SHILPI AGARWAL
**ACLU FOUNDATION OF NORTHERN CALIFORNIA**

*Counsel for Proposed Intervenors*