Candice Jackson (SBN 224648)
**FREEMAN MATHIS & GARY, LLP**
1010 B Street, Suite 300
San Rafael, California 94901
Telephone: (415) 352-6434
cjackson@fmglaw.com

Lauren Adams (*Pro Hac Vice*)
**WOMEN'S LIBERATION FRONT**
1802 Vernon St. NW, #2036
Washington, DC  20009
Telephone: (202) 964-1127
legal@womensliberationfront.org

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA (FRESNO DIVISION)

| | |
|---|---|
| JANINE CHANDLER; KRYSTAL GONZALEZ; TOMIEKIA JOHNSON; NADIA ROMERO, individuals; and WOMAN II WOMAN, a California non-profit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; KATHLEEN ALLISON, Secretary of the California Department of Corrections and Rehabilitation, in her official capacity; MICHAEL PALLARES, Warden, in his official capacity; MONA D. HOUSTON, Warden, in her official capacity; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.  1:21-cv-01657-JLT-HBK<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE DECLARATIONS ATTACHED TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

## INTRODUCTION

Plaintiffs submit this memorandum of points and authorities in opposition to Defendants' Motion to Strike Declarations Attached to Plaintiffs' Opposition to Defendants' Motion to Dismiss (ECF No. 38, filed June 10, 2022) (herein, "MTS"). The declarations challenged by Defendants' MTS are the twelve declarations submitted with Plaintiffs' opposition to Defendants' Motion to

Dismiss, ECF Nos. 36-1 to 36-12 (herein collectively, the "Declarations").

Defendants move to strike on the bases that the Declarations contain irrelevant evidence and improperly attempt to supplement Plaintiffs' complaint. *See* MTS (ECF No. 38) at 2. However, Defendants neglect to acknowledge that Defendants initiated a "factual attack" on Plaintiff's complaint and introduced extrinsic evidence submitted with their Motion to Dismiss. *See, e.g.,* ECF No. 15-1 at 11; ECF No. 15-2 at Exhibits A-S (Defendants' Request for Judicial Notice); ECF No. 15-4 (Declaration of J. Thissen in Support of Defendants' Motion to Dismiss). The evidence presented in the Declarations submitted by Plaintiffs is relevant to buttressing the allegations in Plaintiffs' complaint stating claims upon which relief may be granted, and supporting a conclusion that Plaintiffs are suffering actual and threatened concrete injury sufficient to confer Article III standing. For reasons discussed *infra*, Plaintiffs respectfully request that the Court deny Defendants' MTS and consider the Declarations as part of the record in this case.

## ARGUMENT

### A. The Court Should Exercise Its Discretion To Consider Both Parties' Extrinsic Evidence

A motion to dismiss under Fed. R. Civ. Proc. 12(b)(6) (failure to state a claim) challenges the sufficiency of the complaint's allegations, granted only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). Extrinsic evidence, beyond the four corners of the complaint (or evidence attached to or incorporated by reference into the complaint) may be considered only if properly subject to judicial notice.

Matters properly subject to judicial notice include matters of public record, but a court "cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (internal quotation marks and citations omitted). Defendants submitted disputed facts that happen to be contained in publicly available

2

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE DECLARATIONS**

records, such as the legislative history of SB 132 (the law challenged in Plaintiffs' complaint) and various social media posts and website pages ostensibly controlled by Plaintiffs, and by Defendants, as well as records relating to Defendant CDCR's processing of administrative grievances generally, and grievances specifically made to CDCR by Plaintiffs. While "records and reports of administrative bodies" may be appropriate for judicial notice, "the existence and content of a police report are not properly the subject of judicial notice." *United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) (internal quotation marks and citations omitted). Internal grievance records of a prison agency are analogous to the "content of a police report." *Id.*

Further, "facts" obtained from websites controlled by one or both parties are not necessarily appropriate for judicial notice, particularly where the statements are in dispute. The "Court may not take judicial notice of facts favorable to the moving party that could be reasonably disputed." *U.S. v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011). As demonstrated in Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss (ECF No. 36), Plaintiffs can and do "reasonably dispute" the statements contained within the extrinsic evidence submitted by Defendants with the Motion to Dismiss.

As Defendants note in the MTS, when a party submits extrinsic evidence not authorized for consideration in a Rule 12(b)(6) motion to dismiss, the Court may refuse to consider the extrinsic evidence, or convert the motion to dismiss to a motion for summary judgment. *See* Fed. R. Civ. Proc. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.") *See also Silk v. Metro Life Ins. Co.*, 477 F. Supp. 2d 1088, 1091 (C.D. Cal. 2007), *aff'd,* 310 F. App'x 138 (9th Cir. 2009) ("Where a defendant attaches extrinsic evidence to a motion for judgment on the pleadings, the court generally must convert that motion into one

for summary judgment.") In a case where both parties presented declarations and "other extrinsic evidence outside the pleadings" the court need not exclude that evidence, and may rely on it, as "represented parties had notice that the court may use the evidence they submitted to the court[.]" *Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1533 (9th Cir. 1985) (internal quotations and brackets omitted).

In the instant case, Defendants moved for dismissal ostensibly under Rule 12(b)(6), yet submitted and relied upon a substantial amount of extrinsic evidence (314 pages) to factually "attack" Plaintiffs' standing to pursue claims and to argue that Plaintiffs fail to state claims upon which relief may be granted. In response, Plaintiffs submitted extrinsic evidence of their own (161 pages), in support of their actual and imminent injury conferring standing and of the legal sufficiency of the harms constituting violations of the First, Eighth, and Fourteenth Amendments of the U.S. Constitution.

All parties are represented by counsel, and understood that evidence submitted could and should be considered by the Court. In fact, Defendants introduced additional extrinsic evidence in their reply to Plaintiffs' opposition to Defendants' motion to dismiss. *See, e.g.,* Def.'s Reply to Oppo. To Motion to Dismiss (ECF No. 39) at 14 (citing to Defendants' Request for Judicial Notice, ECF No. 15-2 at Exhibit S and providing hyperlink to: https://www.cdcr.ca.gov/prea/sb-132/faqs/). Troublingly, however, Exhibit S of Defendants' Request for Judicial Notice is a print-out of Defendant CDCR's own "Senate Bill 132 FAQs" webpage (found at the hyperlink above and referred to herein as "FAQ Webpage"), as it appeared on the date Defendants filed their Motion to Dismiss (4/11/22). However, this FAQ Webpage is a set of statements entirely under the control of Defendants. Without disclosing changes to the Court, Defendants substantively altered their FAQ Webpage between their first and most recent references to it. Defendants' own conduct with respect to the extrinsic evidence they desire the Court to accept as undisputed facts thus demonstrates the

4
**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO STRIKE DECLARATIONS**

contestable (and contested) nature of Defendants' evidence. Changes to the version originally captured by Defendants as "Exhibit S" to their "Request for Judicial Notice," versus how that webpage currently, include:

- The very first FAQ, version "Exhibit S" read in relevant part: "As of February 25, 2022, there are 1,430 incarcerated people identified as transgender, non-binary and intersex." The current version (accessed 6/15/22) reads: "As of May 23, 2022, there are 1,549 incarcerated people identified as transgender, non-binary and intersex."

- The third FAQ, version "Exhibit S" read in relevant part "If disapproved, notification is given to the incarcerated person who has up to 30 days to grieve the decision." The current version (accessed 6/15/22) reads: "If disapproved, notification is given to the incarcerated person who has up to 60 days to file a grievance of the decision."

- The sixth FAQ, version "Exhibit S" read: "As of February 25, 2022, 296 people housed in male institutions have requested to be housed in a female institution. 43 were approved for transfer[.] Nine were denied[.] 18 changed their minds[.] The remaining requests are being reviewed." The current version (accessed 6/15/22) reads: "As of May 23, 2022, 342 people housed in male institutions have requested to be housed in a female institution. 39 were approved for transfer and seven previously approved people are being reevaluated[.] 14 were denied[.] 28 changed their minds[.] The remaining requests are being reviewed."

- The seventh FAQ, version "Exhibit S" read: "As of February 25, 2022, 11 individuals housed in a female institution have requested to be housed in a male institution. The requests are under review." The current version (accessed 6/15/22) reads: "As of May 24, 2022, 10 individuals housed in a female institution have

5
**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE DECLARATIONS**

requested to be housed in a male institution. The requests are under review."

Defendants' Motion to Dismiss insists that Plaintiffs' allegations of harms caused by SB 132 are speculative and based on hypothetical chains of events. Plaintiffs' complaint, as well as the Declarations, allege numerous specific incidents of sexual victimization by male inmates transferred under SB 132 against female inmates as well as the reasonable fear of most women in CCWF that further, similar sexual violations will continue to occur and could happen to any of the imprisoned women. Yet Defendants' own FAQ Webpage claims that Defendants *do not even track sexual assaults by "gender identity" of the inmate*.[1] Further, the substantive alteration to Defendants' sixth FAQ illustrates Defendants' lack of factual basis to deny Plaintiffs' allegations or evidence of sexual assaults occurring against female inmates perpetrated by male inmates transferred under SB 132. As noted, the first version Defendants cited to contained no reference to a category of SB 132 transferees "being reevaluated" by CDCR. The current version refers to seven SB 132 transferees who are now being "reevaluated" by CDCR. This "reevaluation" category is distinct from CDCR's category of SB 132 inmates who have "changed their minds." But nowhere does SB 132 authorize CDCR to "reevaluate" sending a "transgender or nonbinary" male inmate back to a men's facility once CDCR has approved the inmate to reside in a women's facility. CDCR has not disclosed (on its FAQ Webpage, or in Defendants' filings in this case to date) what criteria it uses to decide to "reevaluate" an SB 132-transferred male inmate. But it strains credulity for

---

[1] The ninth entry on Defendants' FAQ Webpage currently reads in relevant part: "Have there been assaults by transgender women on cisgender women? CDCR's reporting mechanisms do not track assaults by gender identity." Plaintiffs dispute Defendants' claim not to have this information, but if accurate this is arguably a serious administrative misstep. If inmates who identify as transgender are legitimately at increased risk of victimization, it would be irresponsible not to track data that allows assessments of sexual victimization and perpetration for this population. Defendants' couching of this FAQ as involving "transgender women" assaulting "cisgender women" ignores the fact that male offenders are eligible for coed housing under SB 132 even if they do not identify as "female." Defendants' FAQ also implies that it is not even possible (or not worth inquiring into the possibility) that a transgender-identified male inmate might assault a female inmate who is also transgender-identified.

6

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE DECLARATIONS**

CDCR to deny that allegations of sexual assault, sexual harassment, or sexual activity with women might have prompted such "reevaluations." Defendants' own extrinsic evidence therefore places in dispute a material fact in Plaintiffs' claims: whether SB 132 is the proximate cause of male-on-female inmate-inmate sexual assaults.

In situations where a motion to dismiss is accompanied by extrinsic evidence, the Court bypasses analysis under a motion to dismiss and treats the motion as one for summary judgment, particularly where the Court believes a summary judgment analysis efficiently resolves the issues raised by the party who moved for dismissal. *See, e.g., Fort Vancouver Plywood Co. v. United States*, 747 F.2d 547, 552 (9th Cir. 1984).

The practical question, then, is whether Defendants are entitled to have Plaintiffs' claims dismissed as a matter of law. The myriad of contested facts presented by both Plaintiffs and Defendants in the Motion to Dismiss filings demonstrate that reasonable minds could differ as to the conclusions to be drawn from the facts presented by Plaintiffs and by Defendants, such that genuine issues of material fact exist in this case. The Court should thus deny Defendants' MTS filed against the Declarations and consider the evidence and argument in the record from both sides.

**B. Plaintiffs' Declaration Evidence Is Relevant**

Defendants argue in the MTS that Plaintiffs' declarations should be stricken as "redundant or immaterial." *See* MTS (ECF No. 38) at 4. On the contrary, the facts presented in the Declarations could not be more material and relevant to supporting Plaintiffs' standing and articulation of colorable claims against Defendants.

Defendants' Motion to Dismiss, including the volume of extrinsic evidence filed therewith, contends that Plaintiffs are suffering no harm at all and that nothing about SB 132 or Defendants' mandate to enforce that law could plausibly be causing Plaintiffs' harm. Defendants also contend that harm to Plaintiffs and other women would not be redressed if Plaintiffs' requested relief (return

7
**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE DECLARATIONS**

to status quo prior to SB 132, where male inmates were housed in women's prisons only on a case-by-case basis involving objective factors relevant to women's safety, which factors are "off the table" under SB 132) was granted. Additionally, Proposed Intervenors filed a proposed answer concurrent with their Motion to Intervene that disputed the basic biological facts of human reproduction. Plaintiffs responded with extrinsic evidence showing, at the very least, that Defendants' and Proposed Intervenors' contentions are disputed factually and rationally, including by declarants who are "transgender" identified. *See, e.g.,* Declaration of Michelle Norsworthy (ECF No. 36-11); Declaration of Sagal Sadiq (ECF No. 36-6).

As the legislative history of SB 132 itself admits, the objective characteristic of sex is first on the list of factors still utilized by CDCR to determine appropriate facility placement for each inmate in order to "provide for the safety of the incarcerated people and staff." *See* ECF No. 15-3 at 5. This is an express acknowledgment of the importance of physical and sociological differences between men and women. Plaintiffs should not have needed experts to explain why housing women with male offenders who have functioning penises inevitably and foreseeably subjects women to cruel and unusual extrajudicial punishments. SB 132 abandons basic facts of biology and criminology that impact the safety and rehabilitation of incarcerated men and women. Defendants and Proposed Intervenors respond to Plaintiffs' recognition of these basic facts by accusing Plaintiffs of being either Luddites opposed to social progress or bigots hateful toward trans-identifying individuals. *See, e.g.,* Def. Memo. ISO MTD (ECF No. 15-1) at 20, 27-28 (analogizing Plaintiffs' objections to being housed with male criminals with functioning penises to prejudiced objections to interracial housing or opposition to gay marriage); *see also* Prop. Interv. Memo. ISO Defs.' Mot. to Dismiss (ECF No. 32) at 16 (calling Plaintiffs' allegations "bigoted and baseless"). Plaintiffs thus present the Court with corroboration for foundational material facts that explain why SB 132 is causing grave harms to incarcerated women.

Only female inmates are at risk of experiencing pregnancy in prison. Sexual violence is overwhelmingly perpetrated by males. Incarcerated women have histories of male-perpetrated sexual abuse at disproportionately high rates. Such facts are of fundamental significance when examining the constitutionality of a law that demands that Defendant CDCR impose predictable, foreseeable, serious sexual, physical, emotional, and psychological harms to women in its custody. These harms, which are entirely avoidable by keeping male offenders with functioning penises physically separated from women, include rape and sexual assault, heightened risk and fear of being physically and sexually victimized by men, becoming pregnant in prison, and/or becoming infected with sexually transmitted diseases from sexual intercourse with men. Because these harms and the underlying facts of reality that cause them are being denied by Defendants and Proposed Intervenors, Plaintiffs' Declarations, *e.g.,* Declaration of Colin Wright (ECF No. 36-4) and Declaration of Callie Burt (ECF No. 36-5), provide important context for evaluating whether Plaintiffs have stated claims that survive dismissal as a matter of law.

These harms to women are unjustified even if the male criminals who inflict the harms and pose the risks to women were themselves vulnerable to being victimized in men's prisons. Defendant CDCR is obligated to protect *all* inmates, to take reasonable, common sense measures to reduce sexual victimization of *all* inmates, and to protect *all* inmates from known, predictable risks. The Declarations support Plaintiffs' allegations that SB 132 forces Defendant CDCR to choose between protecting women, and complying with SB 132, a conundrum that warrants judicial scrutiny under constitutional guarantees that all inmates must be free from cruel and unusual punishments and that all inmates are guaranteed equal treatment under the laws.

In addition to the two expert declarations, Plaintiff submitted nine declarations from current and former inmates, each of whom testified based on personal knowledge, direct observation, and first-person senses and impressions regarding issues and incidents directly pertinent to Plaintiffs'

9
**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO STRIKE DECLARATIONS**

claims of harms caused by SB 132 and standing to pursue such claims. The remaining declaration relied on by Plaintiffs, submitted by Plaintiffs' counsel Lauren Adams, merely presents the Court with the same type of public records evidence submitted by Defendants' own employee (*e.g.*, Declaration of J. Thissen and Exhibits A-S, ECF No. 15-4) – information gleaned from Defendant CDCR's own publicly available online inmate locator system, and a transcript of a public hearing held last August in the California State Senate.

## CONCLUSION

Defendants submitted controvertible and controverted extrinsic evidence with their moving papers and again in their reply in support of their Motion to Dismiss. Defendants acknowledge in their Motion to Strike that the Court has discretion to consider both parties' extrinsic evidence under the standards of a Rule 56 motion. It is not uncommon when an early summary judgment motion has been decided, for the Court to grant leave to amend for a party to bring a second motion for summary judgment. Thus, the ability of Defendants (and Proposed Intervenors if granted party status) to request dismissal as a matter of law at a later stage of litigation is preserved while allowing the Court at this stage to test whether Plaintiffs' claims survive Defendants' dismissal request based on the relatively voluminous evidence submitted by both Defendants and Plaintiffs. Plaintiffs therefore respectfully request that the Court deny Defendants' Motion to Strike and consider both sides' evidence and arguments in the record in ruling on Defendants' Motion to Dismiss.

Dated:  June 16, 2022

RESPECTFULLY SUBMITTED,

By:   /s/ Candice Jackson
Candice Jackson (SBN 224648)
**FREEMAN MATHIS & GARY, LLP**

By:   /s/ Lauren Adams
Lauren Adams (*Pro Hac Vice*)
**WOMEN'S LIBERATION FRONT**

*Counsel for Plaintiffs*