**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANINE CHANDLER, et al,<br><br>         Plaintiffs,<br><br>    v.<br><br>CALIFORNIA DEP'T OF CORRECTIONS AND REHABILITATION, et al.,<br><br>         Defendants. | Case No. 1:21-cv-01657-JLT-HBK<br><br>ORDER GRANTING WITH CONDITIONS MOTION TO INTERVE AS OF RIGHT<br><br>(Doc. 19) |

Before the Court is a motion to intervene filed by four transgender women, who are incarcerated by the California Department of Corrections and Rehabilitation, and the Transgender Gender-Variant & Intersex Justice Project ("TGIJP"). The prospective intervenors seek to intervene as a matter of right[1] to defend their interests. (*See id.* at 2.) The defendants oppose the motion. Because the Court finds that the intervenors have a protectible interest in this litigation and the defendants may not adequately defend this interest, the Court **GRANTS** the motion to intervene with conditions.

///

///

---

[1] Because the Court grants intervention as of right, the Court does not address the alternate argument as to whether there is an adequately showing for permissive intervention.

## I. Facts and Procedural Background[2]

Four cisgender female inmates[3] housed in a CDCR prison, filed this lawsuit alleging that the provisions enacted by The Transgender Respect, Agency, and Dignity Act[4] (S.B. 132) are facially unconstitutional and as applied to Plaintiffs. (*See* Doc. 1 at 17-18, 21, 24, 26, 27, 28, 29, 30, 32, 33, 34, 34.) Among other requirements, S.B. 132 requires the CDCR to house transgender inmates in a prison "designated for men or women based on the individual's preference," (Cal. Pen. Code § 2606(a)(3)) and to give "[the inmate's] perception of health and safety given serious consideration in any bed assignment, placement, or programming decision[.]" Cal. Pen. Code § 2606(a)(4). The motion to intervene seeks to add the intervenors as party defendants because, they assert that the defendants are "not likely to defend SB 132 vigorously because it is a law that they not only refuse to fully implement, but regularly violate." (Doc. 19-1 at 2.)

## II. Legal Standard

An individual may "become a 'party' to a lawsuit by intervening in the action." *U.S. ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009). Intervention in federal court is governed by Federal Rule of Civil Procedure 24. *Nat'l Ass'n for Advancement of Colored People v. New York*, 413 U.S 345, 365 (1973). To intervene as of right, Rule 24(a) provides that a court permit anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protects its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). "An applicant seeking to intervene as of right under Rule 24 must demonstrate that four requirements are met: '(1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protects its interest; and (4) the existing parties

---

[2] The defendants filed a motion to dismiss (Doc. 15) and a motion to strike. (Doc. 38.) Those motions are fully briefed and are awaiting resolution by the Court. Along with the motion to intervene, the intervenors filed a proposed answer to the plaintiffs' complaint (Doc. 19-8), and a brief in support of the defendants' motion to dismiss. (Doc. 32.)

[3] The lawsuit was filed also by a nonprofit organization that advocates for incarcerated women. This group was dismissed from the lawsuit by stipulation. (Doc. 33)

[4] The Act was codified at California Penal Code §§ 2605 and 2606 and became effective on January 1, 2021.

may not adequately represent the applicant's interest.'" *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (quoting *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006)); *see also Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016). "Each of these four requirements must be satisfied to support a right to intervene," *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003), and "the party seeking to intervene bears the burden of showing those four elements are met." *Prete*, 438 F.3d at 954. "Failure to satisfy any one of the requirements is fatal to the application, and we need not reach the remaining elements if one of the elements is not satisfied." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). Rule 24(a) is to be construed "liberally in favor of potential intervenors." *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006) (citation omitted); *see also United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). A liberal interpretation of the rule "serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a practical interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues[.]" *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 n.8 (9th Cir. 1995) (citations omitted).

**III.     Discussion**

The defendants object to the intervenors intervening as of right because: (1) the intervenors are seeking to intervene prematurely, (2) the intervenors lack protectable interests, and (3) even if the intervenors had protectable interests, The defendants adequately represent those interests. The Court will address each in turn.

**A.  Timeliness**

Timeliness is "the threshold requirement" for intervention as of right. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th 1997) (citations omitted). If the Court finds "that the motion to intervene was not timely, it need not reach any of the remaining elements of Rule 24." The Ninth Circuit has held that timeliness is determined based upon consideration of three factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay. *Smith*,

1  830 F.3d at 854 (citations omitted). "Timeliness is a flexible concept," *Alisal Water Corp.*, 370
2  F.3d at 921, and the inquiry is "determined by the totality of the circumstances facing would-be
3  intervenors." *Smith*, 830 F.3d at 854 (citations omitted). The "[m]ere lapse of time alone is not
4  determinative." *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984). "[T]he timeliness
5  requirement for intervention as of right should be treated more leniently than for permissive
6  intervention because of the likelihood of more serious harm." *Id.*

7  The motion to intervene in this case was filed at an early stage, and there is no suggestion
8  that the motion is untimely. To the contrary, the defendants contend that intervention at this stage
9  in the litigation is premature, and that "an expansion of the issues" by allowing five new parties to
10 intervene would prejudice the defendants. (*See* Doc. 35 at 2-4.)

### *a. Premature Intervention*

12 The motion to intervene was filed less than one month after the defendants' motion to
13 dismiss and before the briefing on that motion was complete. The defendants cite to cases that
14 caution against premature intervention and assert the Court should consider these warnings when
15 ruling on the intervenors' motion. (*See* Doc. 35 at 7-8.) The intervenors note correctly that none
16 of the cases cited by' denied intervention as premature. (*See* Doc. 37 at 6.)

17 Even still, the Ninth Circuit has cautioned against premature intervention. In *Kalbers v.*
18 *United States Dep't of Justice*, 22 F.4th 816, 823 (9th Cir. 2021), the Court determined that courts
19 should "discourage premature intervention" because it unnecessarily "squanders scarce judicial
20 resources and increases litigation costs." Despite this, *Kalbers* found that intervention was timely
21 when it was sought at an early stage of the litigation when "the parties and the district court [] had
22 covered scarcely any legal ground together." *Id.* at 826-27.

23 The defendants also cite to *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 595-97
24 (2d Cir. 1986), for the proposition that intervention should be denied when it is premature. In a
25 footnote, the Second Circuit noted that a group had sought intervention, but the motion was
26 denied because its interest in the litigation was deemed too speculative. *Id.* at n.6. However, once
27 a remedial plan was proposed, which appeared to affect that intervenor's rights, the group was
28 permitted to intervene. *Id.* Here, there is no similar speculation concerning the intervenors'

4

current interests nor this litigation's impact on those interests.[5]

### b. Prejudice to Other Parties

"[P]rejudice to existing parties is 'the most important consideration in deciding whether a motion for intervention is untimely.'" *Smith*, 830 F.3d at 857 (quoting *Oregon*, 745 F.2d at 552). "[T]he only 'prejudice' that is relevant under this factor is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented—and not from the fact that including another party in the case might make resolution more 'difficult[].'" *Smith*, 830 F.3d at 857 (second alteration in original) (quoting *Oregon*, 745 F.2d at 552-53).

The defendants argue that allowing intervention by five new parties would result in prejudice stemming from an expansion of the scope of litigation, citing to *Smith v. Marsh*, 194 F.3d 1045 (9th Cir. 1999). *Marsh* denied intervention based on prejudice due to delay and because the intervenors sought to expand the scope of litigation. *Id.* at 1051. The Ninth Circuit reasoned that the trial court had already decided several substantive motions and discovery was well underway by the time intervention was sought. *Id.* at 1050-53. In addition, the Court determined that expanding the scope of the litigation to allow a constitutional challenge to a law passed after the litigation had started would cause undue delay and would result in prejudice to the parties. *Id.* at 1051 (emphasis added); *see also Estate of Abdollahi v. County of Sacramento*, 2008 WL 2783217, at *2 (E.D. Cal. June 15, 2008) ("The interjection of an intervenor at this stage in the litigation would unnecessarily broaden the litigation and prejudice the parties in the action, who have already reached resolution of their claims."). Unlike *Marsh*, intervenors are not seeking to broaden the scope of litigation beyond S.B. 132, their motion to intervene comes at an early stage in the proceedings, and any attempts at litigating issues apart from the constitutionality of the statute can be addressed by imposing conditions on the intervenors to ensure efficient proceedings. *See Picayune Rancheria of Chukchansi v. Rabobank*, 2013 WL 2603954, at *5 (E.D.

---

[5] The fact that the motion to intervene can be renewed later does not demonstrate that the motion should not be granted now. S*ee Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528, 530-31 (9th Cir. 1983) (rejecting the dissent's argument that would have denied intervention "based on the mere possibility that a future intervention application might be granted.").

5

Cal. June 11, 2013) ("A court may, in its discretion, impose conditions on intervention.").

Furthermore, the mere addition of parties does not constitute sufficient prejudice to deny intervention. *See Kalbers*, 22 F.4th at 825 ("Yet every motion to intervene will complicate or delay a case to some degree—three parties are more than two. This is not a sufficient reason to deny intervention."); *see also Smith*, 830 F.3d at 857 (prejudice does not stem from "the fact that including another party in the case might make resolution more 'difficult[]'") (alteration in original) (citation omitted). The Court sees no undue prejudice to the existing parties caused by the timing of the filing of the motion.

### B. Significant, Protectable Interest

The defendants argue that intervenors do not have a significant protectable interest in this litigation because they seek relief different from Plaintiffs and do not have standing to intervene. (*See* Doc. 35 at 9-10.)

#### 1. The Intervenors' Interests

"A would-be intervenor has a significant protectable interest if the interest is protected by law and there is a relationship between that interest and the claim or claims at issue." *Cooper*, 13 F.4th at 865 (citing *Alisal Water Corp.*, 370 F.3d at 919). A proposed intervenor's interest has a "relationship" with the pending action "only if the resolution of the plaintiff's claims actually will affect the applicant." *Arakaki*, 324 F.3d at 1084 (quoting *Donnelly*, 159 F.3d at 410). "Whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry. No specific legal or equitable interest need be established." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (citation omitted).

It is undisputed that the Legislature passed S.B. 132 to protect transgender inmates like the individual intervenors. (*See* Doc. 35 at 6; Doc. 19-1 at 17.) Because the individual intervenors are the "intended beneficiaries" of the law, their interest is neither "undifferentiated" nor "generalized." *Lockyer*, 450 F.3d at 441 (citation omitted); *see also County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (finding small farmers had a protectable interest where the farmers were "precisely those Congress intended to protect" with the statute). If S.B. 132 is declared unconstitutional or substantially limited because of this litigation, the individual

intervenors potentially will lose protections intended to guard them from harm. Such interests are sufficiently "direct, non-contingent, [and] substantial" to constitute a significant protectible interest in this action. *Lockyer*, 450 F.3d at 441.

TGIJP asserts it has two forms of significant protectable interest. First, TGIJP "played a key role in shaping and advocating for SB 132," so it claims to have a significant protectable interest in upholding the law. (Doc. 19-1 at 11.) Second, TGIJP claims to have a significant protectable interest furthering the interests of its members, many of whom are transgender, gender-variant, and/or intersex people incarcerated in CDCR facilities. The Court finds the latter sufficient in this case, *see California Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 306-07 (E.D. Cal. 2011) (to establish right to intervene, environmental organization is not obligated to identify a "specifical legal or equitable interests"; "[i]t is enough that the [organization's] members benefit from the challenged legislation by way of improved air quality and health."), and therefore sees no need to definitively evaluate the former.[6]

In arguing against intervention, the defendants frame the intervenors' involvement in this litigation as an attempt to shape the implementation of S.B. 132 and argue that the disputes over the implementation they are attempting, do not create a significantly protectable interest in *this* litigation. (Doc. 35 at 10.) The defendants note that the intervenors' assert:

> . . . CDCR has "refused to even implement" S.B. 132, and that "CDCR" is unwilling to implement SB 132 as written." (ECF No. 19-1 at 14.) Applicants accuse CDCR of "hostility to fully implementing SB 132," and they seek to challenge CDCR's "discretion in housing decision." (ECF No. 19-1 at 20-21.)

(Doc. 35 at 10.) These statements, taken from the motion to intervene, are directed toward the "adequate representation" prong of the intervention test by suggesting that CDCR is unlikely to vigorously defend S.B. 132. These arguments do not prove that the intervenors lack a

---

[6] Nonetheless, intervention by sponsoring/public interest organizations has long been recognized as proper. *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) ("A public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported."*)*; *Wash. State Bldg. & Const. Trades Council v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982) ("DWW, as the public interest group that sponsored the initiative, was entitled to intervention as a matter of right under Rule 24(a)."); *Andrus*, 622 F.2d at 438 (organization could intervene because government regulations impacted its membership); *Idaho v. Freeman*, 625 F.2d 886, 887 (9th Cir. 1980) (holding that the National Organization for Women had the right to intervene in a suit challenging the ratification procedures of the proposed Equal Rights Amendment, a cause which the organization had backed).

significantly protectable interest in this litigation.

Notably, the complaint alleges that "S.B. 132 converts 'women's facilities' into facilities housing a collection of women, and men with any self-declared 'identity' that is not exclusively male even though such men may (and most do) retain the anatomy, genitalia, and physical characteristics that define them as male-sexed humans." (Doc. 1, ¶ 33.) Plaintiffs seek a "judicial declaration that S.B. 132 is unconstitutional on its face, and as applied" and a "permanent injunction prohibiting [the] implement[ation] [of] the directives contained in S.B. 132 (Cal. Pen. Code §§ 2605, 2606)." (*Id.* at 34.) The intervenors have an interest in upholding the constitutionality of S.B. 132 despite the defects Plaintiffs assert exist in the law.

The defendants rely on *Cooper v. Newsom*, 13 F.4th 857, 865 (9th Cir. 2021), and argue the intervenors lack a protectible interest. In *Cooper*, the Ninth Circuit explained: "A would-be intervenor has a significant protectable interest if the interest is protected by law and there is a relationship between that interest and the claim or claims at issue. A significant protectable interest will be found if a legally protected interest will suffer a practical impairment in the pending litigation." *Id.* at 865. Applying this general framework, *Cooper* held that District Attorneys who sought intervention to defend the constitutionality of execution protocols had no "vested interest" in the litigation merely because they had the "sole discretion" to charge and seek punishment. *Id.* The Court reasoned:

> The flaw in [the District Attorney'] argument is that neither their ability to charge nor their ability to seek punishment is at issue in this case. The issue before the district court was not whether it was legal for the District Attorneys to charge defendants with capital crimes. Nor was the issue the legality of any capital conviction and sentence the District Attorneys have obtained. Rather, the issue was the constitutionality of California's method of execution. This important but narrow issue does not substantially affect the District Attorneys in the exercise of their "sole discretion" to determine whom to charge, what charges to file and pursue, and what punishment to seek.

*Id.* at 865-66. By contrast, the interest claimed by the individual intervenors and by TGIJP in its representational capacity, are directly related to the claims in this case. That the intervenors are also concerned about implementation does not detract from the fact that they possess significant interests in the claims at issue in this case.

///

8

## 2. **Standing**

The defendants suggest that the intervenors lack "standing" to intervene. Though intervenors must have Article III standing to pursue relief different from that which is sought by a party with standing (*Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 440 (2017)[7], this is of no moment here because the intervenors are seeking the same relief as the defendants. (*See* Doc. 19 at 2-3; Doc. 32 at 7-8). *See Pilant v. Caesars Enter. Servs., LLC*, 2021 WL 424280, at *2 n.2 (S.D. Cal. Feb. 8, 2021), appeal dismissed, 2021 WL 4075076 (9th Cir. Aug. 4, 2021) ("Here, the Rincon Band does not seek any relief from either Pilant or CES. Instead, the Rincon Band seeks to intervene to prevent Pilant from obtaining any relief from CES. It is unclear how Article III standing could be required to intervene only for the purpose of asserting a defense that would result in the dismissal of the Plaintiff's claims."); *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 938 n.3 (N.D. Tex. 2019) ("Putative Intervenors may join in defense. And as long as they do not also intend to add an affirmative claim for relief during the district court proceedings, Putative Intervenors need not establish standing to intervene."); *Doe v. Zucker*, 2019 WL 111020, at *8 (N.D.N.Y. Jan. 4, 2019) ("The fact that Intervener-Respondents might wish to take a different legal position than Respondents during the course of litigation does not negate the fact that both Respondents and Intervener-Respondents seek the same overall relief."). The fact that the intervenors are critical of how the defendants have implemented S.B. 132 does not translate into them seeking different relief. Indeed, the intervenors have brought no claims in this action. Therefore, the intervenors need not show Article III standing. In sum, the Court finds that the intervenors have significantly protectible interests in this litigation.

---

[7] Though *Town of Chester* holds that "an intervenor of right must demonstrate Article III standing when it seeks additional relief," some courts have been unwilling to apply this standard to defendant-intervenors that bring no additional claims. *See Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020) (as "both the Federal Government and the Little Sisters asked the court to dissolve the injunction against the religious exemption[,] [t]he Third Circuit. . . erred by inquiring into the Little Sister's independent Article III standing."); *California Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1085 (9th Cir. 2022) ("Intervenors that seek relief that is broader than or different from the relief sought by existing parties to the case must possess constitutional standing. . . but intervenors that seek the same relief sought by at least one existing party to the case need not do so."); *see also PrimeSource Bldg. Prods., Inc. v. United States*, 494 F. Supp. 3d 1307, 1318 (Ct. Int'l Trade 2021) (Baker, J., concurrence) ("*Town of Chester*, as recently clarified by *Little Sisters of the Poor*, thus definitely resolved the persistent circuit split. . . Article III standing does not require a putative intervenor—whether as of right or permissive—to demonstrate independent constitutional standing, so long as it seeks the same relief as one of the parties to the case.").

### 3. Practical Impairment

"The question of whether protectable interests will be impaired by litigation 'must be put in practical rather than in legal terms.'" *Akina v. Hawaii*, 835 F.3d 1003, 1011-12 (9th Cir. 2016) (quoting Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1908.2 (3d ed. 2007)). The Ninth Circuit has "follow[ed] the guidance of Rule 24 advisory committee notes that state that '[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'" *Berg*, 268 F.3d at 822 (9th Cir. 2001) (quoting Fed. R. Civ. P. 24 advisory committee's notes to 1966 amendment). "Intervention as of right does not require an absolute certainty that a party's interest will be impaired[.]" *Citizens for Balanced Use*, 647 F.3d at 900.

As noted above, if the Plaintiffs are successful in this action, this would impact the intervenors' interests because they will lose the same statutory protections, which they claim is vital to ensure their "fundamental rights." (*See* Doc. 19-1 at 13.) Requested housing transfers for transgender inmates may be halted and existing transfers may be questioned, potentially increasing the likelihood of harm to the beneficiaries of the statute. (*See id.* at 5-7.) This direct impact on the interests and wellbeing of the intervenors suffices to show impairment. *See Berg*, 268 F.3d at 822. Accordingly, the intervenors satisfy the impairment element of intervention as of right under Rule 24(a).

### 4. Inadequate Representation

Even if a proposed intervenor demonstrates it has a sufficient interest in the case that may be impaired if intervention is not granted, intervention is nonetheless improper if "existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The Ninth Circuit considers the following three factors in determining the adequacy of representation:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Arakaki*, 324 F.3d at 1086 (citing *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986)). "The burden of showing inadequacy of representation is 'minimal' and satisfied

if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki*, 324 F.3d at 1086). The most important factor in determining adequacy of representation is "how the interest compares with the interest of existing parties." *Arakaki*, 324 F.3d at 1086. "When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises. If the applicant's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation." *Id.* (citations omitted); *see also Wilson*, 131 F.3d at 1305.

The intervenors allege that the defendants will not adequately represent their interests for several reasons: (1) the intervenors are likely to make arguments that the defendants will not, (2) the defendants are reluctant or unwilling to defend the case vigorously, and (3) the intervenors have a unique perspective that neither party can provide. (Doc. 19-1 at 18-23.) The defendants contend that because they share the same ultimate objective with the intervenors, the presumption of adequacy of representation applies, and the intervenors have failed to demonstrate "a very compelling showing" that rebuts the presumption. (Doc. 35 at 13-20.) Indeed, "[i]n the absence of a 'very compelling showing to the contrary,' it will be presumed that a state adequately represents its citizens when the applicant shares the same interest." *See Arakaki*, 324 F.3d at 1086 (internal citation omitted). Assuming this presumption applies,[8] the Court finds that intervenors have demonstrated a compelling reason that rebuts the presumption. *See Californians for Safe and Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998) (the presumption of adequate representation may be overcome when the proposed intervenor's interests may be "more narrow and parochial than the interests of the public at large.").

Though the defendants and the intervenors share a general goal—to defend the constitutionality of the Act—the intervenors have a materially distinct perspective on the issues.[9]

---

[8] The intervenors suggest that the presumption does not apply here, arguing that "an obvious tension exists between the interest of the Proposed Intervenors and those of the agency holding them captive." (Doc. 19-1 at 18.) The Court finds it unnecessary to decide this issue given that intervention is appropriate even if the presumption applies.

[9] For example, the defendants and the intervenors disagree as to whether the complaint is ripe. (Doc. 15 at 23; Doc. 32 at 13) Though differences in litigation strategy "do not normally justify intervention," *United States v. City of Los Angeles*, 288 F.3d 391, 402-03 (9th Cir. 2002), the differences on this topic are substantive.

Along these lines, they appear to bring a "unique and vital perspective" as they alone "can attest to the realities of being an incarcerated TGI person." (Doc. 19-1 at 22.) The defendants contest this point as well, relying on *Prete v. Bradbury*, in which the court denied intervention based on its reasoning that any "specialized knowledge" the defendant lacked could be acquired through discovery or the use of experts. 438 F.3d at 958. In *Prete*, however, the court's decision presumed that the defendant and proposed intervenors shared "comparable expertise" as to a disputed ballot signature gathering process which would make the intervenors' knowledge redundant. *Id.* ("[D]efendant, as Oregon's Secretary of State, is undoubtedly familiar with the initiative process and the requisite signature-gathering; indeed defendant is the government party responsible for counting the signatures.").

The record does not support a similar finding here. This does not appear to be a situation in which relevant expertise can be easily gained or the experience of an incarcerated transgender inmate can be easily grasped. These considerations demonstrate the intervenors can provide a "necessary element" to the litigation that the existing parties cannot. *See Sagebrush Rebellion Inc.*, 713 F.2d at 528 (intervention was permitted because "[i]n addition to having expertise apart from that of the [defendant], the intervenor offers a perspective which differs materially from that of the present parties to this litigation"); *Pickup v. Brown*, 2012 WL 6024387, at *12 (E.D. Cal. Dec. 4, 2012) (permitting intervention because intervenor organization would provide "a helpful, alternative viewpoint. . . that will aid the court in resolving plaintiffs' claims fully and fairly"). Therefore, the Court finds that the intervenors have made the minimal showing needed to establish that the defendants' representation may be inadequate. *City of Los Angeles*, 288 F.3d at 402 and the motion to intervene pursuant to Rule 24(a) is **GRANTED.**

**C. Conditions on Intervention**

The Court may impose conditions on intervention. *See* Advisory Committee Notes on Rule 24, 28 U.S.C. App., p. 567 ("intervention of right. . . may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings"), cited with approval in *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 383 (1987) (Brennan, J., concurring in part); *see also Picayune Rancheria of*

*Chukchansi*, 2013 WL 2603954, at *5 (E.D. Cal. Jun. 11, 2013). For the sake of efficiency, the Court will accept and consider the intervenors' briefs in support of the pending motion to dismiss as filed, (Docs. 32, 40), but future briefing by the intervenors will be subject to the following restrictions.

(1) Unless otherwise permitted by the Court, the intervenors' briefs shall not exceed ten pages in length at any stage of this case.

(2) The intervenors shall make every effort not to duplicate briefing on any issue; obviously duplicative material will be disregarded.

(3) To aid in the accomplishment of the above, the parties are directed to meet and confer in connection with any further anticipated motions practice and are encouraged to consider stipulating to a staggered briefing schedule that will permit the intervenors an opportunity to review the defendants' briefing in advance of filing their own briefs.

**CONCLUSION**

For all the reasons set forth above, the motion to intervene as of right (Doc. 19) pursuant to Rule 24(a) is **GRANTED** subject to the conditions set forth above. The parties are warned that this Court's resources are still significantly strained. The undersigned has more than 100 civil motions under submission, many of which are far older than the pending motions in this case. As a result, it still may be many months before the Court turns in earnest to the motion to dismiss or motion to strike.

IT IS SO ORDERED.

Dated: __August 20, 2023__                                                  _Jennifer L. Thurston_
                                                                                               UNITED STATES DISTRICT JUDGE