1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  JANINE CHANDLER, *et al.*, | Case No. 1:21-cv-01657-JLT-HBK |
| 12      Plaintiffs, | ORDER DENYING KENNARD LEE |
| | DAVIS'S MOTION TO INTERVENE, |
| 13      v. | AND DENYING AS MOOT DAVIS'S |
| | MOTION TO MODIFY OR ALTER |
| 14  JEFFREY MACOMBER, *Secretary of the* | JUDGMENT AND MOTION FOR |
| *California Department of Corrections and* | LEAVE TO PROCEED *IN FORMA* |
| 15  *Rehabilitation*, *et al.*, | *PAUPERIS* |
| 16      Defendants. | (Docs. 64, 70, 92) |

17

18        Kennard Lee Davis has filed a Motion of Joinder, which the Court construes as a Motion

19  to Intervene brought under Federal Rule of Civil Procedure 24.[1]  (Doc. 64.)  Also pending is

20  Davis's Motion to Modify, Amend, or Alter Judgment, (Doc. 70), and Motion for Leave to

21  Proceed *in forma pauperis*, (Doc. 92).  Because Davis has failed to show that she may intervene

22  permissively or as of right under Rule 24, the Court **DENIES** the Motion to Intervene (Doc. 64).

23  Accordingly, Davis's subsequent motions, (Docs. 70, 92), are **DENIED AS MOOT**.

24  ---
[1] "Pro se motions from prisoners are to be liberally construed." *United States v. Jackson*, 21 F.4th 1205, 1216 (9th Cir.

25  2022) (habeas context) (citation omitted); *Ross v. Williams*, 950 F.3d 1160, 1173 n.19 (9th Cir. 2020).  As such, the
Court must "look to the contents of a *pro se* filing rather than its form." *Ross*, 950 F.3d at 1173 n.19.  Though Davis

26  brings the instant motion as a "motion for joinder" under Rule 18, Davis is not a party to this action, (*see* FAC, Doc.
84), and Rule 18 only applies to parties. *See* Fed. R. Civ. P. 18(a) ("A party asserting a claim, counterclaim, crossclaim,

27  [etc.],") (b) ("A party may join two claims . . ."). Therefore, the Court construes Davis's motion as a motion to intervene
brought under Rule 24, as it is clear Davis is trying to join this action as a non-party to the case.  This is further

28  supported by Davis's Reply brief, which seems to acknowledge that she is a proposed intervenor. (*See* Reply, Doc. 66
at 1 ("Pro se Reply Motion to Defendant's Opposition to Proposed Intervenor's Motion to Intervene.") (citing Fed. R.
Civ. P. 24(c)).

1                    **I.      FACTUAL AND PROCEDURAL BACKGROUND**

2          This case concerns the constitutional challenge to California's "Transgender Respect,

3  Agency, and Dignity Act," added to the California Penal Code by Senate Bill 132 (hereinafter,

4  "S.B. 132"), brought by several cisgender, female inmates incarcerated in the Central California

5  Women's Facility and Central Institution for Women.  (FAC, Doc. 84 at ¶¶ 5, 10–15, 94–146.)

6  Plaintiffs seek declaratory relief, stating that S.B. 132 is unconstitutional, as well as a permanent

7  injunction prohibiting Lavell Parker, Warden for CIW, Anissa De La Cruz, Warden for CCWF,

8  and Jeffrey Macomber, Secretary of the California Department of Corrections and Rehabilitation,

9  from enforcing S.B. 132.  (*Id.* at 29–30, ¶¶ 1–2.)  The Court has granted conditionally the

10  intervention to this action by four transgender women, incarcerated by the CDCR, and the

11  Transgender Gender-Variant & Intersex Justice Project.  (Doc. 62.)

12          TGIJP is a non-profit organization based in San Francisco, comprised of "a group of

13  transgender, gender-variant, and intersex ('TGI') people—inside and outside of prisons, jails, and

14  detention centers[,]" and advocates for "individual TGI folks seeking safer housing because of

15  ongoing threats to their physical and emotional well[-]being,"  (Decl. of Alex Binsfeld, Doc. 19-2

16  at ¶¶ 3, 11.)  TGIJP moved to intervene in this case to "represent[] the interests of many

17  incarcerated TGI people, all of whom directly benefit from SB 132."  (*Id.* at ¶¶ 15–18; *id.* at ¶ 18

18  ("If SB 132 were invalidated as a result of the *Chandler* litigation, our incarcerated members

19  would face not only a serious risk of physical and psychological harm, but also a violation of their

20  constitutional and statutory rights.").)  TGIJP represents that it "is aware that CDCR has

21  repeatedly delayed and stonewalled SB 132 transfer requests made by incarcerated TGI

22  people . . . incarcerated members report having to wait months on end, without any explanation,

23  for hearings on their transfer requests; having their requests dropped; and receiving denials of

24  transfer without statutorily required explanations."  (*Id.* at ¶ 19 ("[A]t least 321 TGI people have

25  requested transfers, but CDCR has failed to respond to the vast majority of those requests,

26  granting just 46 transfers.").)

27          The individual intervenors alongside TGIJP include Katie Brown, Jennifer Rose, Kelli

28  Blackwell, and Tremayne Carroll.  (Doc. 19.)  Katie Brown is a "Black transgender woman,"

1    housed as an inmate at the all-male correctional facility, Salinas Valley State Prison.  (Brown

2    Decl., Doc. 19-3 at ¶¶ 2, 5–6.)  Brown attests that she "would be safer in a women's facility and

3    could more freely express [her] gender without fear of violence or retribution," and that transfer

4    to a women's facility would assist her physical transition.  (*Id.* at ¶¶ 8–9; *see also id.* at ¶ 10

5    ("CDCR's men's prisons are not a safe place for me."), ("The other incarcerated people routinely

6    harass me . . . taunt me, call me names, and seek sexual favors from me."), ¶ 11 ("I have also

7    been targeted by CDCR staff at SVSP because of my gender."), ¶ 12 ("CDCR staff consistently

8    and purposefully misgender me.").)  In January 2021, Brown "formally requested to transfer to a

9    women's facility under S.B. 132," yet CDCR first required she complete a class entitled, "Right

10   Person, Right Prison," which would be followed by an Institutional Classification Committee

11   hearing.  (*Id.* at ¶ 15.)  Brown represents that though she completed the course in October and

12   November of 2021, and then requested an ICC hearing, SVSP staff refused to take her to the

13   hearing; Brown filed a grievance thereafter and is still awaiting a hearing and subsequent transfer.

14   (*Id.* at ¶¶ 16–17.)  CDCR has not communicated its reason for the delay.  (*Id.* at ¶ 18.)

15        The other individual intervenors represent similar circumstances.[2]  (*See* Rose Decl., Doc.

16   19-4 at ¶¶ 7 ("CDCR continues to classify me incorrectly as 'male' in many of their internal

17   records."), ¶ 9 ("As a transgender women living in a facility designated for men, I have

18   experienced extensive physical and sexual violence."), 17 ("I requested a transfer under SB 132

19   on the second day after the law took effect.  Now, approximately fifteen months later, I am still

20   housed in a facility designated for men.  I have received no formal response to my transfer

21   request."); Blackwell Decl., Doc. 19-5 at ¶¶ 14 (CDCR staff "told me that I was well-situated and

22   respected at Mule Creek, a facility designated for men, and suggested that I should not give that

23   status up."), ¶ 15 ("It seemed like CDCR staff were trying to make transgender women afraid of

24   transferring and discourage us from seeking transfers to women's facilities."), ¶ 17 ("I survived

25   multiple serious incidents of physical violence while incarcerated at men's facilities."); Carroll

26   Decl., Doc. 19-6 at ¶¶ 6–7 ("I spent just under 22 years incarcerated in CDCR facilities

27

28   ---
     [2] The Court notes that it appears intervenors Blackwell and Carroll have  transferred to women's facilities.  (Blackwell Decl., Doc. 19-5 at ¶ 12 ("Several weeks after my interview, I was transferred to CCWF."); Carroll Decl., Doc. 19-6 at ¶ 6 ("I have been housed at [CCWF] since August 2021.").)

1    designated for men. . . . I am a survivor of repeated sexual violence, both prior to and during my

2    incarceration."), ¶ 19 ("I have seen and heard a lot of misinformation and fearmongering related

3    to SB 132—predominantly spread by CDCR employees.").)

4          Kennard Lee Davis is a transgender female inmate, incarcerated at SVSP.  (Davis Decl.,

5    Doc. 64 at 2.)  Davis now moves to intervene in the present action.  (Doc. 64.)  The motion is

6    fully briefed, (Opp'n, Doc. 65; Reply, Doc. 66), and ripe for consideration and review.

7                              **II.      LEGAL STANDARDS**

8          A.      Rule 24 Intervention

9          Federal Rule of Civil Procedure allows a non-party to intervene into ongoing litigation

10   either permissively, or as a matter of right.  Fed. R. Civ. P. 24 (a) (mandatory intervention), (b)

11   (permissive intervention).  Davis's motion does not indicate whether she requests mandatory or

12   permissive intervention, (*see generally* Doc. 64), and therefore, the Court will analyze her motion

13   under both avenues.

14                              *i.      Mandatory Intervention*

15         To intervene as of right under Rule 24(a)(2), Davis must show that:  "(1) [her] motion is

16   timely; (2) [she] [has] a significantly protectable interest relating to the property or transaction

17   which is the subject of the action; (3) the disposition of the action may as a practical matter

18   impair or impede [her] ability to protect that interest; and (4) [her] interest is inadequately

19   represented by the parties to the action." *E. Bay Sanctuary Covenant v. Biden*, 102 F.4th 996,

20   1001 (9th Cir. 2024) (internal quotation marks and citation omitted), *cert pet. docketed*, No. 23-

21   1353 (S. Ct. June 28, 2024); *Callahan v. Brookdale Senior Living Communities, Inc.*, 42 F.4th

22   1013, 1020 (9th Cir. 2022) (same).  Davis "'bear[s] the burden of showing that these four

23   elements are met[.]'" *E. Bay Sanctuary*, 102 F.4th at 1001 (quoting *W. Watersheds Project v.*

24   *Haaland*, 22 F.4th 828, 835 (9th Cir. 2022)); *Cooper v. Newsom*, 13 F.4th 857, 865 (9th Cir.

25   2021) ("It is incumbent on the party seeking to intervene to show that all the requirements for

26   intervention have been met.") (internal quotation marks and citation omitted).

27                              *ii.      Permissive Intervention*

28         "Under Federal Rule of Civil Procedure 24(b), a district court has discretion to permit

1   intervention when the movant presents (1) an independent ground for jurisdiction; (2) a timely

2   motion; and (3) a common question of law and fact between the movant's claim or defense and

3   the main action." *Callahan*, 42 F.4th at 1022 (internal quotation marks and citation omitted);

4   *Cooper v. Newsom*, 13 F.4th 857, 868 (9th Cir. 2021).  "Even if an applicant satisfies those

5   threshold requirements, the district court has discretion to deny permissive intervention."

6   *Cooper*, 13 F.4th at 868 (internal quotation marks and citation omitted).  However, if these initial

7   conditions are met, the Court may then consider "other factors in making its discretionary

8   decision on the issue of permissive intervention," which include, *inter alia*, "the nature and extent

9   of the intervenors' interest, their standing to raise relevant legal issues, the legal position they

10  seek to advance," "whether the intervenors' interests are adequately represented by other parties,

11  . . . and whether parties seeking intervention will significantly contribute to full development of

12  the underlying factual issues in the suit and to the just and equitable adjudication of the legal

13  questions presented." *Callahan*, 42 F.4th at 1022 (citations omitted).

## III.   DISCUSSION[3]

15       In her motion and accompanying declaration, Davis represents that she completed her

16  prerequisite coursework to transfer to an all-female prison in September 2023, and filed several

17  grievances, but CDCR has either denied or delayed her requested transfer.[4]  (Doc. 64 at 2.)

---

[3] At the outset, the Court notes that Davis has failed to file an Answer or other "pleading that sets out the claim or defense for which intervention is sought," as required by Rule 24(c).  Fed. R. Civ. P. 24(c).  Indeed, Defendants oppose Davis's intervention on this ground.  (Doc. 65 at 3 ("Because she has not included a pleading that identifies the specific claim or defense to which her application to intervene pertains, the application should be denied.") (citing Fed. R. Civ. P. 24(c)).)

        This failure, however, "is a 'purely technical' defect" and the Court may analyze Davis's intervention motion so long as the Court is "apprised of the grounds for the motion." *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1188 (9th Cir. 2009) (internal quotation marks and citations omitted).  Though Davis has not properly filed a motion under Rule 7(b)'s requirements, but rather, has filed two declarations in support of her motion to intervene, (Davis Decl., Doc. 64 at 2; Davis Decl., Doc. 66 at 3), this also is of no import.  Fed. R. Civ. P. 7(b)(1)–(2).  The Court has sufficient information via Davis's declarations to understand the bases and reasons supporting Davis's motion.  *See United States v. Sprint Commc'ns, Inc.*, 855 F.3d 985, 995 n.4 (9th Cir. 2017) ("Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in the intervention, *and declarations supporting the motion* as true absent sham, frivolity or other objections.") (emphasis added) (internal quotation marks and citation omitted); *see also Hoopa Valley Tribe v. U.S. Bureau of Reclamation*, 648 F. Supp. 3d 1196, 1203 n.8 (E.D. Cal. 2022).

[4] It is unclear from the face of Davis's Declaration whether the CDCR and the ICC have outright denied, or are simply delaying, her transfer request.  (*See* Davis Decl., Doc. 64 at 2 ("All are denying me the transfer to an all female prison.  Due to the [fact that] [ICC] has no time constraints *to process* my case factors decision.") (emphasis added) (capitalizations omitted).)

1    Additionally, Davis attests that she is "being clearly effected [sic] by the transaction that is the

2    subject of the above-mention entitled case," that the disposition of this litigation impairs or

3    impedes her ability to protect her interests, and that finally, she has "been the victim of criminal,

4    sexual, and predatorily (PREA) stalking by officers and inmates," including being the subject of

5    several attacks, assault, and rape. (*Id.* (capitalizations omitted)[5].)  Defendants oppose Davis's

6    motion, contending that she has no significant protectable interest in this litigation, and that the

7    parties adequately represent her interests. (Doc. 65 at 3–5.)  The Court need not address

8    Defendant's first point because the present Intervenors adequately represent her interests; Davis's

9    motion fails on this ground alone. *See Cooper*, 13 F.4th at 865 (the failure to satisfy any one of

10   Rule 24(a)(2)'s requirements is fatal to the motion).

11         The Court considers three factors in deciding whether a present party adequately

12   represents the interests of a proposed intervenor: "(1) [W]hether the interest of a present party is

13   such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the

14   present party is capable and willing to make such arguments; and (3) whether a proposed

15   intervenor would offer any necessary elements to the proceeding that other parties would

16   neglect." *Callahan*, 42 F.4th at 1020 (citation omitted).  "If the proposed intervenor's interest is

17   identical to that of one of the present parties, a compelling showing should be required to

18   demonstrate inadequate representation." *Id.* at 1020–21 (internal quotation marks and citation

19   omitted).  Indeed, "when an applicant for intervention and an existing party have the same

20   ultimate objective, a presumption of adequacy of representation arises." *Callahan*, 42 F.4th at

21   1021 n.5; *W. Watersheds*, 22 F.4th at 841 ("It is true that Chesapeake and WEA share the same

22   'ultimate objective' of upholding the Bureau's lease sales; thus, there is a presumption that WEA

23   adequately represents Chesapeake's interests."); *see also Berger v. N.C. State Conf. of the*

24   *NAACP*, 597 U.S. 179, 197 (2022) (in applying lower courts' presumption of adequacy, the

25   presumption applies "only when the interests 'overlap fully," but not where the "absentee's

26   interest is similar to, but not identical with, that of one of the parties") (cleaned up) (internal

27   quotation marks and citation omitted).

28

_____

[5] When quoting Davis's briefs, the Court will omit Davis's use of writing in all-capitalized text unless necessary.

1      Davis admits that her interest is "identical" to that of Defendants and Intervenors.  (Doc.

2    66 at 3 ("I would like to join and/or intervene in the following *identical* claims . . .") (emphasis

3    added).)[6]  The Court agrees that Davis's interest in this litigation is identical to both parties: she

4    intends on defending this action, preventing the Plaintiffs' request for declaratory and injunctive

5    relief, and arguing that S.B. 132 is constitutional.  (Doc. 66 at 15.)  And, like many of the

6    Intervenors to this case, Davis is a transgender woman, housed in an all-male correctional facility,

7    who has been the victim of several gender-based assaults, and has applied for transfer to an all-

8    female facility, yet has had her application either denied or delayed.  As such, because Davis's

9    interest in this litigation is identical to Defendants, TGJIP, and the four individual intervenors,

10   Davis must overcome the presumption that she is adequately represented by the existing parties.

11   *Callahan*, 42 F.4th at 1021 n.5; *W. Watersheds*, 22 F.4th at 841.

12      Davis has failed to meaningfully analyze any of the three relevant factors, and the

13   arguments she make lack merit.  For example, Davis argues that "the Attorney General['s] Office,

14   and/or the attorneys representing the entitled Defendants are extremely opposed, at odds, and/or

15   undermine [her] filed court litigation interests," and that therefore CDCR has an "on-going and

16   current conflict of interest[]" with her.  (Doc. 66 at 11, 12 ("CDCR and/or the entitled Defendants

17   *et al.* are against implementing (S.B. 132) Penal Code Section 2605 and 2606 as it applies to the

18   (Pro Se) would be intervenor.").)  This argument is moot, however, as the Court has dismissed

19   CDCR without leave to amend, and Plaintiffs' FAC no longer names CDCR as a Defendant to

20   this action.  (Doc. 67 at 26; Doc. 84 at 5–7.)

21      Next, Davis argues that TGIJP inadequately represents her interest because, Davis

22   speculates, the organization is comprised of "volunteered staff, dwindling funding . . . and

23   systemic resource material problems when serving a trans-gender prison population at (33)

24   prisons located up and down the state."  (Doc. 66 at 12.)  Davis continues that non-profit

25   _____

26   [6] At this juncture, the Court notes that throughout her Reply, Davis appears to confuse the party with which she is
     factually aligned.  (*See* Davis Decl., Doc. 66 at 4 ("This (Pro Se) intervenor is similarly situated to the Plaintiff's [sic]
     as a practical matter in that the (Pro Se) would be intervenor has been victimized, raped, sexually assaulted, . . ."),
27   ("[T]he Plaintiffs and this would be intervenor (Pro Se) share the same practical matter impair or impede the movant's
     ability to protect its interest . . .").)  The crux of Davis's briefs, however, clearly indicate that she intends to intervene
28   on behalf of Defendants and Intervenors, and the Court analyzes her motion accordingly.  (*See id.* at 15 ("I join in, or
     seek to apply for (Pro Se) would be intervenor status to argue that the statutes are constitutional.").)

1    attorneys "have very limited time and very limited budgets,"[7] yet at the same time, Davis

2    represents that she "sincerely tried to correspond with the ('TGIJP') non-profit group[] several

3    times to no avail, or response letter." (*Id.* at 13.)  On these points, the Court echoes the Ninth

4    Circuit's analysis addressing this very issue:

5
            In their motion to intervene, intervenor-defendants stated first that defendant may
6           not be able to provide a complete defense of Measure 26 due to 'budget constraints.'
            Virtually all governments [or non-profits] face budget constraints generally, and if
7           such a basis were sufficient to establish inadequate representation, it would
            eliminate the presumption of adequate representation when the government [or
8           non-profit] and the intervenor-applicant share the same interest.  Most importantly,
            there is no evidence in the record that defendant is unable to mount an effective
9           defense of Measure 26 due to alleged 'budget constraints.'  *See League of United
            Latin Am. Citizens*, 131 F.3d at 1307 (citing *Moosehead San. Dist. v. S.G. Phillips
10          Corp.*, 610 F.2d 49, 54 (1st Cir. 1979) (holding 'a petitioner must produce
            something more than speculation to the purported inadequacy in order to justify
11          intervention as of right')).[]
12
13   *Prete v. Bradbury*, 438 F.3d 949, 957–58 (9th Cir. 2006) (footnote omitted).

14          Thus, as in *Prete*, Davis's arguments simply lack merit.  To the extent that TGIJP *does*

15   face budget constraints, and to the extent that this significantly impacts TGIJP's ability to

16   adequately litigate its positions, Davis has simply failed to proffer "any evidence of [TGIJP's]

17   alleged budgetary constraints and the impact of said constraints on this litigation[.]" *Prete*, 438

18   F.3d at 958 n.10.

19          Finally, Davis surmises that TGIJP "is not even aware of the facts that represent

20   thousand[s] and thousands of protected interests [sic] transgender status inmate[s] housed and

21   held in the (CDCR)" nor the "sheer number of [ ] transgender status inmates awaiting full

22
     _____

23   [7] In bringing this argument, Davis confuses one of this Court's prior Orders, stating that "this Honorable Court noted
     the complexities of non-profit organizations when the[y] help with prisoner's litigation.  In *Chandler v. Cal. Dep't of
     Corr.*, . . . at footnote #3, or Court document #33, non-profit groups, attorneys, or organization[s] have very limited
24   time and very limited budgets."  (Doc. 66 at 13.)  It appears Davis cites to Docket Number 62, wherein the Court
     conditionally granted the then-proposed intervenors' motion to intervene.  On page 2, footnote 3, the Court
25   acknowledged that "[t]he lawsuit was filed also by a nonprofit organization that advocates for incarcerated women.
     This group was dismissed from the lawsuit by stipulation. (Doc. 33)."  (Doc. 62 at 2 n.3.)
26          Davis confuses the non-profit organization is no longer involved in this litigation. In the order she cites, the
     Court was referring to the dismissal of the organization "Woman II Woman," which was originally a plaintiff in this
27   litigation, and which was seeking to enjoin S.B. 132. (Compl., Doc. 1 at ¶ 73.)  That Woman II Woman left this lawsuit
     cannot serve as any indication or basis to conclude or infer that non-profit organizations in general lack sufficient
28   funding or resources to meaningfully litigate or defend their claims. *Prete v. Bradbury*, 438 F.3d 949, 957–58 (9th Cir.
     2006).

1   enforcement of" S.B. 132.  (*Id.* at 14.)  However, this is contradicted by the record.  TGIJP has

2   expressly affirmed that it *is* aware of S.B. 132's prolonged and delayed enforcement.  (*See*

3   Binsfeld Decl., Doc. 19-2 at ¶ 19.[8]

4           Taken together, Davis has failed to show that she would offer any proposed arguments the

5   Defendants or Intervenors would not make, has failed to show that existing parties are incapable

6   or unwilling to make such arguments, and has failed to proffer any "necessary elements to the

7   proceeding" that the parties would neglect.  *Callahan*, 42 F.4th at 1020 (citation omitted).  If

8   anything, it appears from the face of Davis's Reply that she intends to provide the exact same

9   material and information that Intervenors have already added to this litigation.  (*Compare* Doc. 66

10  at 4 ("This would be intervenor (Pro Se) does not seek to raise an issue not presented by the

11  parties.") *and id.* at 5 ("(Pro Se) would be intervenor (transgender Kennard Lee Davis) does not

12  seek to expand the scope of the current litigation.") *with W. Watersheds*, 22 F.4th at 841

13  ("Although Chesapeake and WEA may share the same ultimate objective in this litigation,

14  Chesapeake has identified *several colorable arguments* that WEA did not seek to raise in the

15  proceedings below.") (emphasis added) *and Kalbers v. U.S. Dep't of Justice*, 22 F.4th 816, 828

16  (9th Cir. 2021) (granting intervention where existing parties lacked information regarding

17  commercial significance of documents at issue in litigation).)

18          Ultimately, the Court concludes that Davis has failed to make a "compelling showing" to

19  demonstrate that the existing parties inadequately represent her interests.  *Callahan*, 42 F.4th at

20  1020–21; *W. Watersheds*, 22 F.4th at 841.  To the extent Davis disagrees with Defendants' and

21  Intervenors' litigation strategies, this also is an insufficient basis to intervene.  *Callahan*, 42 F.4th

22  at 1021 ("[W]hen a proposed intervenor has not alleged any substantive disagreement between it

23  and the existing parties to the suit, and instead has rested its claim for intervention entirely upon a

24  disagreement over litigation strategy or legal tactics, courts have been hesitant to accord the

25  applicant full-party status.") (internal quotation marks and citation omitted).  For the same

26

27  ⁸ Nor is it relevant that Davis is "not a member of ('TGIJP')" and has not "ever [given] them explicit permission/consent
    to represent [her] [in] any court litigation actions."  (Doc. 66 at 16.)  The relevant inquiry is *not* whether Davis consents
28  to have her interests adequately represented by existing parties, but whether in fact such parties *actually do* represent
    her interests.

1   reasons, the Court exercises its discretion in denying Davis to permissively intervene in this

2   action. *Id.* at 1022.  Davis's interest is identical to the Defendants' and Intervenors' interests, she

3   has not indicated a different "legal position" from the existing parties that she intends to advance,

4   her interests are adequately represented by existing parties, and she has not demonstrated how she

5   would "significantly contribute to the full development of the underlying factual issues in the

6   suit," given that existing parties have the ability and intention to share the information she intends

7   to proffer.  *Id.*

8   **IV.    CONCLUSION AND ORDER**

9          Because Davis has failed to demonstrate that her interests are inadequately represented by

10  existing parties, the Court **ORDERS**:

11                    (1) Kennard Lee Davis's Motion to Intervene (Doc. 64) is **DENIED**.

12                    (2) As such, Davis's Motion to Modify or Alter Judgment, (Doc. 70), and Motion

13                         for Leave to Proceed *in forma pauperis*, (Doc. 92), are **DENIED AS MOOT**.

14

15  IT IS SO ORDERED.

16      Dated:    **July 31, 2024**

                                                                 _____
                                                                 UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

10